UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN C. JOHNSON,<br><br>    Plaintiff,<br><br>    v.<br><br>GLOCK, INC., et al.,<br><br>    Defendants. | Case No. 3:20-cv-08807-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 14 |

Plaintiff Steven Johnson alleges, on behalf of himself and a proposed class, that certain handguns designed, made, and sold by defendants Glock, Inc., and Glock Ges.m.b.H (collectively, "Glock") have a defect that can cause them to damage reusable shell casings and "blow out" a piece of casing. But he never pleads basic facts, like who he bought his Glock from, when, or how he was injured by the alleged defect. This pleading failure infects each of his causes of action. Before me is Glock's motion to dismiss, which I grant with leave to amend.

## BACKGROUND

At this stage, all facts are drawn from the complaint or are subject to judicial notice. Johnson is a resident of Oakland, California, who owns a .45 caliber gun made by Glock. First Amended Complaint ("FAC") [Dkt. No. 1-2] ¶ 20. He alleges that his firearm was "designed, manufactured, assembled, to be tested, marketed, imported, warranted, distributed, and sold by" Glock. *Id.* He does not, however, allege that he purchased the gun from Glock. Nor does he allege any information about how he acquired it, other than that it was in Alameda County. *Id.*

Johnson alleges that a certain group of Glock's hand guns contain a defect. More specifically, he alleges that the defect exists in several dozen models of Glock hand gun as well as those with "similar chamber design[s] and feed ramp length[s]" and potentially in other Glock

1    models. *Id.* ¶ 32. This defect, as Johnson alleges it, stems from the guns' "feed ramps." Feed
2    ramps guide rounds into the guns' chambers. *See id.* ¶¶ 2–3. According to Johnson, the feed
3    ramps in these Glock models are too long, resulting in insufficient "support" for a round once it is
4    in the chamber. *See id.* ¶ 2. Johnson claims that this lack of support causes undue pressure to be
5    placed on the round when it is fired in the "6 o'clock position." *Id.*

6    This pressure, which Johnson labels a defect, has two purported effects relevant here.
7    First, Johnson alleges that the defect causes damage to the brass casings of the rounds by creating
8    a "bulge" on them after they are fired. *Id.* ¶ 3. This bulge—which Johnson alleges is a commonly
9    known consequence of using many models of Glock—renders brass casings "useless,
10   nonfunctional, and valueless." *Id.* ¶ 4. While consumers could normally reuse these casings to
11   make reloaded ammunition, the alleged damage from the defect makes reuse impracticable and
12   unsafe. *See id.* ¶¶ 4–5. Second, Johnson alleges that the defect makes these models dangerous.
13   He claims that it can (though does not necessarily) create a "blow out" or "kaboom." *Id.* ¶ 2. A
14   blow out, Johnson asserts, is when the round or casing separates and "dislodge[s] a piece of the
15   casing." *Id.* Johnson does not identify anyone who has been harmed in this manner.

16   Johnson filed a complaint in California state court in October 2020 and filed the FAC in
17   November 2020. Glock removed the case to this court in December 2020 under the Class Action
18   Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453. Dkt. No. 1. The FAC alleges nine causes of
19   action: (1) violation of the California Consumers Legal Remedies Act ("CLRA"), (2) negligence,
20   (3) strict products liability, (4) breach of express warranty, (5) breach of the implied warranty of
21   merchantability, (6) fraudulent omission, (7) violation of California's Unfair Competition Law
22   ("UCL"), (8) violation of California's False Advertising Law ("FAL"), and (9) violation of the
23   federal Magnuson-Moss Warranty Act ("MMWA"). Johnson brings all but the MMWA action on
24   behalf of himself and a proposed class; he brings the MMWA claim only in an individual capacity.
25   *See* Plaintiff's Opposition to Glock's Motion to Dismiss ("Oppo.") [Dkt. No. 21] 19.

