**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

**LEWIS LAW FIRM, PLC**
Robert K. Lewis (AZ SBN 016625)
*Admitted Pro Hac Vice*
Christopher A. Treadway (AZ SBN 024171)
*Admitted Pro Hac Vice*
2302 N. 3rd Street
Phoenix, Arizona 85004
Tel: (602) 889-6666
Fax: (602) 252-1446
Email: rob@lewisandporka.com
Email: chris@lewisandporka.com

**POKORA LAW, PLC**
Amy M. Pokora (AZ SBN 027201)
*Admitted Pro Hac Vice*
2302 N. 3rd Street
Phoenix, Arizona 85004
Tel: (602) 889-6666
Fax: (602) 252-1446
Email: amy@lewisandporka.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN C. JOHNSON, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GLOCK, INC., a Georgia Corporation; GLOCK Ges.m.b.H, an Austrian entity; JOHN and JANE DOES I through V; ABC CORPORATIONS I-X, XYZ PARTNERSHIPS, SOLE PROPRIETORSHIPS and/or JOINT VENTURES I-X, GUN COMPONENT MANUFACTURERS I-V,<br><br>Defendants. | CASE NO.: 3:20-cv-08807-WHO<br><br><u>SECOND AMENDED CLASS ACTION COMPLAINT FOR:</u><br><br>**(1)**   **VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT;**<br><br>**(2)**   **FRAUDULENT OMISSION;**<br><br>**(3)**   **UNFAIR BUSINESS PRACTICES, CAL. BUS. & PROF. CODE § 17200, *et seq.*;**<br><br>**(4)**   **FALSE ADVERTISING, CAL. BUS. & PROF. CODE § 17500, *et seq.*** |

Plaintiff STEVEN C. JOHNSON brings this action against Defendants GLOCK, INC., a Georgia Corporation; GLOCK Ges.m.b.H, an Austrian entity; JOHN and JANE DOES I through V, ABC CORPORATIONS I-X, XYZ PARTNERSHIPS, SOLE PROPRIETORSHIPS and/or JOINT VENTURES I-X, GUN COMPONENT MANUFACTURERS I-V, and alleges as follows:

**INTRODUCTION**

1.  Plaintiff brings this class action on behalf of himself, and all other individuals who own certain handguns (the "Class Guns") which were designed, manufactured, assembled, imported, and marketed by Glock Ges.m.b.H and Glock, Inc. (the "Glock Defendants"), and distributed and sold throughout California.

2.  The Class Guns contain at least one defect which renders the pistols unreasonably dangerous and unfit for their intended use.  In short, the gun barrel chambers do not surround, or support, the bullet sufficiently before firing.  This is referred to as the "Unsupported Chamber Defect" (sometimes just the "Defect").  It means that, for every Class Gun, there is a significant chance that one or both of the following things will happen upon pulling the trigger:  (a) the brass casing of the bullet will bulge out or "smile," thereby damaging the brass casing and making it worthless; and possibly (b) "blow out" or "kaboom," which is when the round/casing blows up or separates and a piece of the casing dislodges, which can blow your hand off, or worse.  Both the "smile" and the "kaboom" repeatedly and verifiably manifest in the Class Guns.

3.  The Glock Defendants failed to sufficiently warn about the dangers of the Class Guns.  The Glock Defendants omitted material information bearing on the safety and effectiveness of the Class Guns.  Furthermore, the Glock Defendants promised that the Class Guns were reliable and safe for ordinary use and did not contain defects and were not unreasonably dangerous.  But this is not what the Glock Defendants designed, manufactured, sold, and distributed.  Rather, the Class Guns are defective and unreasonably dangerous.

4.  In filing this lawsuit, Plaintiff and the Class do not disparage the Second Amendment's right to bear arms.  Rather, Plaintiff and the Class seek to hold accountable the Glock Defendants for faulty and dangerous gun designs that were not adequately disclosed, thereby causing an unreasonable safety hazard.  Instead of impinging upon the Second

Amendment, this lawsuit is brought by and to protect individuals who have lawfully exercised their Second Amendment right to bear arms.

5.    Moreover, Glock has had for many years actual knowledge of the Unsupported Chamber Defect.  But the Glock Defendants have never issued an effective and complete warning to the public, never recalled the Class Guns, and they continue to falsely represent to the public that the Class Guns are safe and without any material defects.  In fact, Glock is aware that casings have been irreparably damaged and that individuals have been seriously injured as a result of the Unsupported Chamber Defect, and it is only a matter of time before more individuals are seriously injured or killed.

6.    At all times relevant to this action, the Glock Defendants had a duty to disclose and warn Plaintiff and the Class truthfully and accurately, and not to conceal or misrepresent such truth, about the Unsupported Chamber Defect.  Notwithstanding this duty, and in violation thereof, the Glock Defendants carelessly failed to disclose and warn Plaintiff and the Class, and concealed and misrepresented the truth, about the Class Guns and the Defect. Defendants did these things with the intent to deceive Plaintiff, the Class, and general public – who did not know and could not reasonably be expected to know of the Defect themselves because the Defect is latent and not apparent.  Indeed, the cause of the Defect originates from the common design and manufacture of the Class Guns, which is not common knowledge or otherwise well-known or appreciated. Plaintiff and the Class would not and could not know of the Defect by the exercise of reasonable diligence.

7.    At all relevant times to this action, the Glock Defendants have willfully, knowingly, and/or recklessly committed unfair or deceptive acts or practices in California for the express willful purpose of wrongfully concealing the Unsupported Chamber Defect and their knowledge of it in violation of California law.  Plaintiff now brings this action on behalf of himself and his fellow California purchasers of the Class Guns.

