1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| 7 STEVEN C. JOHNSON, | Case No. 3:20-cv-08807-WHO |
| 8  Plaintiff, | |
| | **ORDER GRANTING MOTION TO DISMISS** |
| 9  v. | |
| 10 GLOCK, INC., et al., | Re: Dkt. No. 46 |
| 11  Defendants. | |

12

13        Plaintiff Steven Johnson alleges, on behalf of himself and a proposed class, that defendants

14 Glock, Inc., and Glock Ges.m.b.H (collectively, "Glock") manufacture and sell defective guns

15 without disclosing that defect to consumers.  I previously granted Glock's motion to dismiss with

16 leave to amend due to various basic pleading failures.  Glock now moves to dismiss the four

17 misrepresentation by omission claims in the second amended complaint ("SAC").  Three of the

18 claims are, on these allegations, time-barred and Johnson has not adequately pleaded that Glock

19 had pre-sale knowledge of the alleged defect, requiring dismissal of the fourth.  The motion is

20 again granted with leave to amend.  Because this is the second time dismissal is granted for

21 essentially the same reason, a future dismissal on this ground will be with prejudice.[1]

22                                **BACKGROUND**

23        The facts here are drawn from the SAC [Dkt. No. 43] unless otherwise noted.  Glock

24 manufactures, markets, and sells firearms.  SAC ¶¶ 9–10.  Johnson lives in Oakland, California,

25 and purchased a Glock 30 SF .45 caliber gun manufactured by the defendants on or around April

26 15, 2016, from a licensed Glock dealer.  *Id.* ¶ 8.

27

28 _____

[1] This matter can be decided without oral argument; the hearing is VACATED.  Civ. L.R. 7-1(b).

Johnson alleges that certain Glock guns (the "Class Guns") have a defect: an "unsupported chamber." *Id.* ¶¶ 2, 17–20.  In brief, the "barrel chamber does not fully enclose the bullet casing sufficiently before firing.  The feed ramp of Class Guns extends too far into the chamber, causing the chamber to lack adequate support for the round/casing.  In turn, the force of a fired round exerts unreasonable pressures upon the round/casing in the 6 o'clock position." *Id.* ¶ 17.

This defect allegedly has two effects.  First, it damages the brass casing of a round.  *Id.* ¶ 21.  This damage is a "bulge" in the casing that Johnson (and apparently others) refer to as a "Glock Bulge" or "Glock Smile." *Id.*  According to Johnson, this damage "renders the brass casings useless, nonfunctional, and valueless," which means consumers cannot reuse them.  *Id.* ¶ 22.  Second, the defect allegedly can result in a "blowout," sometimes referred to by the parties as a "kaboom" or "catastrophic failure." *Id.* ¶¶ 20, 23.  These blowouts allegedly occur "when the round/casing blows up or separates and a piece of the casing dislodges." *Id.* ¶ 23.  Blowouts can, Johnson claims, "cause severe injury to the shooter's hand or other body parts." *Id.*

Johnson alleges that Glock does not warn consumers about this defect or its potential consequences.  *Id.* ¶ 25.  As discussed in detail below, he asserts that Glock has been aware of the defect "for years." *Id.*  He claims that he purchased his firearm "because he believed it to be relatively safe and reliable"; that he "viewed all the specifications and features of the 30 SF, .45 caliber, he saw and relied on Glock's representations regarding safety and reliability, which were material to him, and most importantly, saw nothing from Glock suggesting any safety defects like the Unsupported Chamber Defect"; and that he "did his due diligence before buying his Class Gun." *Id.* ¶¶ 32–34.  He claims that he "first discovered the Defect . . . in 2020" but does not plead further facts about this alleged discovery.  *Id.* ¶ 8.

