**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

**LEWIS LAW FIRM, PLC**
Robert K. Lewis (AZ SBN 016625)
*Admitted Pro Hac Vice*
2302 N. 3rd Street
Phoenix, Arizona 85004
Tel: (602) 889-6666
Fax: (602) 252-1446
Email: rob@lewisandporka.com

**POKORA LAW, PLC**
Amy M. Pokora (AZ SBN 027201)
*Admitted Pro Hac Vice*
2302 N. 3rd Street
Phoenix, Arizona 85004
Tel: (602) 889-6666
Fax: (602) 252-1446
Email: amy@lewisandporka.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN C. JOHNSON, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GLOCK, INC., a Georgia Corporation; GLOCK Ges.m.b.H, an Austrian entity; JOHN and JANE DOES I through V; ABC CORPORATIONS I-X, XYZ PARTNERSHIPS, SOLE PROPRIETORSHIPS and/or JOINT VENTURES I-X, GUN COMPONENT MANUFACTURERS I-V,<br><br>Defendants. | CASE NO.: 3:20-cv-08807-WHO<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**(1)  VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT;**<br><br>**(2)  FRAUDULENT OMISSION;**<br><br>**(3)  UNFAIR BUSINESS PRACTICES, CAL. BUS. & PROF. CODE § 17200, et seq.;**<br><br>**(4)  FALSE ADVERTISING, CAL. BUS. & PROF. CODE § 17500, et seq.** |

Plaintiff STEVEN C. JOHNSON brings this action against Defendants GLOCK, INC., a Georgia Corporation; GLOCK Ges.m.b.H, an Austrian entity; JOHN and JANE DOES I through V, ABC CORPORATIONS I-X, XYZ PARTNERSHIPS, SOLE PROPRIETORSHIPS and/or JOINT VENTURES I-X, GUN COMPONENT MANUFACTURERS I-V, and alleges as follows:

## **INTRODUCTION**

1.     Plaintiff brings this class action on behalf of himself, and all other individuals who own certain handguns (the "Class Guns") which were designed, manufactured, assembled, imported, and marketed by Glock Ges.m.b.H and Glock, Inc. (the "Glock Defendants" or sometimes just "Glock"), and distributed and sold throughout California.

2.     The Class Guns contain at least one defect which renders the pistols unreasonably dangerous and unfit for their intended use.  In short, the gun barrel chambers do not surround, or support, the bullet sufficiently before firing.  This is referred to as the "Unsupported Chamber Defect" (sometimes just the "Defect").   It means that, for every Class Gun, there is a significant chance that one or both of the following things will happen upon pulling the trigger:  (1) the brass casing of the bullet will be irreparably damaged, including by creating a bulge out or "smile," thereby damaging the brass casing and making it worthless; and possibly (2) "blow out" or "kaboom," which is when the round/casing blows up or separates and a piece of the casing dislodges, which can blow your hand off, or worse.  Both the brass damage and the "kaboom" repeatedly and verifiably manifest in the Class Guns.

3.     The Glock Defendants have known about the defect for years yet have failed to sufficiently warn about the dangers of the Class Guns.  The Glock Defendants omitted material information bearing on the safety and effectiveness of the Class Guns.  Furthermore, the Glock Defendants promised that the Class Guns were reliable and safe for ordinary use and did not contain defects and were not unreasonably dangerous.  But this is not what the Glock Defendants designed, manufactured, sold, and distributed.   Rather, the Class Guns are defective and unreasonably dangerous.

4.     In filing this lawsuit, Plaintiff and the Class do not disparage the Second Amendment's right to bear arms.  Rather, Plaintiff and the Class seek to hold accountable the

Glock Defendants for faulty and dangerous gun designs that were not adequately disclosed, thereby causing an unreasonable safety hazard.  Instead of impinging upon the Second Amendment, this lawsuit is brought by and to protect individuals who have lawfully exercised their Second Amendment right to bear arms.

5.     Moreover, Glock has had for many years actual knowledge of the Unsupported Chamber Defect.  But the Glock Defendants have never issued an effective and complete warning to the public, never recalled the Class Guns, and they continue to falsely represent to the public that the Class Guns are safe and without any material defects.  In fact, Glock is aware that casings have been irreparably damaged and that individuals have been seriously injured as a result of the Unsupported Chamber Defect, and it is only a matter of time before more individuals are seriously injured or killed.

6.     At all times relevant to this action, the Glock Defendants had a duty to disclose and warn Plaintiff and the Class truthfully and accurately, and to not conceal or misrepresent such truth, about the Unsupported Chamber Defect.  Notwithstanding this duty, and in violation thereof, the Glock Defendants carelessly failed to disclose and warn Plaintiff and the Class, and concealed and misrepresented the truth about the Class Guns and the Defect. Defendants did these things with the intent to deceive Plaintiff, the Class, and public – who did not know and could not reasonably be expected to know of the Defect themselves because the Defect is latent and not apparent.  Indeed, the cause of the Defect originates from the common design and manufacture of the Class Guns, which is not common knowledge or otherwise well-known or appreciated. Plaintiff and the Class would not and could not know of the Defect by the exercise of reasonable diligence.

7.     At all times relevant to this action, the Glock Defendants have willfully, knowingly, and/or recklessly committed unfair or deceptive acts or practices in California for the express willful purpose of wrongfully concealing the Unsupported Chamber Defect and their knowledge of it in violation of California law.  Plaintiff now brings this action on behalf of himself and his fellow California purchasers of the Class Guns.

**PARTIES**

8.      Plaintiff STEVEN C. JOHNSON is over the age of 21 and is a resident of Oakland, California.  He is a retired police officer having served with the Oakland Police Department. Plaintiff owns a Class Gun, a Glock 30 SF (Short Frame) .45 caliber (Serial Number YWK822), which was designed, manufactured, assembled, tested, marketed, imported, warranted, and distributed by the Glock Defendants.  Plaintiff purchased his Class Gun on or around April 15, 2016, from an authorized U.S. Glock dealer in Castro Valley, CA.   Following California's mandatory 10-day "cooling-off period" (i.e., when the Dealer Record of Sale is submitted to the California Department of Justice), Plaintiff returned to the Glock dealer on or around April 28, 2016, to take possession of his Class Gun.  Unbeknownst to Plaintiff at the time that he purchased and took possession of his Class Gun, it was defective and unreasonably dangerous.  Glock's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, and selling, the defective and dangerous Class Gun has caused Plaintiff out-of-pocket loss, loss of use, and future repair costs.  Plaintiff purchased his Class Gun under the mistaken belief that it was free of defects and reasonably safe for use.  Plaintiff would not have purchased the Class Gun had he been aware of the design defects and dangerous condition of the Class Guns.  Plaintiff sought to purchase a handgun that was safe and free of defects. However, Plaintiff did not get the benefit of his purchase because the product is defective, dangerous, and/or has the potential of causing great bodily harm.  Plaintiff's gun contains the same Unsupported Chamber Defect shared by all Class Guns.  Neither Glock nor any of its agents, distributors, or other representatives informed Plaintiff or the Class of the existence of the defects or the dangerousness of using the Class Guns.