26   Johnson seeks to certify a class defined as, "All current and former owners of a Class Gun

2

(as defined herein) that was purchased in the State of California."[1] FAC at 14. "Class guns," in turn, are defined in the FAC as "certain hand guns," *id.* ¶ 1, and later elaborated on as including but not being limited to several dozen specific models and those with "similar" chamber and feed ramp designs, *see id.* ¶ 32. Johnson does not put any temporal limits on the class. He also does not allege that any of *his* casings have ever been damaged by the defect or that his gun has suffered a blow out. He alleges that "[h]ad Plaintiff and the other members of the California Sub-Class known of the Unsupported Chamber Defect within the Class []Guns, they would not have purchased the Class Guns or would have paid less for the Class Guns." *Id.* ¶ 128. He claims that his gun shares the defect. *Id.*

Glock now moves to dismiss Johnson's claims and strike his class allegations. *See* Motion to Dismiss the FAC and Strike Plaintiff's Class Allegations ("Mot.") [Dkt. No. 14]. I held a hearing on the motion on February 3, 2021.[2]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

---

[1] The FAC also sought certification of a nationwide class but Johnson is no longer pursuing it. Oppo. 4 n.2.

[2] Defendant Glock Ges.m.b.H. initially appeared specially to move to quash service of process. Dkt. No. 16. It later withdrew that motion after reaching an agreement with Johnson. Dkt. No. 23. It joins the motion to dismiss and strike in the alternative. *Id.*

1  Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the
2  plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court
3  is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of
4  fact, or unreasonable inferences."  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
5  2008).

Under FRCP 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *U.S. ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.  MISREPRESENTATION CLAIMS**

Johnson's first cause of action is for violation of the CLRA, his sixth is for fraudulent omission, his seventh is for violation of the UCL, and his eighth is for violation of the FAL.  The FAC could reasonably be read to allege both affirmative misrepresentations and omissions, and that is how Glock responded in its Motion.  Johnson's Opposition, however, makes clear that he is only alleging omissions claims and that the affirmative statements are relevant only to the extent they are partial representations related to the omissions.  *See* Oppo. 4–9.  Accordingly, I analyze these claims as omissions.

In brief, the UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

CAL. BUS. & PROF. CODE. § 17200.  The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." *Id.* § 17500.  And the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." CAL. CIV. CODE § 1770.  Each statute has individual facets that sometimes require distinct analysis.  At their core, however, the FAL, CLRA, and the "fraudulent" prong of the UCL are governed by the reasonable consumer test.  *Williams v. Gerber Prod. Co.*, 552 F.3d 934 (9th Cir. 2008); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).  Further, the "unlawful" prong of the UCL turns on other legal violations.  And California's common law fraudulent omission cause of action depends on analysis of the same alleged omissions as Johnson alleges violate the statutes.  Accordingly, courts frequently analyze the common elements of these violations together, especially at the pleadings stage.  *See Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *5 (N.D. Cal. Mar. 15, 2016) (collecting cases).

### A. Rule 8

As an initial matter, and separate from its arguments about any particular cause of action or element, Glock contends that Johnson's pleading does not meet Rule 8 and the *Twombly*/*Iqbal* standard.  Glock's argument on this point is general and brief.  *See* Mot. 5; 1–2.  It argues that "[t]hough each cause of action depends on the existence of a defect, Plaintiff does not allege that he has actually experienced one." Mot. 5.  That is incorrect; the FAC alleges that Johnson "owns a Class Gun," FAC ¶ 20, which is defined as guns that have the defect.  Indeed, he explicitly alleges that it is defective and was at the time of purchase.  *Id.*  At most, Glock's argument is that Johnson has not experienced the *effects* of that defect—the damaged brass casings or the blow out.  *See* Mot. 5.  The ramifications of that purported deficiency are addressed below, as are Glock's remaining arguments on this issue.

### B. Rule 9(b)

Glock contends that Johnson's CLRA, UCL, FAL, and fraudulent omissions claims should be dismissed under Rule 9(b)'s heightened pleading standard.  Both parties agree those claims sound in fraud.

Johnson does not make much of an effort in his Opposition to establish that he pleaded the

5

"who, what, when, where, and how" of his claims that sound in fraud. Instead, he largely focuses his defense of his claims on the elements of his various state law causes of action. While showing that each claim has been adequately pleaded is also necessary, the question whether each element of California law is adequately pleaded is distinct from (though related to) whether Rule 9(b)'s pleading requirements are met.