**PARTIES**

8.    Plaintiff STEVEN C. JOHNSON is over the age of 21 and is a resident of Oakland, California.  He is a retired police officer having served with the Oakland Police Department. Plaintiff owns a Class Gun, a Glock 30 SF (Short Frame) .45 caliber (Serial Number YWK822),

1  which was designed, manufactured, assembled, tested, marketed, imported, warranted, and
2  distributed by the Glock Defendants.  Plaintiff purchased his Class Gun on or around April 15,
3  2016, from an authorized U.S. Glock dealer in Castro Valley, CA.  Following California's
4  mandatory 10-day "cooling-off period" (i.e., when the Dealer Record of Sale is submitted to the
5  California Department of Justice), Plaintiff returned to the Glock dealer on or around April 28,
6  2016, to take possession of his Class Gun.  Unbeknownst to Plaintiff at the time that he purchased
7  and took possession of his Class Gun, it was defective and unreasonably dangerous.  Glock's
8  unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, and selling, the
9  defective and dangerous Class Gun has caused Plaintiff out-of-pocket loss, loss of use, and future
10  repair costs.  Plaintiff purchased his Class Gun under the mistaken belief that it was free of defects
11  and reasonably safe for use.  Plaintiff would not have purchased the Class Gun had he been aware
12  of the design defects and dangerous condition of the Class Guns.  Plaintiff sought to purchase a
13  handgun that was safe and free of defects. However, Plaintiff did not get the benefit of his
14  purchase because the product is defective, dangerous, and/or has the potential of causing great
15  bodily harm.  Plaintiff's gun contains the same Unsupported Chamber Defect shared by all Class
16  Guns.  Neither Glock nor any of its agents, distributors, or other representatives informed Plaintiff
17  or the Class of the existence of the defects or the dangerousness of using the Class Guns.  Plaintiff
18  has not fired his Class Gun since he first discovered the Defect, which was in 2020.  As a result of
19  the Glock Defendants' deception, Plaintiff will be unable to rely on Glock's advertising of
20  reliability and safety in the future.  For this reason, Plaintiff has chosen not to purchase another
21  Class Gun.

22      9.    Defendant Glock Ges.m.b.H is an Austrian corporation that designs, manufactures,
23  and tests the Class Guns and other firearms in Austria under the "Glock" brand name and
24  distributes the Class Guns and other firearms in this District and throughout California under the
25  "Glock" brand name via Defendant Glock, Inc.

26      10.   Defendant Glock, Inc. is a Georgia corporation that is licensed to and does business
27  in this District and throughout California.

28  ///

4
SECOND AMENDED CLASS ACTION COMPLAINT

1   11.    The Glock Defendants are so intertwined contractually for each other's liabilities

2   that they are essentially one entity regarding the allegations in this Complaint.

3   12.    At all times herein mentioned, each of the Glock Defendants were the agents and

4   employees of each of the remaining Defendants and, in doing the things alleged, was at all times

5   acting within the purpose, course, and scope of said agency or employment with the knowledge,

6   consent, permission, and subsequent ratification of each of the other Defendants.  The Glock

7   Defendants work jointly to target consumers in the State of California, and in this District, for sales

8   of Class Guns and other products. The Glock Defendants work directly with manufacturers,

9   dealers, retailers, distributors, and other entities located in this District, and throughout California,

10   to effectuate the goal of marketing and selling the Class Guns, availing themselves to the benefits

11   of the laws of California.  Each Defendant is the alter-ego of the other because the Defendants

12   share funds with one another, co-mingle business accounts, perform acts on one another's behalf,

13   and engage in other acts indicative of a false separation between their corporate structure.

14   **JURISDICTION AND VENUE**

15   13.    The Glock Defendants removed this action from the Superior Court of the State of

16   California for the County of Alameda to the United States District Court for the Northern District

17   of California, pursuant to 28 U.S.C. Sections 1332, 1441, 1446, and 1453.  They did so on the

18   grounds that, when the initial Complaint and First Amended Complaint were filed, complete

19   diversity of citizenship existed between Plaintiff and the Glock Defendants, the amount in

20   controversy exceeded the jurisdictional minimum, and because removal was permitted under the

21   Class Action Fairness Act ("CAFA").  *See* ECF No. 1.

22   **GENERAL ALLEGATIONS**

23   14.    Glock Ges.m.b.H began doing business in 1981.  The Glock Defendants have

24   continuously, since then, including on their website, boasted about Glock's "profound series of

25   engineering feats," its "revolutionary" designs, and its "culture of continuous improvement."

26   Glock continues: "The continuous pursuit of perfection in every facet of design, engineering, and

27   manufacturing, has firmly established GLOCK pistols as the standard by which all others are

28   compared."… "[i]t is our way of thinking, a culture of continuous improvement.  The 4th

1  generation of the GLOCK "Safe Action"® pistol brings revolutionary design changes to the

2  world's most popular pistol."

3      15.    Glock, on its website, also boasts about what it calls "Glock Perfection:" "[O]ur

4  commitment to 'Perfection' remains steadfast: we will never compromise quality. We will

5  continue to invest tremendous resources in the technology and talent necessary to improve our

6  products wherever possible; and we will always strive to deliver maximum customer satisfaction!"