Johnson filed suit in state court on October 1, 2020; he amended his complaint in November; and Glock removed the case to this court in December.  Dkt. No. 1.  The suit originally asserted claims on behalf of a nationwide putative class, but Johnson abandoned those claims in the last round of pleadings motions.  *See* Order Granting Motion to Dismiss ("Prior Order") [Dkt. No. 38] 3 n.1.  The SAC seeks certification of a class of persons that own Class Guns that were purchased in California.  SAC ¶ 42.  Johnson originally alleged three broad

United States District Court
Northern District of California

1    categories of claims: consumer misrepresentations, product liability, and breaches of warranty.

2    On February 8, 2021, I granted Glock's motion to dismiss the First Amended Complaint with

3    leave to amend.  *See generally* Prior Order.  Johnson has elected to replead only four

4    misrepresentation-based claims under California law: the Consumers Legal Remedies Act

5    ("CLRA"), CAL. CIV. CODE §§ 1750 *et seq.*; the Unfair Competition Law ("UCL"), CAL. BUS. &

6    PROF. CODE § 17200 *et seq.*; the False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE §

7    17500; and common-law fraudulent omission.  SAC ¶¶ 58–108.  Glock again moves to dismiss

8    and to strike the class allegations.

9                                    **LEGAL STANDARD**

10           Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a district court must dismiss a

11   complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6)

12   motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible

13   on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially

14   plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that

15   the defendant is liable for the misconduct alleged."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678

16   (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted

17   unlawfully."  *Id*.  While courts do not require "heightened fact pleading of specifics," a plaintiff

18   must allege facts sufficient to "raise a right to relief above the speculative level."  *See Twombly*,

19   550 U.S. at 555, 570.

20           In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

21   Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

22   plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court

23   is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

24   fact, or unreasonable inferences."  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

25   2008).

26           FRCP 9(b) imposes a heightened pleading standard where a complaint alleges fraud or

27   mistake.  Under FRCP 9(b), to state a claim for fraud, a party must plead with "particularity the

28   circumstances constituting the fraud," and the allegations must "be specific enough to give

United States District Court
Northern District of California

3

1    defendants notice of the particular misconduct . . . so that they can defend against the charge and

2    not just deny that they have done anything wrong."  *See Kearns v. Ford Motor Co.*, 567 F.3d

3    1120, 1124 (9th Cir. 2009) (citation omitted).  "Averments of fraud must be accompanied by the

4    who, what, when, where, and how of the misconduct charged."  *Vess v. Ciba-Geigy Corp.*, 317

5    F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

6         If the court dismisses the complaint, it "should grant leave to amend even if no request to

7    amend the pleading was made, unless it determines that the pleading could not possibly be cured

8    by the allegation of other facts."  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In

9    making this determination, the court should consider factors such as "the presence or absence of

10   undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous

11   amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See*

12   *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

13                                   **DISCUSSION**

14   **I.    CLRA, FAL, AND FRAUDULENT OMISSION CLAIMS**

15        Glock levels several arguments against each of Johnson's claims.  It first argues that the

16   CLRA, FAL, and fraudulent omission claims are time-barred by their statutes of limitations.  *See*

17   Motion to Dismiss ("Mot.") [Dkt. No. 46] 5–10.  I agree that the statutes have run and that

18   Johnson has not adequately pleaded that any tolling doctrine applies.  The motion to dismiss

19   claims one, two, and four is GRANTED with leave to amend.

20        A motion to dismiss based on a statute of limitations can only be granted when its running

21   "is apparent on the face of the complaint."  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997

22   (9th Cir. 2006) (internal quotation marks and citation omitted).  The parties agree that the relevant

23   statutes of limitations for these CLRA, FAL, and fraudulent omission claims are all three years

24   from when the claim accrues.  *See* Mot. 5; Opposition to the Mot. ("Oppo.") [Dkt. No. 52] 5; *see*

25   *also* CAL. CIV. CODE § 1783; CAL. CIV. P. CODE § 338.  They also agree that the CLRA and FAL

26   claims accrue "when a defendant misrepresents or omits material information regarding a product