9.      Plaintiff has not fired his Class Gun since he first discovered the Defect, which was on or about July 21, 2020.  Mr. Johnson discovered the Defect for the first time when reading an article published online in July of 2020.  The article was an attorney advertisement and report of an ongoing investigation into Glock handgun defects.  The article described the Unsupported Chamber Defect in the Class Guns and Mr. Johnson recognized his gun listed.  The article also reported on other litigation against Glock, by other Class Gun owners, regarding the same Defect, including the 2019 *Melian* case referenced below and filed in Arizona, Case No. 2:19-cv-04872-

GMS, as well as the 2012 Massachusetts case referenced below and arising out of the same Defect, Case No. 3:15-cv-30209-MGM.  The article was published online in the latter half of July of 2020 on www.topclassactions.com, where Mr. Johnson first encountered it.

10.     Mr. Johnson was unable to make this discovery earlier despite reasonable diligence. Mr. Johnson had never run into an article or disclosure of this kind despite his research into the gun.  None of the materials from Glock, including the materials that came with the gun or the statements on Glock's website, revealed or even mentioned the possibility of the Defect.  The authorized Glock dealer from which Mr. Johnson purchased his gun said nothing to hint at such a Defect.  Indeed, as described more fully above and below, Glock has always denied that the Defect exists, and even when faced with evidence of it, including other similar lawsuits, has taken affirmative steps to ensure that details about the Defect remain a secret and do not get broadly disseminated to the public at large.  In short, Mr. Johnson was not at fault for failing to discover the Defect and he had no actual or presumptive knowledge of facts sufficient to put him on inquiry of the Defect.

11.     As a result of the Glock Defendants' deception, Plaintiff will be unable to rely on Glock's advertising of reliability and safety in the future.  For this reason, Plaintiff has chosen not to purchase another Class Gun yet, although he would like to if he can be assured that future Class Guns would be reasonably safe.

12.     Defendant Glock Ges.m.b.H is an Austrian corporation that designs, manufactures, and tests the Class Guns and other firearms in Austria under the "Glock" brand name and distributes the Class Guns and other firearms in this District and throughout California under the "Glock" brand name via Defendant Glock, Inc.

13.     Defendant Glock, Inc. is a Georgia corporation that is licensed to and does business in this District and throughout California.

14.     The Glock Defendants are so intertwined contractually for each other's liabilities that they are essentially one entity regarding the allegations in this Complaint.

15.     At all times herein mentioned, each of the Glock Defendants were the agents and employees of each of the remaining Defendants and, in doing the things alleged, was at all times

1  acting within the purpose, course, and scope of said agency or employment with the knowledge,

2  consent, permission, and subsequent ratification of each of the other Defendants.  The Glock

3  Defendants work jointly to target consumers in the State of California, and in this District, for sales

4  of Class Guns and other products. The Glock Defendants work directly with manufacturers,

5  dealers, retailers, distributors, and other entities located in this District, and throughout California,

6  to effectuate the goal of marketing and selling the Class Guns, availing themselves to the benefits

7  of the laws of California.  Each Defendant is the alter-ego of the other because the Defendants

8  share funds with one another, co-mingle business accounts, perform acts on one another's behalf,

9  and engage in other acts indicative of a false separation between their corporate structure.

10                              **JURISDICTION AND VENUE**

11          16.     The Glock Defendants removed this action from the Superior Court of the State of

12  California for the County of Alameda to the United States District Court for the Northern District

13  of California, pursuant to 28 U.S.C. Sections 1332, 1441, 1446, and 1453.  They did so on the

14  grounds that, when the initial Complaint and First Amended Complaint were filed, complete

15  diversity of citizenship existed between Plaintiff and the Glock Defendants, the amount in

16  controversy exceeded the jurisdictional minimum, and because removal was permitted under the

17  Class Action Fairness Act ("CAFA").  *See* ECF No. 1.

18                              **GENERAL ALLEGATIONS**

19          17.     Glock Ges.m.b.H began doing business in 1981.  The Glock Defendants have

20  continuously, since then, including on their website, boasted about Glock's "profound series of

21  engineering feats," its "revolutionary" designs, and its "culture of continuous improvement."

22  Glock continues: "The continuous pursuit of perfection in every facet of design, engineering, and

23  manufacturing, has firmly established GLOCK pistols as the standard by which all others are

24  compared."…  "[i]t is our way of thinking, a culture of continuous improvement.  The 4th

25  generation of the GLOCK "Safe Action"® pistol brings revolutionary design changes to the

26  world's most popular pistol."

27          18.     Glock, on its website, also boasts about what it calls "Glock Perfection:" "[O]ur

28  commitment to 'Perfection' remains steadfast: we will never compromise quality. We will

continue to invest tremendous resources in the technology and talent necessary to improve our products wherever possible; and we will always strive to deliver maximum customer satisfaction!" The Glock website also advertises this simple and specific message: "Safe. Simple. Fast. = Confidence."[1]

19.     At all times since at least 2016, the Glock Defendants openly represented to the public, and continue to represent today, including on Glock's website, that their handguns, including the Class Guns, are reliable and safe for use.  For example: Glock's website notes that each "GLOCK [pistol] delivers on our promise of safety, reliability, and simplicity at an affordable price."

20.     The reality, though, is that all the Class Guns are defective and inherently and unreasonably dangerous to the user.[2]  More specifically, the Class Guns are 1) Glock branded, and 2) semi-automatic. A semi-automatic pistol is a firearm which fires, extracts, ejects and reloads once for each pull and release of the trigger.   The Class Guns, furthermore, have the Unsupported Chamber Defect.   Namely, the gun barrel chamber does not fully enclose the bullet casing sufficiently before firing.  The feed ramp of Class Guns extends too far into the chamber, causing the chamber to lack adequate support for the round/casing.  In turn, the force of a fired round exerts unreasonable pressures upon the round/casing in the 6 o'clock position.  Below are pictures illustrating a supported (left side) versus unsupported (right side) chamber, and the resulting Glock "Smile" from an Unsupported Chamber Defect.  Note how much more of the brass is surrounded or supported in the photo on the left, versus the how much more of the brass is exposed on the right:

---

[1] https://us.glock.com/

[2] Of course, a gun is an inherently dangerous item in many respects, especially for anyone standing in front of the person firing the gun.  This is not in dispute.  Thus, when a seller or manufacturer says its guns are "safe," as Glock did here and continues to do today, it necessarily means to say that its guns will *operate* safely for the *holder* of the gun, *e.g.*, it is not likely to backfire or blow up or shoot a bullet or fragments backwards or otherwise injure the holder.  This is what it means, and what the reasonable gun purchaser understands, when a manufacturer says their gun is "safe."

Supported                                                                                    Unsupported





21.     The Class Guns with the Unsupported Chamber Defect include, but are not limited to the following models/series: Model 22, 22 Gen 4, 23, 23 Gen 4, 24, 27, 27 Gen 4, 35, 35 Gen 4, 35 Gen 4 MOS, 21 Gen 4, 21 SF, 30 Gen 4, 30s, 30 SF, 36, 41 Gen 4, 41 Gen 4 MOS, 37, 38, 39, 20 Gen 4, 20 SF, 29 Gen 4, 29 SF, 40 Gen 4 MOS, and all gun models with a similar chamber design and feed ramp length.