"Typically, averments of fraud must be accompanied by the who what when where, and how of the misconduct charged, but claims based on an omission can succeed without the same level of specificity required by a normal fraud claim." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (internal quotation marks and alteration omitted); *accord Anderson v. Apple Inc.*, No. 3:20-CV-02328-WHO, 2020 WL 6710101, at *15 (N.D. Cal. Nov. 16, 2020); *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007). I and other judges in this District have concluded that "a plaintiff alleging an omission-based fraud will [sometimes] not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim." *MacDonald*, 37 F. Supp. 3d at 1096.

Even using this standard, these claims have not been adequately pleaded. Johnson does not allege even the most fundamental facts about where, from whom, when, or under what conditions he purchased the Glock. His choice appears to be intentional. *See* Oppo. 18 ("Plaintiff does not *yet* allege when he purchased his Class Gun.") (emphasis added). Even in an omissions case, that is insufficient. In *MacDonald*, the plaintiffs all alleged when, where, and under what conditions they purchased their cars. *See id.* at 1090. In *Anderson*, the plaintiffs generally alleged when, where, and under what conditions they purchased their iPhones. *See Anderson*, 2020 WL 6710101, at *1–*2, *15. The result is that it was possible in those cases to determine when, where, and under what conditions consumers *would potentially* have come across omissions, had they been disclosed. Here, it is not even possible to get a rough idea of the circumstances in which Johnson would have come across the omissions had they been disclosed.

The only "where" that Johnson concretely identifies—though he does not explicitly put it forward as satisfying Rule 9(b)—is Glock's website, which he says contained various misleading statements. *See, e.g.*, FAC ¶¶ 30–31. But there is no pleading that he ever saw, let alone relied

6

on, the website prior to purchasing his gun. Johnson also does vaguely say that he purchased the gun in Alameda County, *id.* ¶ 20, but his Opposition makes clear that he is intentionally choosing to withhold any further fundamental details.

The "when" is also unidentified. Not only does Johnson fail to allege when he purchased his gun, he fails to allege the time period he was shopping for it—and therefore would allegedly have seen any disclosures. His proposed class has no limitation on its time, so it is possible for him to have purchased the gun at the earliest point that the earliest model of Class Gun was sold. This pleading failure comes with the additional problem that the mechanisms and content of disclosure might be different at different times. It is plausible, for instance, that the statements on Glock's website have changed over time, and even that the website itself has not been a source of information for the entire (indefinite) class period.

Johnson's failure to adhere to Rule 9(b) has consequences. Several of them are highlighted in later sections of this order. For present purposes, though, neither I nor Glock have even an approximate picture of the circumstances in which Johnson allegedly would have encountered misrepresentations or omissions. That is convenient for Johnson because it means that Glock cannot argue that those particular misrepresentations or omissions fail to state a claim on which relief could be granted. This is the situation Rule 9(b) seeks to defend against. I note that this is not a situation in which some crucial fact is peculiarly within Glock's control and so Johnson's failure to plead it is reasonable or in which there is some other reason that such purposefully ambiguous pleading might be justified. Johnson appears to know when, where, and under what circumstances he purchased the gun. Pleading that would help elucidate the allegedly fraudulent behavior and would permit Glock to fairly challenge the alleged omissions.

Accordingly, Johnson's FAC is not adequately pleaded and his misrepresentation claims will be dismissed with leave to amend. Because dismissal of these claims is with leave to amend, I address several issues in the alterative to streamline future proceedings.

**C. Duty to Disclose**

"Omissions may be the basis of claims under California consumer protections laws, but to be actionable the omission must be contrary to a representation actually made by the defendant, or

7

an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018); *see also Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 834–35(2006), *as modified* (Nov. 8, 2006).  There are two situations in which such a duty to disclose arises.  First is when the undisclosed information "cause[s] an unreasonable safety hazard." *Hodsdon*, 891 F.3d at 861–62; *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, at 1142–43 (9th Cir. 2012).  Second is when (1) the omission is material, (2) the defect is central to the product's function, and (3) one of the so-called *LiMandri* factors is met. *Hodsdon*, 891 F.3d at 863.  The four *LiMandri* factors are:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011), *as modified* (Dec. 28, 2011) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).