7  The Glock website also advertises this simple and specific message: "Safe. Simple. Fast. =

8  Confidence."[1]

9      16.    At all times since at least 2016, the Glock Defendants openly represented to the

10 public, and continue to represent today, including on Glock's website, that their handguns,

11 including the Class Guns, are reliable and safe for use.  For example: Glock's website notes that

12 each "GLOCK [pistol] delivers on our promise of safety, reliability, and simplicity at an affordable

13 price."

14     17.    The reality, though, is that all the Class Guns are defective and inherently and

15 unreasonably dangerous to the user.[2]  More specifically, the Class Guns are 1) Glock branded, and

16 2) semi-automatic. A semi-automatic pistol is a firearm which fires, extracts, ejects and reloads

17 once for each pull and release of the trigger.   The Class Guns, furthermore, have the Unsupported

18 Chamber Defect.   Namely, the gun barrel chamber does not fully enclose the bullet casing

19 sufficiently before firing.  The feed ramp of Class Guns extends too far into the chamber, causing

20 the chamber to lack adequate support for the round/casing.  In turn, the force of a fired round

21 exerts unreasonable pressures upon the round/casing in the 6 o'clock position.  Below are pictures

22 illustrating a supported (left side) versus unsupported (right side) chamber, and the resulting Glock

23

24  [1] https://us.glock.com/

25  [2] Of course, a gun is an inherently dangerous item in many respects, especially for anyone standing
       in front of the person firing the gun.  This is not in dispute.  Thus, when a seller or
26     manufacturer says its guns are "safe," as Glock did here and continues to do today, it
       necessarily means to say that its guns will *operate* safely for the *holder* of the gun, *e.g.*, it is not
27     likely to backfire or blow up or shoot a bullet or fragments backwards or otherwise injure the
       holder.  This is what it means, and what the reasonable gun purchaser understands, when a
28     manufacturer says their gun is "safe."

"Smile" from an Unsupported Chamber Defect.  Note how much more of the brass is surrounded or supported in the photo on the left, versus the how much more of the brass is exposed on the right:



Supported →

← Unsupported



18.    The Class Guns with the Unsupported Chamber Defect include, but are not limited to the following models/series: Model 22, 22 Gen 4, 23, 23 Gen 4, 24, 27, 27 Gen 4, 35, 35 Gen 4, 35 Gen 4 MOS, 22 cut, 22 P, 23 cut, 23 P, 21 Gen 4, 21 SF, 30 Gen 4, 30s, 30 SF, 36, 41 Gen 4, 41 Gen 4 MOS, 37, 38, 39, 20 Gen 4, 20 SF, 29 Gen 4, 29 SF, 40 Gen 4 MOS, and all gun models with a similar chamber design and feed ramp length.

///

19.    The design of the Unsupported Chamber Defect is common to all Class Guns and creates the same defect in all Class Guns.  By purchasing and firing Class Guns, Plaintiff and the Class experienced and were harmed by the Unsupported Chamber Defect. The use and/or maintenance of the Class Guns by Plaintiff and the Class have no effect on the defective design of the Class Guns and the damages resulting from the defective design.

20.    The Defect, in turn, can create one or both of the following:  a) the Glock "bulge" or "smile" on the casing as mentioned above; and b) a blowout or kaboom.

21.    The Unsupported Chamber Defect causes damage to the brass casing of the round by forming a bulge or smile on the casing after being fired that mirrors the outline of the unsupported chamber.  This damage, commonly known as the "Glock Smile" or "Glock Bulge," affects newly manufactured, reloaded, and remanufactured brass casings. The defect in the Class Guns renders damage to the brass casings which is non-defective property.  The damage to the brass casings, because of the Defect in the Class Guns, is physical injury to property that stands apart from the manifestation of the Unsupported Chamber Defect itself. The "Glock Smile" or "Glock Bulge" is physical injury to property other than the Class Guns themselves.

 

22.    The damage to the brass casings renders the brass casings useless, nonfunctional, and valueless.  As a result of the damage to the brass casings caused by the Unsupported Chamber Defect, consumers have lost the ability to reuse the brass casings and can no longer use the brass

casings to make reloaded ammunition which is a common and typical practice among many gun owners, especially today when ammunition is so scarce and expensive.[3]  The damage to the brass casings because of the defect in the Class Guns prevents consumers from realizing the intended use of the brass casings.  As a result of the Defect in the Class Guns, and damage to the brass casings, the brass casings have no value, and consumers can no longer receive the economic benefit of re-selling them or reusing the brass casings by reloading the brass casings and firing reloaded ammunition made from the used brass casings. Reloaded ammunition is substantially cheaper as factory ammunition has become increasingly cost prohibitive due to ongoing supply shortages. The brass casings, after being fired through the Class Guns, are not a serviceable piece of equipment that consumers would have otherwise been able to use and get a benefit from had the brass casing been fired from a gun that did not contain the Unsupported Chamber Defect.

   23. Second, the blowout or kaboom occurs when the round/casing blows up or separates and a piece of the casing dislodges, which can cause severe injury to the shooter's hand or other body parts.  These pictures depict kabooms in other Glocks:



---

[3] *See* Chris Mudgett, *Scalpers Are Driving Up Ammunition Costs and Contributing to the Ammo Shortage,* Outdoor Life (Feb. 12, 2021), https://www.outdoorlife.com/story/guns/scalpers-driving-up-ammo-prices-and-ammunition-shortage/; Aaron Smith, *Gun Owners Take up Reloading to Sidestep Ammo Shortage*, Forbes (Mar. 4, 2021), https://www.forbes.com/sites/aaronsmith/2021/03/04/gun-owners-take-up-reloading-to-sidestep-ammo-shortage-but-it-may-be-too-late/?sh=5b2ebb1c2161




24.     The Unsupported Chamber Defect is a design defect common to all Class Guns and it is latent such that if the Class Guns work as designed, they are still defective, and Plaintiff and the Class would still be due relief.