27   or service and a consumer makes a purchase as a result of such deceptive practices."  *Plumlee v.*

28   *Pfizer, Inc.*, No. 13-CV-00414-LHK, 2014 WL 695024, at *7 (N.D. Cal. Feb. 21, 2014); Oppo. 6;

United States District Court
Northern District of California

4

1  Mot. 5.  And they agree that the fraudulent omission claim did not accrue "until the discovery, by

2  the aggrieved party, of the facts constituting the fraud or mistake."  CAL. CIV. P. CODE 338(d);

3  Oppo. 6; Mot. 5.  The parties treat all claims as rising or falling together.

4        Johnson purchased the gun more than three years before filing suit, but he argues that three

5  tolling doctrines save his claims.[2]  Although a statute of limitations is an affirmative defense,

6  Johnson bears the burden of adequately pleading tolling.  *Hinton v. Pac. Enterprises*, 5 F.3d 391,

7  395 (9th Cir. 1993).

8        **A. Fraudulent Concealment and Delayed Discovery Tolling**

9        Johnson argues that his claims should be tolled because of Glock's alleged fraudulent

10  concealment and because of the discovery doctrine.  The delayed discovery rule is also the accrual

11  standard for the fraudulent omission claim.  See *Britton v. Girardi*, 235 Cal. App. 4th 721, 733

12  (2015) (the fraudulent omission standard "codifies the delayed discovery rule")/

13        "To align the actual application of the limitations defense more closely with the policy

14  goals animating it, the courts and the Legislature have over time developed a handful of equitable

15  exceptions to and modifications of the usual rules governing limitations periods."  *Aryeh v. Canon*

16  *Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013).  The fraudulent concealment doctrine "tolls the

17  statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow

18  stale."  *Id.*  But "that tolling will last as long as a plaintiff's reliance on the misrepresentations is

19  reasonable."  *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 637 (2007).  This requires

20  "the plaintiff (1) plead with particularity the facts giving rise to the fraudulent concealment claim

21  and (2) demonstrate that he or she used due diligence in an attempt to uncover the facts."  *Vanella*

22  *v. Ford Motor Co.*, No. 3:19-CV-07956-WHO, 2020 WL 887975, at *5 (N.D. Cal. Feb. 24, 2020)

23  (internal quotation marks and citation omitted).  To satisfy the second element, "the complaint

24  must allege (1) when the fraud was discovered; (2) the circumstances under which it was

25  discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or

26  presumptive knowledge of facts sufficient to put him on inquiry."  *Cmty. Cause v. Boatwright*, 124

27

28  _____

[2] In the SAC, Johnson also alleges tolling due to COVID-19.  SAC ¶¶ 56–57.  He does not assert that argument in his brief.

United States District Court
Northern District of California

1    Cal. App. 3d 888, 900 (1981); *see Finney v. Ford Motor Co.*, No. 17-CV-06183-JST, 2018 WL

2    2552266, at *3 (N.D. Cal. June 4, 2018).  Because the exception sounds in fraud, it must be

3    pleaded with particularity under Rule 9(b).  *Finney*, 2018 WL 2552266, at *3; *Vanella*, 2020 WL

4    887975, at *5.

5         The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or

6    has reason to discover, the cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797,

7    807 (2005).  A reason to discover exists when the plaintiff has reason "at least to suspect a factual

8    basis for its elements."  *Id.* (internal quotation marks and citation omitted).  To rely on this rule, "a

9    plaintiff must plead: (1) the time and manner of discovery *and* (2) the inability to have made

10   earlier discovery despite reasonable diligence."  *Id.* at 808.  "California law makes clear that a

11   plaintiff must allege specific facts establishing the applicability of the discovery-rule exception."

12   *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995).

13        Because of their overlapping elements, courts sometimes analyze these doctrines together

14   when they are based on the same facts.  *See, e.g.*, *Finney*, 2018 WL 2552266, at *3–*4; *Vanella*,

15   2020 WL 887975, at *4.  Both doctrines require showing (1) when the alleged discovery of the

16   violation or fraud occurred, (2) the manner or circumstances of the discovery, and (3) reasonable

17   diligence that the discovery could not be made earlier.  Johnson has not adequately shown any of

18   these.