22.     The design of the Unsupported Chamber Defect is common to all Class Guns and creates the same defect in all Class Guns.  By purchasing and firing Class Guns, Plaintiff and the

Class experienced and were harmed by the Unsupported Chamber Defect. The use and/or maintenance of the Class Guns by Plaintiff and the Class have no effect on the defective design of the Class Guns and the damages resulting from the defective design.

23.     The Defect, in turn, can create one or both of the following:  a) irreparable damage to the brass bullet casing including, but not limited to, a "bulge" or "smile" as mentioned above; and b) a blowout or kaboom.

24.     First, the Unsupported Chamber Defect causes damage to the brass casing of the round.  Sometimes the damage is not noticeable by the naked eye or unless the viewer is an expert, e.g., in ballistics or metallurgy.  Nonetheless, the damages – even when not noticeable by the lay consumer – are present and significant.   Often, the damage to the brass is severe enough to manifest by forming a bulge or "smile" on the casing after being fired that mirrors the outline of the unsupported chamber.   This brass damage affects newly manufactured, reloaded, and remanufactured brass casings. The Defect renders damage to the brass casings which is non-defective property.   The damage to the brass casings, because of the Defect in the Class Guns, is physical injury to property that stands apart from the manifestation of the Unsupported Chamber Defect itself. The brass damage, including the "Glock Smile" or "Glock Bulge," is physical injury to property other than the Class Guns themselves.   Below are pictures illustrating brass damage severe enough to cause a bulge or smile.



THIRD AMENDED CLASS ACTION COMPLAINT

25.     The damage to the brass casings caused by the Defect renders the brass casings useless, nonfunctional, and valueless.

26.     Importantly, spent brass casings usually have value.  They are not merely refuse. Millions of consumers, more so now that ammunition and materials needed for making ammunition are so expensive, sell or reuse/reload their brass casings.[3]  But as a result of the damage to the brass casings caused by the Unsupported Chamber Defect, consumers have lost the ability to sell or reuse the brass casings and can no longer use the brass casings to make reloaded ammunition.  The damage to the brass casings because of the Defect in the Class Guns prevents consumers from realizing the intended use of the brass casings.  As a result of the Defect in the Class Guns, and damage to the brass casings, the brass casings have no value, and consumers can no longer receive the economic benefit of re-selling them or reusing the brass casings by reloading the brass casings and firing reloaded ammunition made from the used brass casings. Reloaded ammunition is substantially cheaper as factory ammunition has become increasingly cost prohibitive due to ongoing supply shortages.   The brass casings, after being fired through the Class Guns, are not a serviceable piece of equipment that consumers would have otherwise been able to use and get a benefit from had the brass casing been fired from a gun that did not contain the Unsupported Chamber Defect.

27.     Second, a blowout or kaboom occurs when the round/casing blows up or separates and a piece of the casing dislodges, which can cause severe injury to the shooter's hand or other body parts.  These pictures depict kabooms in other Glocks as well as blown out rounds:

---

[3] *See* Chris Mudgett, *Scalpers Are Driving Up Ammunition Costs and Contributing to the Ammo Shortage,* Outdoor Life (Feb. 12, 2021), https://www.outdoorlife.com/story/guns/scalpers-driving-up-ammo-prices-and-ammunition-shortage/; Aaron Smith, *Gun Owners Take up Reloading to Sidestep Ammo Shortage*, Forbes (Mar. 4, 2021), https://www.forbes.com/sites/aaronsmith/2021/03/04/gun-owners-take-up-reloading-to-sidestep-ammo-shortage-but-it-may-be-too-late/?sh=5b2ebb1c2161; Ian Urbina, *Inside the World of D.I.Y. Ammunition,* The New York Times (Oct. 5, 2018).

THIRD AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28









28.     The Unsupported Chamber Defect is a design defect common to all Class Guns. The barrels in the Class Guns are not significantly different across the various gun models or even across the manufacturing years.  Moreover, the Defect is latent such that if the Class Guns work as designed, they are still defective, and Plaintiff and the Class would still be due relief.

29.     Finally, neither brass damage (including smiles or bulges), nor kabooms, are the normal result of firing a handgun, or of the forces of gun powder exploding.  Moreover, when using typical factory ammunition, the brass damage described in this complaint, and especially a kaboom, will only happen when firing a Class Gun because of the Unsupported Chamber Defect. And while improperly "reloaded" ammunition might increase the chances of brass damage or kabooms as alleged in this complaint, the Unsupported Chamber Defect nonetheless, and by itself, increases the risk, frequency, and severity of the brass damage or kabooms.  Stated differently, a reasonable consumer can shoot defective or improperly reloaded ammunition without any resulting damage out of another gun not having the Defect – like a Sig Sauer or a Smith & Wesson – but if they shoot that same ammunition out of a Class Gun, they will then experience resulting damage such as brass damage (e.g. a smile or bulge) or a kaboom.

**GLOCK HAS KNOWN ABOUT THE DEFECT FOR YEARS**

30.     The Glock Defendants have knowingly manufactured, marketed, and sold thousands of defective Class Guns with the Unsupported Chamber Defect to consumers throughout California.

31.     Indeed, Glock has known about the Defect and its potential to damage brass and create smiles or kabooms, for years.  Glock has been reminded of the Defect dozens and possibly hundreds of times over the years through claims and lawsuits by police departments throughout the country that had the misfortune of putting Class Guns into police service, and through numerous customer complaints and claims, including customer lawsuits, warranty claims, and send-backs of defective guns.

32.     For example, in 2004, the Portland Police Department made a claim against Glock after two .45-caliber Glock Model 21 pistols (Class Guns) exploded in the hands of two of Portland PD's officers.  One of the officers involved in that incident then separately sued Glock,

along with ammunition manufacturers, for over $50M arising out of his severe personal injuries. These exploded guns were Glass Guns that had the Unsupported Chamber Defect and it was the Unsupported Chamber Defect that caused the kabooms. Glock entered a confidential settlement with the police department as a result but never fixed the Defect.  As a result of the resolution of this incident, the Portland Police Department had their Class Guns replaced with non-Class Guns (i.e. with guns that did *not* have unsupported chambers).

33.     Across the country in 2007, two more Glocks in service by the Winter Haven, FL police department kaboomed or exploded during two separate training incidents one year apart, causing the Winter Haven Police Chief to discontinue use of the Glock handguns in question over safety concerns.  Upon information and belief, these exploded guns were Class Guns that had the Unsupported Chamber Defect and it was the Unsupported Chamber Defect that caused the kabooms.

34.     Two years later, in February of 2009, an officer in training for the City of Miami Police Department was severely injured when another Class Gun – a Glock 22 – exploded in the officer's hand sending metal fragments into the officer's hand and face.  The officer subsequently sued Glock. Again, on information and belief, this exploded gun was a Class Gun that had the Unsupported Chamber Defect and it was the Unsupported Chamber Defect that caused the kaboom.  Upon information and belief, Glock entered a confidential settlement with the officer, but never fixed or warned of the Defect.

35.     More recently, in Harris County Texas (where Houston is), a sheriff's deputy was severely injured in March of 2017 when his Class Gun kaboomed in his hand sending shrapnel back into his hand and face.  Again, this exploded gun was a Class Gun that had the Unsupported Chamber Defect and it was the Unsupported Chamber Defect that caused the kaboom. Harris County made a claim against Glock and then negotiated, upon information and belief, another confidential settlement.