Johnson has adequately pleaded that the defect here can result in a safety hazard.  The allegation is that guns that suffer the defect can "blow out," resulting in a piece of the casing being dangerously dislodged.  FAC ¶ 2.  A piece of metal being dislodged from a handheld object at force is plausibly an unreasonable safety hazard.

Glock seeks to circumvent this conclusion, but none of its arguments are persuasive at the pleadings stage.  It contends that the alleged safety hazard is merely "conjectural" or "hypothetical."  Mot. 8–9.  Relatedly, it argues that any causal connection between the defect and blow outs is also speculative.  *Id.*  But, as alleged, the blow outs are a potential natural result of the feed tube defect.  *See* FAC ¶ 2 (explaining how the pressure caused by the defect can create a blow out).  Additionally, at least some other consumers appear to have experienced the "bulge" effect of the defect, illustrating the plausibility of the defect itself.  *See, e.g.*, *id.* ¶ 53.  At this point, Johnson's well-pleaded allegation must be taken as true.

This is unlike the hypothetical hazard cases Glock relies on.  In *Williams v. Yamaha Motor Company*, the safety hazard allegations were found wanting for numerous reasons, including that

8

the alleged defect "merely accelerates the normal and expected process of corrosion" in the product, was unsupported by factual allegations, was about a condition the company "expressly warn[ed] consumers," and may have been reasonable. 851 F.3d 1015, 1028–29 (9th Cir. 2017). Here, Johnson has pleaded that the Glock "bulge" effect is well-established, that the feed tube defect is verifiable, and that the natural consequence of that sort of pressure building is a blow out.

*Tietsworth v. Sears, Roebuck & Company* was largely about non-dangerous, operational defects in washing machines; the portion that Glock cites is a footnote dispensing with what appears to be a lone allegation that these failures were sometimes dangerous. *See* No. 5:09-CV-00288 JFHRL, 2009 WL 3320486 , at *2 n.2 (N.D. Cal. Oct. 13, 2009). The court there explained that no named plaintiff had witnessed or been harmed by this alleged hazard. *Id.* While that is true here, Johnson has alleged a plausible mechanism by which this hazard would occur, and plausible allegations are all the law requires at this stage. "Where a plaintiff alleges a sufficiently close nexus between the claimed defect and the alleged safety issue, the injury risk need not have come to fruition." *Williams*, 851 F.3d at 1028.

I agree with Glock to the extent that there is a worry that the safety hazard may not end up being "unreasonable." Johnson is not as specific as would be ideal about the mechanics of the blow out, nor does he point to any injuries that anyone has suffered from one. At this stage, Johnson must only show that the existence of an unreasonable safety hazard is plausible.

It is not clear that Johnson has adequately pleaded that Glock had knowledge of the defect at the time of sale. This is largely due to Johnson's refusal to plead when he purchased his gun. One of Johnson's arguments about pre-sale knowledge, for example, is that consumers filed complaints about the defect. Oppo. 9. Yet his pleading failure means it is impossible to determine whether those complaints were filed before or after he purchased the gun. Because his claims are already being dismissed with leave to amend, remedying this pleading failure will permit resolution of this issue as well.[3]

---

[3] Glock briefly argues that Johnson has not adequately alleged what Glock should have disclosed. Reply 7. That is incorrect, Johnson alleges that the defect and its alleged consequences should have been disclosed to consumers.

9

**D. Injunctive Relief**

Glock also argues that Johnson has not shown he possesses Article III standing to pursue injunctive relief, or that he has shown a lack of adequate remedies at law. Mot. 13–14. I agree that Johnson has not yet pleaded a future injury that would create standing to pursue an injunction.

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Johnson bears the burden of pleading and showing standing. To do so, he must demonstrate three elements: (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) that it is "likely . . . that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks and citations omitted). An injury in fact must be "concrete and particularized" and "actual or imminent," as opposed to "conjectural or hypothetical." *Id.*

In *Davidson v. Kimberly-Clark Corporation*, the Ninth Circuit settled a split among the district courts of this Circuit "in favor of plaintiffs seeking injunctive relief." 889 F.3d 956, 969 (9th Cir. 2018). It held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Id.* The Ninth Circuit highlighted two situations in which an this type of injury would be sufficiently "imminent" to confer Article III standing. "In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969–70. "In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 970.