25.     The Glock Defendants have knowingly manufactured, marketed, and sold thousands of defective Class Guns with the Unsupported Chamber Defect to consumers throughout

California. Indeed, Glock has known about the Defect and its potential to create smiles or kabooms, for years. For example, in 2007, two separate Glocks in service by the Winter Haven, FL police department kaboomed or exploded during two separate training incidents one year apart, causing the Winter Haven Police Chief to discontinue use of the Glock handguns in question over safety concerns. Other agencies have reported problems with Glock products such as the Portland Police Department. Portland PD was once involved in litigation with Glock after two .45-caliber Glock Model 21 pistols exploded in the hands of two officers. One of the officers involved in that incident sued Glock separately, along with ammunition manufacturers, for over $50M arising out of his personal injuries.

26.     Moreover, owners of Class Guns have repeatedly discussed the Defect on online forums, like glocktalk.com, for years, sharing their personal experiences of the kaboom or smile, including displaying pictures of their damaged pistols and brass casings. Over the years, Class Gun owners have reported the Defect to Glock and sent their damaged pistols and casings to Glock for examination, testing, and repair. Indeed, some Class Gun owners have sued the Glock Defendants on claims related to the Defect. For example, in 2015, a Massachusetts man sued Glock after experiencing a "kaboom" in a Class Gun on a 2012 hunting trip. According to the lawsuit, the gun exploded/blew apart while the plaintiff was holding the gun and firing it. The recoil and force from the exploding gun violently spun around the plaintiff's body and knocked him to the ground. Shrapnel from the gun struck the plaintiff's face and body. The plaintiff alleged he suffered hearing loss, loss of sensation in one of his hands, and injury to his leg.

27.     Also, numerous videos from at least as far back as 2008, and through 2020, have been published depicting Glock kabooms for Glock to see.

28.     These critical facts about the Class Guns and the Defect have been hidden from the public by the Glock Defendants' pattern of concealing the Defect and refusing to warn the public despite the Glock Defendants' knowledge of the Defect. The Class Guns are defective and inherently dangerous, and the Glock Defendants have known about the Unsupported Chamber Defect for years but have allowed the Class Guns to remain in the hands of unsuspecting gun owners to the imminent risk of harm to the owners of the Class Guns and the public.

29.     Despite knowledge about the Unsupported Chamber Defect, the Glock Defendants consciously and intentionally decided not to recall and/or retrofit the defective Class Guns which they know are unreasonably dangerous and defective.

30.     Despite a wealth of information Glock has regarding the defective design of the Class Guns as described herein, Glock has not undertaken any effort to inform the public and/or individuals who own Class Guns about the Unsupported Chamber Defect, or to issue any recalls and replace and/or repair and/or retrofit the Class Guns.

31.     Plaintiff filed this Class Action Complaint in order to obtain declaratory relief and compensation and to force the Glock Defendants to act as responsible corporate citizens by educating their customers, the lawful possessors of the Class Guns, and the public about the dangers of the Class Guns, repairing the Unsupported Chamber Defect in the Class Guns, or paying to allow the Plaintiff and the Class to replace the Class Guns and/or repair and replace the Defect in the Class Guns on their own.

32.     Plaintiff purchased his Class Gun because he believed it to be relatively safe and reliable.  Glock had never disclosed to him any safety defects like the Unsupported Chamber Defect.  Indeed, Glock expressly touted its guns as safe and reliable on its website, which Plaintiff viewed before his purchase.  He viewed all the specifications and features of the 30 SF, .45 caliber, he saw and relied on Glock's representations regarding safety and reliability, which were material to him, and most importantly, saw nothing from Glock suggesting any safety defects like the Unsupported Chamber Defect.  Glock, to date, upon information and belief, has never formally acknowledged or warned anyone about the Defect in any forum or format.

33.     Plaintiff then visited a local Glock dealer in Castro Valley with the intent to buy the Glock model he researched on Glock's website earlier that same week.  At no point did the authorized Glock dealer suggest the presence of any safety defects like the Unsupported Chamber Defect.

34.     Plaintiff did his due diligence before buying his Class Gun, including reviewing Glock's website, but did not learn anything about the Unsupported Chamber Defect and the potential for injury and property damage.  Plaintiff also reviewed the documentation that came

with his Class Gun and none of those things said anything about the Defect.  Had this information been included on the website or the materials that were provided with this gun, Plaintiff would not have purchased his Class Gun.  By his purchase of the Class Gun, and his firing of the Class Gun, Plaintiff experienced the Unsupported Chamber Defect and damage to the brass when he fired his gun and was at risk of bodily injury.  Plaintiff did not receive the benefit of purchasing a gun that was safe for ordinary use and free from defects.