19        Johnson has not adequately alleged when and under what circumstances the discovery of

20   the violation or fraud occurred,  let alone with the particularity required.  Johnson's sole allegation

21   is that he discovered the defect "in 2020."  SAC ¶ 8.  Even if the heightened pleading standard did

22   not apply, that would be insufficient.  But that standard does apply to fraudulent concealment, and

23   California law requires specific facts to support the discovery doctrine.  Johnson must plead the

24   manner and circumstances of discovery, not just that it happened.  I previously highlighted this

25   deficiency in Johnson's pleading when I granted the motion to dismiss his First Amended

26   Complaint.  Prior Order 15–16.

27        Johnson must plead the particulars of when and how he discovered the alleged fraud;

28   otherwise, there is no way for Glock to fairly challenge it or for me to adjudicate whether the

1    claim is tolled.  If, for instance, Johnson's discovery of the alleged fraud is revealed to be the

2    result of a recurring warning sign that had occurred previously, he may not be able to invoke the

3    exception.  *See, e.g.*, *Finney*, 2018 WL 2552266, at *4 ("Finney's allegations are particularly

4    implausible given the absence of an explanation as to why a 2015 engine light revealed the defect,

5    but no prior engine issue—whether during the 2005 to 2010 warranty repair period, or after—

6    revealed the defect.").

7         Next, Johnson has not adequately pleaded reasonable diligence or lack of excuse.  To be

8    sure, he includes a conclusory allegation that he would not have discovered the alleged violations

9    through reasonable diligence, SAC ¶ 54, but that is insufficient.  *Cf. Philips v. Ford Motor Co.*,

10   No. 14-CV-02989-LHK, 2016 WL 1745948, at *14 (N.D. Cal. May 3, 2016) ("California

11   Plaintiffs allege that Colburn's vehicle first experienced issues in October 2014, at which point

12   Colburn took her vehicle in for service at a local Ford dealership.  Colburn's actions thus

13   demonstrate 'due diligence' in uncovering 'the [pertinent] facts.'" (internal citations omitted)).

14   Because Johnson does not plead the basic facts of when and how he discovered the alleged fraud

15   (other than the words "in 2020"), pleading about reasonable diligence would be unhelpful in any

16   event: without knowing the circumstances of discovery, it is impossible to know whether

17   reasonable diligence would have caused that discovery earlier.  *Cf. Allen v. Similasan Corp.*, 96 F.

18   Supp. 3d 1063, 1071 (S.D. Cal. 2015) ("She does not explain why being a layperson in 2000

19   prevented her from doing the same research in 2010, which was not prompted by any special

20   occurrence; rather, the 2010 research was conducted because the Products were purportedly not

21   working, which Rideout claims was the case in 2000.").

22        Johnson's response to all this is to lay out bare legal standards and repeat the conclusory

23   allegations in his complaint.  *See* Oppo. 6–8, 10.  His only other substantive response is to argue

24   that he would *not* have been on notice from seeing the "bulges" alone (as Glock argues).  Whether

25   that is true cannot be resolved because Johnson does not plead the manner and circumstances in

26   which discovery occurred.

27        Because this is potentially an issue of pleading failure, I am allowing Johnson leave to

28   amend.  I will caution him, however, that this is now the second order finding that his conclusory

pleading on this precise issue required dismissal.  Last time around, I said that, "[w]hat Johnson cannot do . . . is withhold the fact of when he purchased the gun (provided he knows of that fact, as he essentially admits he does), depriving Glock of the opportunity to fairly raise a time-bar objection."  Prior Order 16.  And I said that he "attempts to duck this issue by pleading fraudulent concealment" but that he failed to do so with particularity.  *Id.*  Now, Johnson has inched past the insubstantial allegations of his First Amended Complaint to add the words "in 2020" to his SAC. Johnson would be well-served, in his amended complaint, by pleading every fact he has that is relevant to his alleged discovery and describing in detail when and under what circumstances he made it.  A future dismissal on this ground will be with prejudice due to repeated failures to adequately plead despite clear guidance.