36.     Upon information and belief, several more claims, demands, and lawsuits have been filed by police departments using Class Guns both before and after Mr. Johnson purchased his

Class Gun, against Glock, as a result of their guns having the same Unsupported Chamber Defect that the Class Guns have.

37.     Numerous private citizens have also experienced the Defect and sued Glock over it. For example, in 2005, a New York resident sued Glock alleging his .40 caliber Glock 22 (a Class Gun) exploded in his hand while firing factory ammunition at a shooting range.   The plaintiff alleged the  kaboom – again caused by the same Unsupported Chamber Defect -  caused nerve damage to his right hand resulting in numbness, burning, and tingling sensations. Upon information and belief, Glock and this consumer reached a confidential settlement to resolve the matter.

38.     In 2015, a Massachusetts man served Glock with a lawsuit after experiencing a "kaboom" in a Class Gun on a 2012 hunting trip.   The gun exploded/blew apart while the plaintiff was holding the gun and firing it.   The recoil and force from the exploding gun violently spun around the plaintiff's body and knocked him to the ground.   Shrapnel from the gun struck the plaintiff's face and body.   The plaintiff alleged he suffered hearing loss, loss of sensation in one of his hands, and injury to his leg.   Upon information and belief, this explosion/kaboom was caused by the same Unsupported Chamber Defect.

39.     In 2016, a California resident sued Glock in the Superior Court of California, County of Los Angeles.    On information and belief, the plaintiff's Glock 36 (a Class Gun) exploded due to a combination of an over-pressurized round and the Unsupported Chamber Defect.   Glock entered a confidential settlement with the plaintiff in 2018.

40.     More recently, in 2019, two Arizona citizens owning Class Guns sued Glock in federal court in Arizona over the same Unsupported Chamber Defect. *See Melian v. Glock, Inc.,* Case No. 2:19-cv-04872-GMS.

41.     Also more recently, two Glock owners in Alaska – the owners of Chuke's Outdoor Adventures, and the owner of Alaskan Ballistics – separately experienced kabooms in their class guns resulting from the Unsupported Chamber Defect.   Both owners have notified Glock of their problems with the Class Guns.

42.     Upon information and belief, many more claims (including dozens of warranty claims alone), demands, and lawsuits have been filed by Class Gun owners both before and after Mr. Johnson purchased his Class Gun, against Glock, as a result of their guns having the same Unsupported Chamber Defect that affects the Class guns.

43.     With each settlement that Glock entered, it ensured that disclosure of the details, and the Defect, were kept to a minimum to keep the public in the dark and so that sales and profits would not suffer.  Glock did this by insisting on strict confidentiality provisions, often with strict penalties for alleged violations – whether enforceable or not, in all settlements as a condition to payment and to ending the protracted and aggressive litigation.

44.     Not every consumer experiencing damaged brass or kabooms has sued Glock. Many more have notified Glock of their troubles through less formal channels.  For instance, numerous Class Gun owners have reported or complained about the Defect directly to Glock and sent their damaged pistols and/or casings to Glock for examination, testing, replacement, or repair. These reports and send-backs happened numerous times before Mr. Johnson purchased his gun and continued thereafter.  Dozens of Class Guns exhibiting the Unsupported Chamber Defect, and which resulted in verified brass damage and/or kabooms, were sent back to Glock both before Mr. Johnson purchased his gun and thereafter.  Both before and after Mr. Johnson purchased his Glock, Glock received an unusually high number of complaints regarding the Unsupported Chamber Defect and Glock received, saw, and examined numerous returned Class Guns and bullet casings, thereby reminding Glock repeatedly, and with physical evidence, of the Defect.  Many of these consumer claims and product send-backs were done pursuant to Glock's internal warranty program.  Many times – both before and after Mr. Johnson purchased his Class Gun - Glock acknowledged the claims and agreed to (and did) replace Class Guns to resolve the claims and/or Glock paid money to compensate the owners of the Class Guns who made the claims.  In most instances, Glock has exclusive possession of the documents showing these warranty claims.

45.     Moreover, owners of Class Guns have repeatedly discussed the Defect in online forums, like yelp.com and glocktalk.com, for years, sharing their personal experiences of the kaboom or smile, including by displaying pictures of their damaged pistols and brass casings.

1   These owners published their experiences with the Defect repeatedly both before and after Mr.

2   Johnson purchased his gun.  Glock employees monitor and are aware of this online content and

3   Glock was and is fully aware of the complaints and comments made by these owners of Class

4   Guns regarding the Defect.

5   46.   For example, on February 26, 2011, a Class Gun owner posted on Glock's own

6   Yelp page regarding his brand new Glock handgun (a Class Gun) going "KaBoom" despite

7   shooting brand new factory ammunition (which means that the kaboom was caused by the

8   Unsupported Chamber Defect).

9   47.   On February 11, 2014, another Class Gun owner posted directly on Glock's own

10   Facebook page to report - with pictures – another kaboom caused by the Unsupported Chamber

11   Defect, of his Class Gun (a G23), which happened at the range where he purchased his Class Gun.

12   That consumer sent his defective Class Gun back to Glock for inspection and testing.

13   48.   On March 21, 2013, yet another Class Gun owner posted on glocktalk.com about

14   the blowout he experienced the day before despite using factory ammunition (again indicating that

15   the blowout or kaboom was caused by the Unsupported Chamber Defect).  The Class Gun owner

16   also reported the troubles with his defective gun directly to Glock.

17   49.   More recently, Glock has been promoting the Class Guns, and its self-described

18   "Glock Perfection," on its official Instagram page.  In response to a recent Glock official post

19   touting its "perfection" on its own Instagram page,[4] consumer "Kevendrew45" posted earlier this

20   year with the following hashtag and comment:  #KABOOM. Cracked Frame G29 – and he noted

21   that it took Glock three years to acknowledge the Defect and send him a replacement.

22   50.   Also, numerous videos from at least as far back as 2008, and through 2020, have

23   been published depicting Glock kabooms, caused at least in part by the Unsupported Chamber

24   Defect, for Glock to see, and which Glock has seen at or near the time of their posting.  For

25   _____

26   [4] All social media page owners, and posters of comments or messages, receive automatic
notifications from the social media provider (e.g. Yelp, Facebook, Instagram, etc.) whenever

27   someone posts on their page or whenever someone comments to a post or comment they have
made. Thus, when customers post to Glock's page, Glock learns about it immediately.  Similarly,

28   when customers respond to a Glock message or posting -whether the posting was on Glock's page
or not – Glock is again notified about it immediately.

example, there is a YouTube video entitled "The Infamous Glock Smile and What Causes Them," dated July 5, 2012, and which has over 92,500 views as of this filing.  This video alleges that unsupported Glock chambers – when compared to non-Class Guns having fully supported chambers – could lead to brass damage and possible kabooms.  *See* https://www.youtube.com/watch?v=20aSjSMKqY4

51.     Also, on August 26, 2015, a Class Gun owner posted a video on YouTube entitled "Thoughts on the Glock Smile."  It has over 45,000 views as of this filing and it also alleges that an unsupported chamber in the Glock Class Guns leads to damaged brass, including smiles or bulges, and possible kabooms.  *See* https://www.youtube.com/watch?v=RW6OhDRWuIo