As presently pleaded, Johnson has not demonstrated standing to pursue injunctive relief under *Davidson*. The FAC does not contain any allegation that Johnson would consider purchasing a Glock or a competitor product in the future.

Johnson counters that he needs only to show that Glock has a "policy or pattern of

10

breaking the law" that applies to "the class as a whole." Oppo. 14 (internal citations, emphasis, and quotation marks omitted). In support, he primarily relies on *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001). But *Armstrong* laid out the requirements for injunctive relief standing in civil rights pattern-or-practice violations cases. *Davidson* addressed what is required for consumer law injunctive relief in cases like this one. Additionally, the law is clear that, to bring a claim on behalf of a class, the named plaintiff must have standing to bring the claim himself. *See Pence v. Andrus*, 586 F.2d 733, 736–37 (9th Cir. 1978) ("[I]n class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotation marks omitted).

        I reject Glock's position to the extent that it argues Johnson has foreclosed any possible future standing. *See* Mot. 13–14; Defendant Glock's Reply in Support of the Mot. ("Reply") [Dkt. No. 22] 9. Glock argues that one of Johnson's allegations "conclusively destroys standing to seek injunctive relief" because he pleaded that "he would not purchase the product knowing now what he claims he did not know earlier." Mot. 13. There are two problems. First, Glock mischaracterizes the allegation. Johnson actually alleges, "[h]ad Plaintiff and the other members of the California Sub-Class known of the Unsupported Chamber Defect within the Class []Guns, they would not have purchased the Class Guns or would have paid less for the Class Guns." FAC ¶ 128. His claim is not simply that he would not have purchased the gun, but that he would not have purchased it at that price. Second, even if Johnson had pleaded he would not have bought the gun, that does not necessarily foreclose future injunctive relief because he might still be able to allege a future desire to purchase the gun if he could be sure he could trust Glock's representations. *See Davidson*, 889 F.3d at 969–70.

        Because Johnson has not yet pleaded facts sufficient to show that he possesses standing, however, his request for injunctive relief is dismissed with leave to amend.[4]

---

[4] Because of the unusual posture and briefing of this case, it is either impossible or unnecessary to address several issues. I do not address: whether Glock would have a separate duty to disclose under the alternative test laid out in *Hodsdon* (centrality to function combined with a *LiMandri* factor) because there is a plausible safety hazard; reliance, because that issue is entirely bound up

11

## II. NEGLIGENCE AND STRICT LIABILITY CLAIMS

Johnson's second cause of action is negligence and his third is strict products liability. *See* FAC ¶¶ 85–102.

California law generally provides that a "manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 994 (1991) (internal quotation marks omitted). "Liability is imposed not only where the defective product causes personal injury, but also where the defective product causes physical damage to property." *Sacramento Reg'l Transit Dist. v. Grumman Flxible*, 158 Cal. App. 3d 289, 293 (1984). "The damaged property may consist of the product itself." *Id.* Under the economic loss rule, though, "where damage consists solely of 'economic losses,' recovery on a theory of products liability is precluded." *Id.*

California law also recognizes a theory of negligence in products liability actions. *See Merrill v. Navegar*, Inc., 26 Cal. 4th 465, 477 (2001). "If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort." *Lederer v. Gursey Schneider LLP*, 22 Cal. App. 5th 508, 521 (2018). And, as in strict liability, negligence actions are cabined by the economic loss rule. *See Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965). Accordingly, recovery under a negligence theory can generally be had for physical injury or property damage, but not purely economic loss.

Johnson concedes that, to bring his negligence and strict liability claims, he must show physical injury or damage to property. Oppo. 15. He has pleaded neither. He argues only that the class guns *can* cause physical injury or *can* cause damage to brass casings, but he conspicuously does not allege that either has ever happened to *him*. *See id.* 15–16. Indeed, his pleading implies

---

in the specifics of the alleged fraudulent omissions; Glock's arguments about unlawful and unfair practices under the UCL because they are derivative of its other arguments; how or whether the economic loss rule applies to the misrepresentation claims in light of their dismissal and the present uncertainty about Johnson's pleading, which is discussed with respect to the rule in other sections of the order; or whether Johnson has adequate remedies at law, as Glock argues, because injunctive relief is dismissed on other grounds and Johnson does not address the argument in his Opposition.