## CLASS ALLEGATIONS

35.     Plaintiff re-alleges and re-incorporates all preceding paragraphs.

36.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

37.     This action satisfies the class action requirements of Federal Rule of Civil Procedure Rule 23.

38.     NUMEROSITY. The Class is composed of thousands of persons across California, including this District, the joinder of whom in one action is impractical.  While the exact number and identity of the Class' members are not presently known, they can be identified through the review of records in the Glock Defendants' possession, custody and control, and/or through other formal discovery, including, but not limited to, sales receipts, sales records, and registration records.  Plaintiff is informed and believes that thousands of Class Guns with the Unsupported Chamber Defect have been manufactured and sold in California. Consequently, the individuals in the Class are so numerous that the sheer number of aggrieved persons makes joinder of all such persons impracticable, and the disposition of their claims in a class action, rather than in individual actions, will benefit the parties and the Court and is the most efficient and fair way to resolve the controversy.

39.     COMMONALITY. There are predominant common questions and answers of law and fact and a community of interest among Plaintiff and the claims of the Class as follows:

          a.      Whether the Glock Defendants engaged in the conduct alleged herein;

          b.      Whether the common design of the Class Guns as described is defective;

c.     Whether the common design of the Class Guns as described is defective because the feed ramp of the handgun's chamber is too long, and extends into the chamber, causing the chamber to lack adequate support for the round/casing causing the force of a fired round to exert unreasonable pressures upon the round/casing in the 6 o'clock position.

d.     Whether the common design of the Class Guns as described is defective because the defects create a "blow out" or "Kaboom," causing the casing to fail, separate, and dislodge at the 6 o'clock position.

e.     Whether the common design of the Class Guns as described is defective because it causes damage to other property including, but not limited to, the brass casing.

f.     Whether the Glock Defendants have been wrongfully and/or unjustly enriched as a result of the conduct alleged herein;

g.     Whether Plaintiff and the Class are entitled to equitable relief, including but not limited to restitution.

h.     Whether the design or manufacturing of the Class Guns can cause the Unsupported Chamber Defect, rendering the Class Guns not suitable for their intended use;

i.     Whether the Glock Defendants knew or should have known that the Class Guns were defective;

j.     Whether the Glock Defendants had a duty to Plaintiff and the Class to disclose the true nature of the Class Guns;

k.     Whether the Glock Defendants had a duty to recall the Class Guns;

l.     Whether the Glock Defendants falsely represented that the Class Guns were of a certain standard, quality, and grade, when in fact, they were not;

m.     Whether the Glock Defendants suppressed and concealed material information regarding the true characteristics and defective nature of the Class Guns;

n.     Whether the Glock Defendants' false representations and suppression of the Defect was knowing, intentional, reckless, and/or malicious;

///

///

o.   Whether Plaintiff and the Class are entitled to compensatory, statutory, punitive, exemplary, and/or other forms of damages, and/or other monetary relief and, if so, in what amount;

p.   Whether the Glock Defendants were required to notify the owners of Class Guns regarding the Unsupported Chamber Defect and repair and/or retrofit the Class Guns; and

q.   Whether Plaintiff and the Class are entitled to an order: (1) permanently enjoining Glock from manufacturing, assembling, importing, marketing, advertising, distributing, and selling Class Guns, (2) requiring Glock to recall all Class Guns, and (3) requiring Glock to compensate Plaintiff and the Class.

40.   ADEQUACY OF REPRESENTATION. Plaintiff will fairly and adequately protect the interests of the Class' members and has no interests antagonistic to those of the Class.  Plaintiff has retained counsel and law firms that are experienced in the prosecution of complex class actions.

41.   PREDOMINANCE & SUPERIORITY. This action is appropriate for certification because questions of law and fact common to the Class predominate over questions affecting only individual members, and class treatment is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of Class members is impracticable.  The common liability issues in this class action may be resolved efficiently on a class-wide basis.  Should individual Class members be required to bring separate actions, assuming Class members were aware of the latent Unsupported Chamber Defect, this Court and/or courts throughout California would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.  The common design Defect of the Class Guns are latent, and the Class Guns are defective in a way that would not be apparent to Plaintiff and the Class.  As a result, the Class is unaware of the Defect and their claims against the Glock Defendants as a result

of the latent Defect; therefore, without notice of the Defect, a failure of justice will occur in the absence of a class action.

42.    Plaintiff, therefore, seeks certification of the following Class of persons:

> *All current and former owners of a Class Gun that was purchased in the State of California.*

43.    The Class excludes the Glock Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by the Glock Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Glock Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family; and persons who have suffered or claimed to have suffered physical injury as a result of a defective Class Gun.

## ESTOPPEL & TOLLING OF THE STATUTES OF LIMITATIONS

### A.    Continuing Act Tolling

44.    Since at least 2010, the Glock Defendants continuously marketed and sold the defective Class Guns to unsuspecting customers.  The Glock Defendants continuously represented and warranted the Class Guns as safe and dependable despite knowing about the Unsupported Chamber Defect.  By making these false representations and failing to disclose the existence of the Unsupported Chamber Defect in the Class Guns, the Glock Defendants engaged in a continuing wrong, exposing consumers over and over again to risk of injury and death, rendering inapplicable any statute of limitations.

45.    The Glock Defendants' knowledge of the Unsupported Chamber Defect is evidenced by numerous complaints by consumers, many of whom reported contacting Glock about the Defect.  Other complainants reported taking their guns to Glock dealers, who are agents of Glock and, on information and belief, report consumer complaints back to Glock.

46.    The Glock Defendants had continuing knowledge of the Unsupported Chamber Defect and the dangers it posed yet continued to market and sell the Class Guns to Plaintiff and the Class.

**B.     Fraudulent Concealment Tolling**

47.     The Glock Defendants had a duty to disclose to Plaintiff and the Class the true quality and nature of the Class Guns, that the Class Guns had the Unsupported Chamber Defect; and that the Unsupported Chamber Defect requires repairs, poses a safety risk, and reduces the intrinsic and resale value of the affected guns.