### B.  Continuing Violation Tolling

Johnson also argues that the statutes of limitations were tolled because of the continued violation doctrine.  Oppo. 9.  The continuing violation doctrine is inapplicable here.

"The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them."  *Aryeh*, 55 Cal. 4th at 1192.  As the California Supreme Court has explained, the doctrine exists to remedy a situation in which "[s]ome injuries are the product of a series of small harms, any one of which may not be actionable on its own." *Id.* at 1197.  And it seeks to avoid "run[ning] to court in response to every slight, without first attempting to resolve matters through extrajudicial means, out of fear that delay would result in a time-barred action."  *Id.*  at 1198.  As a result, "[a]llegations of a pattern of reasonably frequent and similar acts may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period."  *Id.*

The SAC identifies a single injury: Johnson's purchase.  In the false advertising context, courts have found the continuing violation doctrine applicable when a consumer repeatedly purchased a product, even if the first purchase was outside the limitations period.  *See, e.g.*, *Hunter v. Nature's Way Prod., LLC*, 2016 WL 4262188, at *12 (S.D. Cal. Aug. 12, 2016) ("Plaintiff

Levin adequately alleges that she relied on misrepresentations Defendants made on their Extra Virgin Coconut Oil and that the misrepresentations constituted a continuing violation over the course of the approximately five years that Plaintiff Levin continued to purchase the Extra Virgin Coconut Oil.").  In contrast, this case involves a single purchase.  *Cf. Clark v. Hershey Co.*, No. C 18-06113 WHA, 2019 WL 913603, at *7 (N.D. Cal. Feb. 25, 2019) (finding that the doctrine does not apply when there was no allegation of a "particularized purchase" and contrasting it with a situation in which a product was regularly purchased over the course of years).

Further, the equitable considerations that underlie the doctrine are not present here.  There is no alleged series of component acts that would not be actionable on their own and need the doctrine to link them.  *See Aryeh*, 55 Cal. 4th at 1198.  "Nor is this a case in which a wrongful course of conduct became apparent only through the accumulation of a series of harms."  *Id.*  Dismissal does not let Glock "obtain immunity in perpetuity from suit even for recent and ongoing misfeasance," *id.* at 1198, because plaintiffs can bring suit for *those* alleged injuries without having to rely on Johnson's stale claim.

Johnson's response relies largely on cases applying continuing acts tolling to situations that are fundamentally different from a consumer misrepresentation by omission—usually discrimination, which has its own particular features and doctrines.  *See* Oppo. 9.  His only case applying California's continuing acts tolling to a consumer misrepresentation claim is *Allred v. Frito-Lay N. Am., Inc.*, 2018 WL 1185227 (S.D. Cal. Mar. 7, 2018).  *Allred*, however, relied wholly on *Hunter* for its application of the rule.  *Id.*, at *8.  As explained above, *Hunter* involved a regular series of purchases over years and found that because violations in this series were in the limitations period, the otherwise untimely misrepresentations could be treated as a continuing violation.  Although *Allred* was not entirely clear about why it found the facts analogous to *Hunter*, it appears to be because, as that court stated earlier, the plaintiffs alleged that "they purchased the Product since at least 2012 or earlier."  *Id.*, at *7 (internal quotation marks omitted).  *Allred* did not hold that a fact pattern like the one here was subject to tolling.

## II.     UCL CLAIM

Glock does not argue that the UCL claim is time-barred.  It makes several other arguments

United States District Court
Northern District of California

on the merits of the misrepresentation claims, including that it did not have a duty to disclose the alleged defect under California law.  Mot. 10–16.