52.     Yet another YouTube video, also seen by Glock, was posted on July 16, 2012.  It is entitled "Glock G23 KaBoom!" and it has over 211,000 views as of this filing.  This video also depicts a Class Gun with the unsupported chamber defect.  As part of the video description, the Class Gun owner writes: "Yep, we had another Glock go KaBoom! in the neighborhood. If you own or are thinking of getting a Glock .40 S&W, by all means do so, but for the love of God, please keep this in the back of your mind and get an upgrade barrel that falls within SAAMI specifications."[5]  *See* https://www.youtube.com/watch?v=9U3hlcJRtPY

53.     There are many similar videos on YouTube.  Other YouTube videos depicting damaged brass or kabooms resulting from the Unsupported Chamber Defect in Class Guns, and that Glock viewed at or near their publishing thereby putting Glock on further notice of the Defect, include but are not limited to:

- "My Glock Exploded."  Over 104k views. Published July 19, 2015.

    https://www.youtube.com/watch?v=T8qcbYP3GEo

- "My Glock 30 Explodes In My Hand."  Over 83k views. Published August 5, 2018.

    https://www.youtube.com/watch?v=U5_nZ7pCiZk

---

[5] SAAMI stands for Sporting Arms and Ammunition Manufacturers' Institute.  SAAMI is an association of the nation's leading manufacturers of firearms, ammunition, and components.  Its mission is to create and promulgate technical, performance and safety standards for firearms, ammunition, and components; and to be the preeminent global resource for the safe and responsible transportation, storage, and use of these products.  *See https://saami.org/about-saami/.*

- "Glock 20 10mm's Blowing Up!!" Over 157k views. Published April 27, 2019. https://www.youtube.com/watch?v=Xl6bNFxxEUU

- "Glock 34 Explosion." Over 86k views. Published March 24, 2013. https://www.youtube.com/watch?v=DXLDhQUmShg

- "Glock 21 Explosion." Over 25k views. Published October 21, 2012. https://www.youtube.com/watch?v=vBUTB-0vaSY. This Class Gun owner adds that he sent his defective Class Gun back to Glock and Glock tested it, replaced it, and sent the replacement back to him.

54.     While these videos and their significance are known to Glock and were known to and appreciated by Glock as soon as Glock saw them (which would have been at or near the time of their publishing), the videos – and especially their full significance – were not known to or appreciated by Plaintiff before he purchased and used his Class Gun. Nor would they have been appreciated by reasonable consumers the same way Glock appreciated them. For example, the guns in the videos are not necessarily the same models or model years as one another (or the same when compared to Mr. Johnson's gun). What Glock knows, though, and what ordinary consumers do not know, is that the barrel components among all the Class Guns are not significantly different and that they all share the same defect: the Unsupported Chamber Defect. Again, The Defect is not readily apparent to a reasonable consumer like Mr. Johnson. And the official word from Glock and its dealers has always been that the guns are safe and have no such defects.

55.     Glock has intentionally hidden these critical facts about the Class Guns and the Defect. Glock has never publicly acknowledged the Defect and specifically denies it. When sued, Glock has entered settlements with strong confidentiality clauses, purported penalty provisions, and without admission of fault. All the while, Glock has refused and continues to refuse to warn the public despite the Glock Defendants' knowledge of the Defect. In short, the Class Guns are defective and inherently dangerous, and the Glock Defendants have known about the Unsupported Chamber Defect for years but have allowed the Class Guns to remain in the hands of unsuspecting gun owners to the imminent risk of harm to the owners of the Class Guns and the public.

56.     Despite knowledge about the Unsupported Chamber Defect, the Glock Defendants consciously and intentionally decided not to recall and/or retrofit the defective Class Guns which they know are unreasonably dangerous and defective.

57.     Despite a wealth of information Glock has regarding the defective design of the Class Guns as described herein, Glock has not undertaken any effort to inform the public and/or individuals who own Class Guns about the Unsupported Chamber Defect, or to issue any recalls and replace and/or repair and/or retrofit the Class Guns.

58.     Plaintiff filed this Class Action Complaint in order to obtain declaratory relief and compensation and to force the Glock Defendants to act as responsible corporate citizens by educating their customers, the lawful possessors of the Class Guns, and the public about the dangers of the Class Guns, repairing the Unsupported Chamber Defect in the Class Guns, or paying to allow the Plaintiff and the Class to replace the Class Guns and/or repair and replace the Defect in the Class Guns on their own.

59.     Plaintiff purchased his Class Gun because he believed it to be relatively safe and reliable.  Glock had never disclosed to him any safety defects like the Unsupported Chamber Defect and Plaintiff had never otherwise heard of it.  Indeed, Glock expressly touted its guns as safe and reliable on its website, which Plaintiff viewed before his purchase.  He viewed all the specifications and features of the 30 SF, .45 caliber, he saw and relied on Glock's representations regarding safety and reliability, which were material to him, and most importantly, saw nothing from Glock suggesting any safety defects like the Unsupported Chamber Defect.  Glock, to date, upon information and belief, has never formally acknowledged or warned anyone about the Defect in any forum or format.

60.     Plaintiff then visited a local Glock dealer in Castro Valley with the intent to buy the Glock model he researched on Glock's website earlier that same week.  At no point did the authorized Glock dealer suggest the presence of any safety defects like the Unsupported Chamber Defect.

61.     Plaintiff did his due diligence before buying his Class Gun, including reviewing Glock's website, but did not learn anything about the Unsupported Chamber Defect and the

1  potential for injury and property damage.  Plaintiff also reviewed the documentation that came

2  with his Class Gun and none of those things said anything about the Defect.  Had this information

3  been included on the website or the materials that were provided with this gun, Plaintiff would not

4  have purchased his Class Gun.  By his purchase of the Class Gun, and his firing of the Class Gun,

5  Plaintiff experienced the Unsupported Chamber Defect and damage to the brass when he fired his

6  gun and was at risk of bodily injury.  Plaintiff did not receive the benefit of purchasing a gun that

7  was safe for ordinary use and free from defects.

8                                    **CLASS ALLEGATIONS**

9          62.    Plaintiff re-alleges and re-incorporates all preceding paragraphs.

10         63.    Certification of Plaintiff's claims for class-wide treatment is appropriate because

11  Plaintiff can prove the elements of his claims on a class wide basis using the same evidence as

12  would be used to prove those elements in individual actions alleging the same claim.

13         64.    This action satisfies the class action requirements of Federal Rule of Civil

14  Procedure Rule 23.

15         65.    NUMEROSITY. The Class is composed of thousands of persons across California,

16  including this District, the joinder of whom in one action is impractical.  While the exact number

17  and identity of the Class' members are not presently known, they can be identified through the

18  review of records in the Glock Defendants' possession, custody and control, and/or through other

19  formal discovery, including, but not limited to, sales receipts, sales records, and registration

20  records.  Plaintiff is informed and believes that thousands of Class Guns with the Unsupported

21  Chamber Defect have been manufactured and sold in California. Consequently, the individuals in

22  the Class are so numerous that the sheer number of aggrieved persons makes joinder of all such

23  persons impracticable, and the disposition of their claims in a class action, rather than in individual

24  actions, will benefit the parties and the Court and is the most efficient and fair way to resolve the

25  controversy.