1  that neither has happened to him because it repeatedly discusses unnamed "consumers" being

2  damaged. *See, e.g.*, FAC ¶¶ 3–5. His theory, though it is not entirely clear, appears to therefore

3  be that because other people in the putative class may have been physically injured or may have

4  had damaged brass casings, he can bring this claim. *See* Oppo. 15. If Johnson has not been

5  cognizably injured for purposes of these claims, he cannot bring them on behalf of others. *Cf.*

6  *Pence*, 586 F.2d at 736–37. Johnson has not pleaded that he was injured or that his property was

7  harmed. These claims are dismissed with leave to amend.

## III. EXPRESS WARRANTY CLAIMS

Johnson's fourth claim is for breach of an express warranty and a portion of his ninth claim for violation of the MMWA is predicated on that breach.

In California, as relevant to these facts, express warranties are created by:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

CAL. COM. CODE § 2313(1). Accordingly, plaintiffs must prove that "(1) the seller's statements constitute an 'affirmation of fact or promise' or a 'description of the goods'; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached. *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (some internal quotation marks omitted).

Glock argues that the express warranty claims must be dismissed because Johnson has failed to show (1) that any warranty applies, (2) how any warranty was breached, and (3) that he attempted to use the avenues open under the warranty. *See* Mot. 16–18. It also argues that, because of Johnson's pleading deficiencies, there is no way to know when Glock's own express limited warranty applied, if it did at all. *See id.*[5]

Johnson first claims that he as adequately alleged a breach of warranty. Oppo. 16. In

---

[5] Glock's request for judicial notice (Dkt. No. 15) of the limited warranty posted publicly on its website is GRANTED. *See* Fed. R. Evid. 201(b)(2). I do not take judicial notice that this warranty applied or did not apply to Johnson's gun or any Class Gun based on current pleading deficiencies.

13

support, he points to paragraph 104 of his FAC. *Id.* That paragraph identifies Glock's alleged representations that the guns "are reliable and safe for ordinary use and do not contain defects and are not unreasonably dangerous," which Johnson claims are "memorialized . . . in writing [and] . . . provided with the Class Guns and/or . . . published on the Glock Defendants' website." FAC ¶ 104. He then gives the example of "Your new GLOCK is designed to provide you with that same reliable performance every time you use it; even in the face of the harshest conditions on the planet." *Id.* Construed liberally, then, the "warranties" that Johnson relies on are the same statements discussed above that he alleges are partial representations.

The remainder of Johnson's response, however, is puzzling. First, Johnson states that "Plaintiff does not dispute that the statements from Glock's website, identified in his FAC (¶ 104), may constitute puffery." Oppo. 17 n.3. But statements that are non-actionable puffery appear to be viewed as incapable of creating express warranties. *See, e.g.*, *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1235 (N.D. Cal. 2012). (This admission also calls into question Johnson's reliance on these statements in the consumer protection context. *See, e.g.*, *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir.), *opinion amended on denial of reh'g*, 352 F.3d 367 (9th Cir. 2003).) Next, Johnson never addresses Glock's objections. Instead, he turns to the limited warranty that Glock has provided and states, "[w]hile Plaintiff does not concede the applicability of the purported written warranty, Plaintiff can moot the issue by amendment. Accordingly, Plaintiff respectfully requests leave to amend on this issue." Oppo. 17.

Adding another layer of confusion is Johnson's refusal to plead when or from whom he purchased his gun. It seems difficult (at best) to determine whether statements were made "by the buyer to the seller" without knowing from whom and under what circumstances Johnson purchased the gun. It also seems difficult to determine whether statements were or were not the basis of the bargain if the basic facts of the bargain are missing. Johnson dodges this in the FAC, pleading that he and the class "are the express beneficiaries of the express warranties" and that "[t]o the extent required by law, the Glock Defendants have expressly waived privity of contract as a requirement to the enforceability of any of their express warranties." FAC ¶ 105. Those statements appear to imply that Johnson did *not* purchase the gun from Glock, especially in light

14

of his pointed refusal to plead otherwise.