48.     The Glock Defendants knew, or were reckless or negligent in not knowing, that the Class Guns contain the Unsupported Chamber Defect, as alleged herein.

49.     The Glock Defendants concealed and omitted the Defect while making representations about the safety, dependability, and other attributes of the Class Guns, as alleged herein.

50.     Despite their knowledge of the Unsupported Chamber Defect, the Glock Defendants failed to disclose and concealed this material information from Plaintiff and the other Class' members, and instead continued to market the Class Guns as safe and dependable.

51.     The purpose of the Glock Defendants' concealment of the Unsupported Chamber Defect was to prevent Plaintiff and the other Class' members from seeking redress.

52.     Plaintiff and the Class justifiably relied on the Glock Defendants to disclose the existence of dangerous defects, including the Unsupported Chamber Defect, in the Class Guns that they purchased.  The Defect was not discoverable by Plaintiff and the Class through reasonable efforts.

53.     Any applicable statute of limitations has been tolled by the Glock Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

**C.     Discovery Rule Tolling**

54.     Through the exercise of reasonable diligence, Plaintiff and the Class could not have discovered that the Glock Defendants were concealing and misrepresenting the existence of the Unsupported Chamber Defect, which is latent in the Class Guns, and the risks it posed.

55.     Plaintiff and the Class could not have reasonably discovered, and could not have known the facts that would have caused a reasonable person to suspect, that the Glock Defendants failed to disclose material information within their knowledge about a dangerous defect.

1

### D.     COVID-19 Tolling

2      56.     On or around April 6, 2020, the Judicial Council of California adopted Emergency

3   Rule No. 9, which effectively suspended the statute of limitations on all civil cases in California

4   until 90-days after Governor Gavin Newsom lifted his state of emergency declaration – which

5   Governor Newsom still has yet to do.  This was done to protect parties who have causes of action

6   that accrued before or during the COVID-19 pandemic, such as Plaintiff and members of the Class.

7      57.     On or around May 29, 2020, the Judicial Council of California amended

8   Emergency Rule No. 9 to detach it from the Governor Newsom's state of emergency declaration

9   and restart the statutes of limitations on set dates.  For causes of action having limitations periods

10  that exceed 180 days, such as the claims at issue herein, the statutes were tolled until October 1,

11  2020.  The rule is broad in scope and applies to all civil causes of action.  Plaintiff originally filed

12  suit on October 1, 2020.  *See* ECF No. 1.

13                              ### CAUSES OF ACTION

14
                         **FIRST CAUSE OF ACTION**
                **VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")**
15                       (Individually and on Behalf of the Class)
                              (As to all Defendants)
16

17     58.     Plaintiff re-alleges and re-incorporates all preceding paragraphs.

18     59.     The Glock Defendants are "persons" as defined by California Civil Code § 1761(c).

19     60.     Plaintiff and the Class members are "consumers" within the meaning of California

20  Civil Code § 1761(d) because they purchased Class Guns for personal, family, or household use.

21     61.     The sale of Class Guns to Plaintiff and the putative Class members is a

22  "transaction" as defined by California Civil Code § 1761(e).

23     62.     The Glock Defendants' acts and practices, which were intended to result, and which

24  did result, in the sale of Class Guns, violate § 1770 of the Consumers Legal Remedies Act

25  ("CLRA") for at least the following reasons:

26            a.      The Glock Defendants represented that the Class Guns have characteristics,

27            uses or benefits which they do not have;

28  ///

                                     18
                  SECOND AMENDED CLASS ACTION COMPLAINT

   b.  The Glock Defendants advertised their goods with intent to not sell them as advertised;

   c.  The Glock Defendants represented that their products are of a particular standard, quality, or grade when they are not; and

   d.  The Glock Defendants represented that their goods have been supplied in accordance with a previous representation when they have not.

  63. By failing to disclose and concealing the defective nature of the Class Guns from Plaintiff and the Class members, the Glock Defendants violated California Civil Code § 1761(a), as they represented that the Class Guns had characteristics and benefits that they do not have, and represented that the Class Guns and their feed ramp/chamber components were of a particular standard, quality, or grade when they were of another. *See* California Civil Code §§ 1761(a)(5), (7), (9), and (16).

  64. The Glock Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious risk on the public.

  65. The Glock Defendants knew the Class Guns suffered from the Unsupported Chamber Defect, were defectively designed or manufactured, and were not suitable for their intended use. The Defect is in each of the Class Guns at purchase but may not have been discovered by putative Class members until months, or years, after the purchase.

  66. As a result of the Glock Defendants' omissions or of their reliance on the Glock Defendants' misrepresentations, owners of the Class Guns suffered an ascertainable loss of money, property, and/or value of the Class Guns.

  67. The Glock Defendants were under a duty to Plaintiff and the Class members to disclose the defective nature of the Class Guns and/or associated repair costs because the Glock Defendants were in a superior position to know the true state of facts about the Unsupported Chamber Defect in the Class Guns and Plaintiff and the Class members could not reasonably have been expected to learn or discover that their guns had a dangerous safety defect until it manifested.

///

68.     In failing to disclose the defective nature of the Class Guns, the Glock Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

69.     A reasonable consumer would have considered the facts the Glock Defendants concealed or did not disclose to Plaintiff and the Class members to be material in deciding whether to purchase the Class Guns or pay less for them.