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  CAL. PROF. & BUS. CODE § 17200.  The "fraudulent" prong of the UCL is governed by the "reasonable consumer" test and the "unlawful" prong turns on other legal violations; here, those other violations are likewise governed by that test.  *Williams v. Gerber Prod. Co.*, 552 F.3d 934 (9th Cir. 2008); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009); *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *5 (N.D. Cal. Mar. 15, 2016) (collecting cases).

There is no duty to disclose any or every conceivable piece of information about a product under California law.  Instead, "[o]missions may be the basis of claims under California consumer protections laws, but to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018); s*ee also Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 834–35 (2006), as modified (Nov. 8, 2006).

There are two situations in which such a duty to disclose arises.  The first situation is when the undisclosed information "cause[s] an unreasonable safety hazard." *Hodsdon*, 891 F.3d at 861–62.  Under this theory, a plaintiff must adequately plead (1) a defect, (2) a safety hazard, (3) a causal connection between the defect and the hazard, and (4) the defendant's knowledge of the defect at the time of sale.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, at 1142–43 (9th Cir. 2012).  The second situation is when (1) the omission is material, (2) the defect is central to the product's function, and (3) one of the so-called *LiMandri* factors is met.  *Hodsdon*, 891 F.3d at 863.  The four *LiMandri* factors are:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011), as modified (Dec. 28, 2011) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).

United States District Court
Northern District of California

Glock contends that Johnson has not adequately pleaded that it had pre-sale knowledge of the alleged defect.[3]  For the reasons that follow, I agree, though it seems possible that Johnson could adequately allege that knowledge.  Johnson relies on several allegations to argue that he has shown that Glock had pre-sale knowledge.  I address each in turn.

Though it is not entirely clear, Johnson appears to rely on the mere fact that Glock sold the Class Guns since 2010.  *See* Oppo. 12.  Sale of an allegedly defective product alone is an insufficient basis from which to "infer scienter."  *See Wilson*, 668 F.3d at 1146–47.  Johnson also relies on bare and conclusory allegations that Glock "knew" of the defect before the sale.  Oppo. 12.  Allegations like that are insufficient as a matter of law.  *Wilson*, 668 F.3d at 1146–47.

Johnson makes several other arguments.  He alleges that "[t]he Glock Defendants' knowledge of the Unsupported Chamber Defect is evidenced by numerous complaints by consumers, many of whom reported contacting Glock about the Defect."  SAC ¶ 45; *see* Oppo. 12.  He also asserts that consumers posted about this issue on "online forums, like glocktalk.com, for years."  SAC ¶ 26.  Glock represents, and Johnson does not dispute, that "glocktalk.com" is not owned or controlled by Glock.  And he contends that "[o]ther complainants reported taking their guns to Glock dealers, who are agents of Glock and, on information and belief, report consumer complaints back to Glock."  *Id.* ¶ 45; *see* Oppo. 12.

Courts have routinely found that nebulous allegations that consumers made undated complaints are insufficient to show that a company had pre-sale knowledge of the defect.  *See Wilson*, 668 F.3d at 1147–48; *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *5 (N.D. Cal. June 16, 2010) ("None of those postings or complaints, however, include any dates, and therefore shed no light on when HP knew of the alleged defects."); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 975 n.9 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) (holding undated anecdotal complaints insufficient).  The Ninth Circuit

---

[3] I previously rejected Glock's argument that there was no plausible safety hazard.  *See* Prior Order 8–9.  As I explained, "[t]he allegation is that guns that suffer the defect can 'blow out,' resulting in a piece of the casing being dangerously dislodged.  A piece of metal being dislodged from a handheld object at force is plausibly an unreasonable safety hazard."  *Id.* 8 (internal citation omitted).  Glock does not challenge this aspect of the analysis in its present motion.