26         66.    COMMONALITY. There are predominant common questions and answers of law and

27  fact and a community of interest among Plaintiff and the claims of the Class as follows:

28

1          a.          Whether the Glock Defendants engaged in the conduct alleged herein;

2          b.          Whether the common design of the Class Guns as described is defective;

3          c.          Whether the common design of the Class Guns as described is defective

4    because the feed ramp of the handgun's chamber is too long, and extends into the chamber,

5    causing the chamber to lack adequate support for the round/casing causing the force of a

6    fired round to exert unreasonable pressures upon the round/casing in the 6 o'clock position.

7          d.          Whether the common design of the Class Guns as described is defective

8    because the defects create a "blow out" or "Kaboom," causing the casing to fail, separate,

9    and dislodge at the 6 o'clock position.

10         e.          Whether the common design of the Class Guns as described is defective

11   because it causes damage to other property including, but not limited to, the brass casing.

12         f.          Whether the Glock Defendants have been wrongfully and/or unjustly

13   enriched as a result of the conduct alleged herein;

14         g.          Whether Plaintiff and the Class are entitled to equitable relief, including but

15   not limited to restitution.

16         h.          Whether the design or manufacturing of the Class Guns can cause the

17   Unsupported Chamber Defect, rendering the Class Guns not suitable for their intended use;

18         i.          Whether the Glock Defendants knew or should have known that the Class

19   Guns were defective;

20         j.          Whether the Glock Defendants had a duty to Plaintiff and the Class to

21   disclose the true nature of the Class Guns;

22         k.          Whether the Glock Defendants had a duty to recall the Class Guns;

23         l.          Whether the Glock Defendants falsely represented that the Class Guns were

24   of a certain standard, quality, and grade, when in fact, they were not;

25         m.          Whether the Glock Defendants suppressed and concealed material

26   information regarding the true characteristics and defective nature of the Class Guns;

27         n.          Whether the Glock Defendants' false representations and suppression of the

28   Defect was knowing, intentional, reckless, and/or malicious;

THIRD AMENDED CLASS ACTION COMPLAINT

o.      Whether Plaintiff and the Class are entitled to compensatory, statutory, punitive, exemplary, and/or other forms of damages, and/or other monetary relief and, if so, in what amount;

p.      Whether the Glock Defendants were required to notify the owners of Class Guns regarding the Unsupported Chamber Defect and repair and/or retrofit the Class Guns; and

q.      Whether Plaintiff and the Class are entitled to an order: (1) permanently enjoining Glock from manufacturing, assembling, importing, marketing, advertising, distributing, and selling Class Guns, (2) requiring Glock to recall all Class Guns, and (3) requiring Glock to compensate Plaintiff and the Class.

67.      ADEQUACY OF REPRESENTATION. Plaintiff will fairly and adequately protect the interests of the Class' members and has no interests antagonistic to those of the Class.  Plaintiff has retained counsel and law firms that are experienced in the prosecution of complex class actions.

68.      PREDOMINANCE & SUPERIORITY. This action is appropriate for certification because questions of law and fact common to the Class predominate over questions affecting only individual members, and class treatment is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of Class members is impracticable.  The common liability issues in this class action may be resolved efficiently on a class-wide basis.  Should individual Class members be required to bring separate actions, assuming Class members were aware of the latent Unsupported Chamber Defect, this Court and/or courts throughout California would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.  The common design Defect of the Class Guns are latent, and the Class Guns are defective in a way that would not be apparent to Plaintiff and the Class.  As a result, the Class is unaware of the Defect and their claims against the Glock Defendants as a result

of the latent Defect; therefore, without notice of the Defect, a failure of justice will occur in the absence of a class action.

69.     Plaintiff, therefore, seeks certification of the following Class of persons:

> *All current and former owners of a Class Gun that was purchased in the State of California.*

70.     The Class excludes the Glock Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by the Glock Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Glock Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family; and persons who have suffered or claimed to have suffered physical injury as a result of a defective Class Gun.

## **ESTOPPEL & TOLLING OF THE STATUTES OF LIMITATIONS**

### **A.     Continuing Act Tolling**

71.     Since at least 2010, the Glock Defendants continuously marketed and sold the defective Class Guns to unsuspecting customers.  The Glock Defendants continuously represented and warranted the Class Guns as safe and dependable despite knowing about the Unsupported Chamber Defect.  By making these false representations and failing to disclose the existence of the Unsupported Chamber Defect in the Class Guns, the Glock Defendants engaged in a continuing wrong, exposing consumers over and over again to risk of injury and death, rendering inapplicable any statute of limitations.

72.     The Glock Defendants' knowledge of the Unsupported Chamber Defect is evidenced by numerous complaints by consumers, many of whom reported contacting Glock about the Defect.  Other complainants reported taking their guns to Glock dealers, who are agents of Glock and, on information and belief, report consumer complaints back to Glock.

73.     The Glock Defendants had continuing knowledge of the Unsupported Chamber Defect and the dangers it posed yet continued to market and sell the Class Guns to Plaintiff and the Class.

1      **B.      Fraudulent Concealment Tolling**

2      74.    The Glock Defendants had a duty to disclose to Plaintiff and the Class the true

3  quality and nature of the Class Guns, that the Class Guns had the Unsupported Chamber Defect;

4  and that the Unsupported Chamber Defect requires repairs, poses a safety risk, and reduces the

5  intrinsic and resale value of the affected guns.

6      75.    The Glock Defendants knew, or were reckless or negligent in not knowing, that the

7  Class Guns contain the Unsupported Chamber Defect, as alleged herein.

8      76.    The Glock Defendants concealed and omitted the Defect while making

9  representations about the safety, dependability, and other attributes of the Class Guns, as alleged

10  herein.

11      77.    Despite their knowledge of the Unsupported Chamber Defect, the Glock

12  Defendants failed to disclose and concealed this material information from Plaintiff and the other

13  Class' members, and instead continued to market the Class Guns as safe and dependable.

14      78.    The purpose of the Glock Defendants' concealment of the Unsupported Chamber

15  Defect was to prevent Plaintiff and the other Class' members from seeking redress.

16      79.    Plaintiff and the Class justifiably relied on the Glock Defendants to disclose the

17  existence of dangerous defects, including the Unsupported Chamber Defect, in the Class Guns that

18  they purchased.  The Defect was not discoverable by Plaintiff and the Class through reasonable

19  efforts.

20      80.    Any applicable statute of limitations has been tolled by the Glock Defendants'

21  knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

22      **C.      Discovery Rule Tolling**

23      81.    Through the exercise of reasonable diligence, Plaintiff and the Class could not have

24  discovered that the Glock Defendants were concealing and misrepresenting the existence of the

25  Unsupported Chamber Defect, which is latent in the Class Guns, and the risks it posed.

26      82.    Plaintiff and the Class could not have reasonably discovered, and could not have

27  known the facts that would have caused a reasonable person to suspect, that the Glock Defendants

28  failed to disclose material information within their knowledge about a dangerous defect.

1

### D.     COVID-19 Tolling

2       83.     On or around April 6, 2020, the Judicial Council of California adopted Emergency

3   Rule No. 9, which effectively suspended the statute of limitations on all civil cases in California

4   until 90-days after Governor Gavin Newsom lifted his state of emergency declaration – which

5   Governor Newsom still has yet to do.  This was done to protect parties who have causes of action

6   that accrued before or during the COVID-19 pandemic, such as Plaintiff and members of the Class.