Given the confused state of this issue, Johnson's apparent request to amend, and his lack of substantive argument in support of his claims, I will dismiss this claim with leave to amend. The net result of the confusion Johnson has created is that there is no way to determine that he has adequately pleaded a breach of any express warranty. In an amended complaint, Johnson must make plain what warranties he believes apply and how he satisfies the elements of a warranty claim.

## IV.   IMPLIED WARRANTY CLAIMS

Johnson's fifth cause of action is for breach of the implied warranty of merchantability under the Song-Beverly Act and a portion of his ninth claim under the MMWA is predicated on that alleged breach.

As a general matter, under the Song-Beverly Act, "[u]nless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." CAL. CIV. CODE § 1792. That implied warranty means that goods: "(1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. (4) Conform to the promises or affirmations of fact made on the container or label." *Id.* § 1791.1.

Glock has two objections to Johnson's implied warranty claims: (1) he failed to allege that his gun was not fit for ordinary purpose and (2) his claim is time-barred.

Johnson's allegations on fitness for ordinary purpose are sufficient to survive a motion to dismiss. At the very least, if a gun might unpredictably blow out when used in its intended and normal way, it is plausibly not fit for ordinary purpose. Glock counters again that Johnson is not sufficiently clear about whether this defect actually exists in his gun. *See* Reply 4–5. He has adequately pleaded that it does. Glock's argument appears to be that Johnson must have suffered the dangerous effects of the defect. That misunderstands a merchantability claim. The implied warranty is violated merely by the good not being merchantable.

The parties' arguments on the claim generally and the statute of limitations specifically are

otherwise premature because the claim is not adequately pleaded. As a general matter, claims may only be dismissed at the pleadings stage on statute of limitations grounds if "the running of the statute [of limitations] is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). What Johnson cannot do, however, is withhold the fact of when he purchased the gun (provided he knows of that fact, as he essentially admits he does), depriving Glock of the opportunity to fairly raise a time-bar objection. When the gun was purchased is a fundamental piece of information to a warranty claim and Johnson has intentionally not pleaded it. That pleading failure would be sufficient to dismiss the claim, but it also has the unfair effect of depriving Glock of the opportunity to fully argue that the claim is time-barred.

Johnson attempts to duck this issue by pleading fraudulent concealment. *See* Oppo. 18. It is his burden to adequately plead that exception. *Inv'rs Equity Life Holding Co. v. Schmidt*, 195 Cal. App. 4th 1519, 146 (2011), *as modified* (June 15, 2011). To successfully invoke the fraudulent concealment exception to the statute of limitations, Johnson must plead and prove that he did not make the discovery within the statutory period. *Id.* Without revealing the date of sale (even approximately), that is not possible. Moreover, tolling under California law requires pleading the fraudulent concealment with particularity. *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 1745948, at *13 (N.D. Cal. May 3, 2016). Johnson's only pleadings on this front are either the alleged omissions themselves or conclusory allegations that Glock intentionally concealed the defect. *See* Oppo. 18; *see also* FAC 56–63, 122–31. That is plainly insufficient. For the reasons explained above, Johnson has not met Rule 9(b)'s particularity requirements and so cannot invoke the fraudulent concealment doctrine without adequate amendment.

Johnson again attempts to skirt any informed challenge from Glock with a single pleading that he "first discovered the Glock Defendants' concealment of the Unsupported Chamber Defect around August 2020." FAC ¶ 52. Even this pleading, however, appears carefully worded to avoid the issue. Johnson pleads only that he discovered the *concealment* in August 2020, not that he discovered the *defect*. That is perhaps a simple pleading error; if so, it can be corrected in an amended complaint.

1    This claim will be dismissed with leave to amend.  Accordingly, the MMWA claim (the ninth claim for relief) must also be dismissed because it turns entirely on this claim and the express warranty claim.

**V.  CLASS ALLEGATIONS**

Glock separately moves to strike the class allegations for various reasons.  Because no individual claims remain, there is no need to address the class allegations now, especially because an amended complaint will need to clear up numerous areas of uncertainty.

**CONCLUSION**

The motion to dismiss and strike is GRANTED with leave to amend.  Any amended complaint shall be filed within 30 days of the date below.

**IT IS SO ORDERED.**

Dated: February 8, 2021



William H. Orrick
United States District Judge

17