70.     Plaintiff and the Class members are reasonable consumers who do not expect their guns to experience a "blow out" or "Kaboom" due to an unsupported chamber or the Defect.  They likewise do not expect their guns to cause damage to other property including, but not limited to, brass casings. This is the reasonable and objective consumer expectation relating to consumer guns.

71.     As a result of the Glock Defendants' conduct, Plaintiff and the Class members were harmed and suffered actual damages.

72.     As a direct and proximate result of the Glock Defendants' unfair and deceptive acts or practices, Plaintiff and the Class members suffered and will continue to suffer actual damages.

73.     Plaintiff, on behalf of himself and all other similarly situated California consumers, and as appropriate, on behalf of the general public of the State of California, seeks injunctive relief prohibiting Defendants from continuing these unlawful practices pursuant to California Civil Code § 1782(d), and such other appropriate equitable relief.

74.     Plaintiff also seeks damages under the CLRA.  Plaintiff timely and sufficiently before the filing of this complaint sent a notice letter to the Glock Defendants that complied in all respects with California Civil Code § 1782(a).  Among other things, the notice letter demanded that the Glock Defendants remedy its CLRA violation by correcting, repairing, replacing, or otherwise rectifying the Unsupported Chamber Defect.  The Glock Defendants failed to respond to Plaintiff's letter or otherwise correct the alleged wrongs.  Under California Civil Code § 1782(d): "Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages."  Plaintiff has appropriately pled a request for damages under this cause of action.

**SECOND CAUSE OF ACTION**
**FRAUDULENT OMISSION**
(Individually and on Behalf of the Class)
(As to all Defendants)

75.     Plaintiff re-alleges and re-incorporates all preceding paragraphs.

76.     The Glock Defendants were aware of the Unsupported Chamber Defect within the Class Guns when the Class Guns were marketed and sold to Plaintiff and the other Class members.

77.     Having been aware of the Unsupported Chamber Defect within the Class Guns and having known that Plaintiff and the other Class members could not have reasonably been expected to know of the Defect, the Glock Defendants had a duty to disclose the Defect to Plaintiff and the other Class members in connection with the sale of the Class Guns.

78.     The Glock Defendants did not disclose the Unsupported Chamber Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Guns.

79.     For the reasons set forth above, the Unsupported Chamber Defect within the Class Guns comprises material information with respect to the sale of the Class Guns.

80.     In purchasing the Class Guns, Plaintiff and the other members of the Class reasonably relied on the Glock Defendants to disclose known material defects with respect to the Class Guns.

81.     Had Plaintiff and the other members of the Class known of the Unsupported Chamber Defect within the Class Guns, they would not have purchased the Class Guns or would have paid less for the Class Guns.

82.     Through their omissions regarding the Unsupported Chamber Defect within the Class Guns, the Glock Defendants intended to induce, and did induce, Plaintiff and the other Class members to either purchase a Class Gun that they otherwise would not have purchased, or pay more for a Class Gun than they otherwise would have paid.

83.     As a direct and proximate result of the Glock Defendants' omissions, Plaintiff and the other Class members have incurred damages in an amount to be determined at trial.

84.     Plaintiff, on behalf of himself and the Class, demands judgment against the Glock

Defendants for compensatory damages for himself and each member of the Class, for the establishment of a common fund, plus attorneys' fees, interest and costs.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, ET SEQ.**
(Individually and on Behalf of the Class)
(As to all Defendants)

85.     Plaintiff re-alleges and re-incorporates all preceding paragraphs.

86.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

87.     Plaintiff and members of the Class are reasonable consumers who do not expect their guns to fail to perform or damage other property due to an unsupported chamber and inadequate round/casing support.

88.     The Glock Defendants knew the Class Guns suffered from inherent defects, were defectively designed or manufactured, were dangerous, would fail prematurely, and were not suitable for their intended use.

89.     In failing to disclose the Unsupported Chamber Defect, the Glock Defendants' knowingly misrepresented facts, or intentionally concealed material facts and breached their duty not to do so.

90.     The Glock Defendants were under a duty to Plaintiff and members of the Class to disclose the Unsupported Chamber Defect because Defendants were in a superior position to know the true state of facts about the safety defect and Plaintiff and members of the Class could not reasonably have been expected to learn or discover that the Class Guns had a dangerous safety defect until it manifested.

91.     A reasonable consumer would have considered the facts the Glock Defendants concealed or did not disclose to Plaintiff and members of the Class to be important in deciding whether to purchase the Class Guns.  Had Plaintiff and members of the Class known of the Unsupported Chamber Defect in the Class Guns, they would have not purchased the guns or would have paid less for them.

22
SECOND AMENDED CLASS ACTION COMPLAINT

92.     The Glock Defendants continued to conceal the defective nature of the Class Guns even after consumers began to report problems.  The Glock Defendants continue to cover up and conceal the true nature of the Unsupported Chamber Defect.

93.     The Glock Defendants' acts, conduct, and practices were likely to deceive reasonable members of the public.

94.     The Glock Defendants' business acts and practices were also "unfair" because they are immoral, unethical, oppressive, unscrupulous, and/or are substantially injurious to consumers.

95.     The Glock Defendants' business acts were also unlawful.  A business practice is unlawful under the UCL if it is forbidden by any law.  The Glock Defendants' acts, conduct, and practices were unlawful, in that they constituted, among other things, violations of the Consumer Legal Remedies Act and False Advertising Law.

96.     As a direct and proximate result of the Glock Defendants' unfair and deceptive practices, Plaintiff and members of the Class have lost money or property.