United States District Court
Northern District of California

has even rejected the use of consumer complaints to show pre-sale knowledge when *specific* complaints were pointed to because they were, respectively, undated or too removed from the time. *Wilson*, 668 F.3d at 1147–48. Johnson does not provide any details about these alleged consumer complaints, including when they were submitted or how many there were. He also does not allege that there was an "unusually high volume of complaints specific to [the defect]." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017). Particular to the dealers, information-and-belief pleading *may* be appropriate for dealers reporting to Glock, but Johnson, as described, must do more than allege that "other complaints reported" *to those dealers* to establish knowledge. And particular to glocktalk.com, there is also no allegation that Glock employees interact with the website, or another allegation that would permit an inference of knowledge.

Johnson next relies on several apparently high-profile incidents involving police officers whose guns blew out and a 2015 Massachusetts lawsuit alleging a blow out. *See* SAC ¶¶ 25–26; Oppo. 12. Those police incidents, he alleges, received enough publicity that they plausibly appeared on Glock's radar and the lawsuit was against Glock, so it would know of it. The problem, however, is that he alleges nothing to connect those blow outs *with the defect alleged here*. He does not contend that guns can blow out only because of an unsupported chamber. (Glock represents—albeit via argument in its brief—that improper amounts of gun powder can cause it.)

In a case involving allegedly defective blenders, the Hon. Beth Labson Freeman examined a series of consumer reports about blenders exploding. *See Wallace v. SharkNinja Operating, LLC*, No. 18-CV-05221-BLF, 2020 WL 1139649, at *8 (N.D. Cal. Mar. 9, 2020). She explained that, even though the consumers reported that the blenders exploded, none (except one that was disregarded on another ground) connected it to the defect at issue, a part dislodging while the blender was in motion. *Id.* Because blenders could plausibly explode for other reasons, the court could not infer pre-sale knowledge of the defect. As that case said, "a defendant must have knowledge of the specific defect alleged, not a general problem with the product at issue." *Id.*[4]

---

[4] Glock makes several requests for judicial notice, that Johnson opposes, to show that these incidents did not involve the defect here. There is no need to address those because Johnson's

12

United States District Court
Northern District of California

1         Last, Johnson alleges that "at least as far back as 2008, and through 2020, [videos online]

2   have been published depicting Glock kabooms for Glock to see." SAC ¶ 27.  But, again, general

3   allegations that Glock knew its guns could blow out do not equate to allegations that Glock had

4   knowledge of this defect.  And there is no information about how widely shared these videos

5   were, which also prevents an inference of knowledge.

6         The situation would be different if the only way that guns could reasonably blow out were

7   this unsupported chamber defect; there is no such allegation here and, without it, "common sense,"

8   *Ashcroft*, 556 U.S. at 664, teaches that igniting gun powder can cause explosions unconnected to

9   it.  *Cf. Wallace*, 2020 WL 1139649, at *8.  At bottom, Johnson relies only on unspecified

10  complaints or reports of blow outs with no allegation connecting them to the defect here.  He has

11  therefore not pleaded pre-sale knowledge under a safety hazard theory.

12        By the same token, Johnson's claim is not adequately pleaded under a *LiMandri* factor

13  theory because the only factor he puts forward is Glock's "exclusive knowledge" of the defect.

14  *See* Oppo. 13–14.  Adequately alleging exclusive knowledge requires adequately alleging

15  knowledge in the first place, which Johnson has not done for the reasons described.  The motion to

16  dismiss claim three is GRANTED with leave to amend.[5]

17  **CONCLUSION**

18        The motion to dismiss all claims is GRANTED with leave to amend.  Any amended

19  complaint shall be filed within 20 days.

20        **IT IS SO ORDERED.**

21  Dated: May 17, 2021

22

23

24                              William H. Orrick
                                United States District Judge

25

26  _____

    allegations are inadequate by themselves.

27

28  [5] Because all of Johnson's claims fail, I do not address whether he has adequately alleged standing for injunctive relief, whether he lacks adequate remedies at law, whether the economic loss rule bars the fraudulent omission claim, or whether his class allegations are proper.