7       84.      On or around May 29, 2020, the Judicial Council of California amended

8   Emergency Rule No. 9 to detach it from the Governor Newsom's state of emergency declaration

9   and restart the statutes of limitations on set dates.  For causes of action having limitations periods

10  that exceed 180 days, such as the claims at issue herein, the statutes were tolled until October 1,

11  2020.  The rule is broad in scope and applies to all civil causes of action.  Plaintiff originally filed

12  suit on October 1, 2020.  *See* ECF No. 1.

13                          **<u>CAUSES OF ACTION</u>**

14                          **FIRST CAUSE OF ACTION**
                **VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")**
15                          (Individually and on Behalf of the Class)
                            (As to all Defendants)
16

17      85.     Plaintiff re-alleges and re-incorporates all preceding paragraphs.

18      86.     The Glock Defendants are "persons" as defined by California Civil Code § 1761(c).

19      87.     Plaintiff and the Class members are "consumers" within the meaning of California

20  Civil Code § 1761(d) because they purchased Class Guns for personal, family, or household use.

21      88.     The sale of Class Guns to Plaintiff and the putative Class members is a

22  "transaction" as defined by California Civil Code § 1761(e).

23      89.     The Glock Defendants' acts and practices, which were intended to result, and which

24  did result, in the sale of Class Guns, violate § 1770 of the Consumers Legal Remedies Act

25  ("CLRA") for at least the following reasons:

26          a.      The Glock Defendants represented that the Class Guns have characteristics,

27          uses or benefits which they do not have;

28  ///

b.     The Glock Defendants advertised their goods with intent to not sell them as advertised;

c.     The Glock Defendants represented that their products are of a particular standard, quality, or grade when they are not; and

d.     The Glock Defendants represented that their goods have been supplied in accordance with a previous representation when they have not.

90.     By failing to disclose and concealing the defective nature of the Class Guns from Plaintiff and the Class members, the Glock Defendants violated California Civil Code § 1761(a), as they represented that the Class Guns had characteristics and benefits that they do not have, and represented that the Class Guns and their feed ramp/chamber components were of a particular standard, quality, or grade when they were of another.  *See* California Civil Code §§ 1761(a)(5), (7), (9), and (16).

91.     The Glock Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious risk on the public.

92.     The Glock Defendants knew the Class Guns suffered from the Unsupported Chamber Defect, were defectively designed or manufactured, and were not suitable for their intended use.  The Defect is in each of the Class Guns at purchase but may not have been discovered by putative Class members until months, or years, after the purchase.

93.     As a result of the Glock Defendants' omissions or of their reliance on the Glock Defendants' misrepresentations, owners of the Class Guns suffered an ascertainable loss of money, property, and/or value of the Class Guns.

94.     The Glock Defendants were under a duty to Plaintiff and the Class members to disclose the defective nature of the Class Guns and/or associated repair costs because the Glock Defendants were in a superior position to know the true state of facts about the Unsupported Chamber Defect in the Class Guns and Plaintiff and the Class members could not reasonably have been expected to learn or discover that their guns had a dangerous safety defect until it manifested.

95.     In failing to disclose the defective nature of the Class Guns, the Glock Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

96.     A reasonable consumer would have considered the facts the Glock Defendants concealed or did not disclose to Plaintiff and the Class members to be material in deciding whether to purchase the Class Guns or pay less for them.

97.     Plaintiff and the Class members are reasonable consumers who do not expect their guns to experience a "blow out" or "Kaboom" due to an unsupported chamber or the Defect.  They likewise do not expect their guns to cause damage to other property including, but not limited to, brass casings. This is the reasonable and objective consumer expectation relating to consumer guns.

98.     As a result of the Glock Defendants' conduct, Plaintiff and the Class members were harmed and suffered actual damages.

99.     As a direct and proximate result of the Glock Defendants' unfair and deceptive acts or practices, Plaintiff and the Class members suffered and will continue to suffer actual damages.

100.     Plaintiff, on behalf of himself and all other similarly situated California consumers, and as appropriate, on behalf of the general public of the State of California, seeks injunctive relief prohibiting Defendants from continuing these unlawful practices pursuant to California Civil Code § 1782(d), and such other appropriate equitable relief.

101.     Plaintiff also seeks damages under the CLRA.  Plaintiff timely and sufficiently before the filing of this complaint sent a notice letter to the Glock Defendants that complied in all respects with California Civil Code § 1782(a).  Among other things, the notice letter demanded that the Glock Defendants remedy its CLRA violation by correcting, repairing, replacing, or otherwise rectifying the Unsupported Chamber Defect.  The Glock Defendants failed to respond to Plaintiff's letter or otherwise correct the alleged wrongs.  Under California Civil Code § 1782(d): "Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages."  Plaintiff has appropriately pled a request for damages under this cause of action.

THIRD AMENDED CLASS ACTION COMPLAINT

1

2

3

**SECOND CAUSE OF ACTION**
**FRAUDULENT OMISSION**
(Individually and on Behalf of the Class)
(As to all Defendants)

4

    102.    Plaintiff re-alleges and re-incorporates all preceding paragraphs.

5

6

    103.    The Glock Defendants were aware of the Unsupported Chamber Defect within the Class Guns when the Class Guns were marketed and sold to Plaintiff and the other Class members.

7

8

9

10

    104.    Having been aware of the Unsupported Chamber Defect within the Class Guns and having known that Plaintiff and the other Class members could not have reasonably been expected to know of the Defect, the Glock Defendants had a duty to disclose the Defect to Plaintiff and the other Class members in connection with the sale of the Class Guns.

11

12

    105.    The Glock Defendants did not disclose the Unsupported Chamber Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Guns.

13

14

    106.    For the reasons set forth above, the Unsupported Chamber Defect within the Class Guns comprises material information with respect to the sale of the Class Guns.

15

16

17

    107.    In purchasing the Class Guns, Plaintiff and the other members of the Class reasonably relied on the Glock Defendants to disclose known material defects with respect to the Class Guns.

18

19

20

    108.    Had Plaintiff and the other members of the Class known of the Unsupported Chamber Defect within the Class Guns, they would not have purchased the Class Guns or would have paid less for the Class Guns.

21

22

23

24

    109.    Through their omissions regarding the Unsupported Chamber Defect within the Class Guns, the Glock Defendants intended to induce, and did induce, Plaintiff and the other Class members to either purchase a Class Gun that they otherwise would not have purchased, or pay more for a Class Gun than they otherwise would have paid.

25

26

    110.    As a direct and proximate result of the Glock Defendants' omissions, Plaintiff and the other Class members have incurred damages in an amount to be determined at trial.

27

28

111.    Plaintiff, on behalf of himself and the Class, demands judgment against the Glock Defendants for compensatory damages for himself and each member of the Class, for the establishment of a common fund, plus attorneys' fees, interest and costs.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, ET SEQ.
(Individually and on Behalf of the Class)
(As to all Defendants)

112.    Plaintiff re-alleges and re-incorporates all preceding paragraphs.

113.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

114.    Plaintiff and members of the Class are reasonable consumers who do not expect their guns to fail to perform or damage other property due to an unsupported chamber and inadequate round/casing support.