97.     The Glock Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and members of Class pursuant to sections 17203 and 17204 of the California Business and Professions Code.  Plaintiff and members of the Class also seek injunctive relief, including public injunctive relief, as deemed appropriate by the Court, as well as attorneys' fees and costs of suit under section 1021.5 of the California Code of Civil Procedure.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE § 17500, ET SEQ.**
(Individually and on Behalf of the Class)
(As to all Defendants)

98.     Plaintiff re-alleges and re-incorporates all preceding paragraphs.

99.     The Glock Defendants have benefitted from intentionally selling at an unjust profit defective Class Guns at artificially inflated prices due to the concealment of the Unsupported Chamber Defect, and Plaintiff and other Class members overpaid for their Class Guns.

100.    The Glock Defendants disseminated advertising and promotional material that was designed to convey to the public that the Class Guns were safe, reliable, and operated as consumers would expect the Class Guns to operate.

101.    The Glock Defendants were aware, or should have been aware, of the Unsupported Chamber Defect at the time Plaintiff and other Class members purchased the Class Guns.

102.    However, the Glock Defendants negligently or intentionally made representations regarding safety and reliability in its advertisements, and, due to issues it was aware of, did not sell Class Guns that conformed to the representations and promises in its publicly disseminated advertisements.  Through their omissions of a material fact (*i.e.,* the Defect within the Class Guns), the Glock Defendants intended to induce, and did induce, Plaintiff and the other Class members to either purchase a Class Gun that they otherwise would not have purchased, or pay more for a Class Gun than they otherwise would have paid.

103.    The Glock Defendants unjustly received and retained benefits from Plaintiff and the other Class members.

104.    It is inequitable and unconscionable for the Glock Defendants to retain these benefits.

105.    Because the Glock Defendants wrongfully concealed their misconduct, Plaintiff and members of the Class were not aware of the facts concerning the Class Guns and did not benefit from the Glock Defendants' misconduct.

106.    The Glock Defendants knowingly accepted the unjust benefits of its wrongful conduct.

107.    The Glock Defendants had notice of conduct as alleged herein.

108.    As a result of the Glock Defendants' misconduct, Plaintiff and members of the Class suffered an injury-in-fact and lost money and/or property in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and the Class he seeks to represent, prays for a judgment against the Glock Defendants as follows:

1.    An Order certifying this action to proceed as a class action, and naming Plaintiff as the representative for the Class and their counsel as class counsel;

///

///

2.    An award, where allowable, in favor of Plaintiff and the Class that includes compensatory, exemplary or punitive damages, treble damages, and statutory damages, including interest thereon, in an amount to be proven at trial;

3.    An award, where allowable, in favor of Plaintiff and the Class for compensatory damages that includes the cost of repair, replacement or modification of the Defect to render safe the Class Guns;

4.    Declare that the Glock Defendants are financially responsible for notifying members of the Class of the Defect with the Class Guns;

5.    An Order enjoining the Glock Defendants from further deceptive advertising, marketing, distribution, and sales practices with respect to the Class Guns and requiring the Defendants to repair and/or replace Plaintiff and the other Class members' Class Guns with a suitable alternative pistol of Plaintiff's and Class members' choosing.

6.    Declaring that the Glock Defendants must disgorge, for the benefit of all Class members, all or part of the ill-gotten profits it received from the sale of the Class Guns, or order the Glock Defendants to make full restitution to Plaintiff and the Class members.

7.    An Order permanently enjoining the Glock Defendants from continuing to engage in the unlawful and inequitable conduct alleged herein;

8.    Granting Plaintiff and the Class members all equitable remedies permitted by law against the Glock Defendants;

9.    An award of attorneys' fees and costs, as allowed by law;

10.    An award of pre-judgment and post-judgment interest, as provided by law;

11.    Leave for Plaintiff and the Class members to amend the Complaint to conform to the evidence produced at trial; and

12.    Such other relief against the Glock Defendants as the Court may deem just and proper under the circumstances and applicable law.

///

///

///

1

## **DEMAND FOR JURY TRIAL**

2
Plaintiff respectfully requests a jury on all triable issues.

3
Respectfully submitted:

4
Dated:  March 10, 2021

**NICHOLAS & TOMASEVIC, LLP**

5

6
By:

Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)

7
225 Broadway, 19th Floor
San Diego, CA 92101

8
Telephone: (619) 325-0492
Facsimile: (619) 325-0496

9
Email:  cnicholas@nicholaslaw.org
Email:  atomasevic@nicholaslaw.org

10

11
**LEWIS LAW FIRM, PLC**
Robert K. Lewis

12
*Admitted Pro Hac Vice*
(AZ State Bar No. 016625)

13

14
Christopher Treadway
*Admitted Pro Hac Vice*
(AZ State Bar No. 024171)

15
2633 E. Indian School Road, Suite 360
Phoenix, Arizona 85016

16
Phone:  (602) 443-0402
Fax:     (602) 443-0403

17
Email:  rob@lewisandpokora.com
Email:  chris@lewisandpokora.com

18

19
**POKORA LAW, PLC**
Amy M. Pokora

20
*Admitted Pro Hac Vice*
(AZ State Bar No. 027201)

21
2633 E. Indian School Road, Suite 360
Phoenix, Arizona 85016

22
Phone: (602) 889-6666
Fax:     (602) 889-6681

23
Email:  amy@lewisandpokora.com

24
*Attorneys for Plaintiffs*

25

26

27

28

SECOND AMENDED CLASS ACTION COMPLAINT