115.    The Glock Defendants knew the Class Guns suffered from inherent defects, were defectively designed or manufactured, were dangerous, would fail prematurely, and were not suitable for their intended use.

116.    In failing to disclose the Unsupported Chamber Defect, the Glock Defendants' knowingly misrepresented facts, or intentionally concealed material facts and breached their duty not to do so.

117.    The Glock Defendants were under a duty to Plaintiff and members of the Class to disclose the Unsupported Chamber Defect because Defendants were in a superior position to know the true state of facts about the safety defect and Plaintiff and members of the Class could not reasonably have been expected to learn or discover that the Class Guns had a dangerous safety defect until it manifested.

118.    A reasonable consumer would have considered the facts the Glock Defendants concealed or did not disclose to Plaintiff and members of the Class to be important in deciding whether to purchase the Class Guns.  Had Plaintiff and members of the Class known of the

1   Unsupported Chamber Defect in the Class Guns, they would have not purchased the guns or would

2   have paid less for them.

3          119.    The Glock Defendants continued to conceal the defective nature of the Class Guns

4   even after consumers began to report problems.  The Glock Defendants continue to cover up and

5   conceal the true nature of the Unsupported Chamber Defect.

6          120.    The Glock Defendants' acts, conduct, and practices were likely to deceive

7   reasonable members of the public.

8          121.    The Glock Defendants' business acts and practices were also "unfair" because they

9   are immoral, unethical, oppressive, unscrupulous, and/or are substantially injurious to consumers.

10         122.    The Glock Defendants' business acts were also unlawful.  A business practice is

11  unlawful under the UCL if it is forbidden by any law.  The Glock Defendants' acts, conduct, and

12  practices were unlawful, in that they constituted, among other things, violations of the Consumer

13  Legal Remedies Act and False Advertising Law.

14         123.    As a direct and proximate result of the Glock Defendants' unfair and deceptive

15  practices, Plaintiff and members of the Class have lost money or property.

16         124.    Plaintiff lacks an adequate remedy at law, or remedies at law will not sufficiently

17  compensate Plaintiff, the class, or the public, such that the equitable relief afforded by the UCL is

18  necessary to promote substantial justice here.

19         125.    The Glock Defendants have been unjustly enriched and should be required to make

20  restitution to Plaintiff and members of Class pursuant to sections 17203 and 17204 of the

21  California Business and Professions Code.  Plaintiff and members of the Class also seek injunctive

22  relief, including public injunctive relief, as deemed appropriate by the Court, as well as attorneys'

23  fees and costs of suit under section 1021.5 of the California Code of Civil Procedure.

24                          **FOURTH CAUSE OF ACTION**
                **VIOLATION OF THE FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE § 17500, ET SEQ.**
25                          (Individually and on Behalf of the Class)
                                   (As to all Defendants)
26

27         126.    Plaintiff re-alleges and re-incorporates all preceding paragraphs.

28

127.   The Glock Defendants have benefitted from intentionally selling at an unjust profit defective Class Guns at artificially inflated prices due to the concealment of the Unsupported Chamber Defect, and Plaintiff and other Class members overpaid for their Class Guns.

128.   The Glock Defendants disseminated advertising and promotional material that was designed to convey to the public that the Class Guns were safe, reliable, and operated as consumers would expect the Class Guns to operate.

129.   The Glock Defendants were aware, or should have been aware, of the Unsupported Chamber Defect at the time Plaintiff and other Class members purchased the Class Guns.

130.   However, the Glock Defendants negligently or intentionally made representations regarding safety and reliability in its advertisements, and, due to issues it was aware of, did not sell Class Guns that conformed to the representations and promises in its publicly disseminated advertisements.  Through their omissions of a material fact (*i.e.,* the Defect within the Class Guns), the Glock Defendants intended to induce, and did induce, Plaintiff and the other Class members to either purchase a Class Gun that they otherwise would not have purchased, or pay more for a Class Gun than they otherwise would have paid.

131.   The Glock Defendants unjustly received and retained benefits from Plaintiff and the other Class members.

132.   It is inequitable and unconscionable for the Glock Defendants to retain these benefits.

133.   Because the Glock Defendants wrongfully concealed their misconduct, Plaintiff and members of the Class were not aware of the facts concerning the Class Guns and did not benefit from the Glock Defendants' misconduct.

134.   The Glock Defendants knowingly accepted the unjust benefits of its wrongful conduct.

135.   The Glock Defendants had notice of conduct as alleged herein.

136.   As a result of the Glock Defendants' misconduct, Plaintiff and members of the Class suffered an injury-in-fact and lost money and/or property in an amount to be proven at trial.

**PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and the Class he seeks to represent, prays for a judgment against the Glock Defendants as follows:

1.      An Order certifying this action to proceed as a class action, and naming Plaintiff as the representative for the Class and their counsel as class counsel;

2.      An award, where allowable, in favor of Plaintiff and the Class that includes compensatory, exemplary or punitive damages, treble damages, and statutory damages, including interest thereon, in an amount to be proven at trial;

3.      An award, where allowable, in favor of Plaintiff and the Class for compensatory damages that includes the cost of repair, replacement or modification of the Defect to render safe the Class Guns;

4.      Declare that the Glock Defendants are financially responsible for notifying members of the Class of the Defect with the Class Guns;

5.      An Order enjoining the Glock Defendants from further deceptive advertising, marketing, distribution, and sales practices with respect to the Class Guns and requiring the Defendants to repair and/or replace Plaintiff and the other Class members' Class Guns with a suitable alternative pistol of Plaintiff's and Class members' choosing.

6.      Declaring that the Glock Defendants must disgorge, for the benefit of all Class members, all or part of the ill-gotten profits it received from the sale of the Class Guns, or order the Glock Defendants to make full restitution to Plaintiff and the Class members.

7.      An Order permanently enjoining the Glock Defendants from continuing to engage in the unlawful and inequitable conduct alleged herein;

8.      Granting Plaintiff and the Class members all equitable remedies permitted by law against the Glock Defendants;

9.      An award of attorneys' fees and costs, as allowed by law;

10.      An award of pre-judgment and post-judgment interest, as provided by law;

11.      Leave for Plaintiff and the Class members to amend the Complaint to conform to the evidence produced at trial; and

3:20-cv-08807-WHO
THIRD AMENDED CLASS ACTION COMPLAINT

12. Such other relief against the Glock Defendants as the Court may deem just and proper under the circumstances and applicable law.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a jury on all triable issues.

Respectfully submitted:
Dated: June 7, 2021

**NICHOLAS & TOMASEVIC, LLP**

By:     _./s/ Alex Tomasevic_____
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
225 Broadway, 19th Floor
San Diego, CA 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

**LEWIS LAW FIRM, PLC**
Robert K. Lewis
_Admitted Pro Hac Vice_
(AZ State Bar No. 016625)
2633 E. Indian School Road, Suite 360
Phoenix, Arizona 85016
Phone: (602) 443-0402
Fax:    (602) 443-0403
Email: rob@lewisandpokora.com

**POKORA LAW, PLC**
Amy M. Pokora
_Admitted Pro Hac Vice_
(AZ State Bar No. 027201)
2633 E. Indian School Road, Suite 360
Phoenix, Arizona 85016
Phone: (602) 889-6666
Fax:    (602) 889-6681
Email: amy@lewisandpokora.com

_Attorneys for Plaintiff_