UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN C. JOHNSON,

               Plaintiff,

      v.

GLOCK, INC., et al.,

               Defendants.

Case No.  3:20-cv-08807-WHO

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 64

Plaintiff Steven Johnson alleges—on behalf of himself and a proposed class of California gun owners—that defendants Glock, Inc., and Glock Ges.m.b.H (collectively, "Glock") manufacture, market, and sell certain defective firearms.  According to him, specific Glock guns' chambers are "unsupported," which can cause damage to brass casings and, sometimes, cause the guns to dangerously blow apart.  Johnson alleges that Glock's failure to disclose the alleged defect and its consequences violated California consumer protection law.  I previously granted two rounds of motions to dismiss the complaint for various pleading failures.  This time, Johnson has adequately pleaded his claims, except when it comes to a few specific statements that are not actionable under California's False Advertising Law; the claims are not barred by the statute of limitations on the face of the complaint; and Glock's remaining arguments are unpersuasive or premature.  Except to the limited extent described, Glock's motion to dismiss is denied.

**BACKGROUND**

Johnson is a retired officer from the Oakland Police Department.  Third Amended Complaint ("TAC") [Dkt. No. 60] ¶ 8.  Glock sells firearms.  *See, e.g.*, *id.* ¶ 15.  On April 15, 2016, Johnson purchased a Glock 30 SF .45 caliber gun from an authorized Glock dealer in California.  *Id.* ¶ 8.

According to Johnson, a group of Glock models (the "Class Guns") possess a defect, an "unsupported chamber." *Id.* ¶ 20.  Essentially, the barrel chamber "does not fully enclose the bullet casing sufficiently before firing." *Id.*  The "feed ramp" of the guns "extends too far into the chamber." *Id.*  The result, Johnson alleges, is that the chamber does not adequately support the round. *Id.*  This, in turn, places "unreasonable pressures" on the round. *Id.*  Johnson alleges that this defect has two results.  First, the defect damages the brass casings of a round, sometimes resulting in a "bulge" or "smile." *Id.* ¶ 24.  The damage is sometimes noticeable by the naked eye, sometimes not. *Id.*  Johnson claims that this damage "renders the brass casings useless, nonfunctional, and valueless." *Id.* ¶ 25.  They are usually, in contrast, reusable. *Id.* ¶ 26.  Second, the defect can cause a "blowout" or "kaboom." *Id.* ¶ 27.  When this happens, the round explodes or separates and "a piece of the casing dislodges." *Id.*  These kabooms can cause severe injury to the shooter. *Id.*

Johnson alleges that Glock knowingly failed to disclose the existence of the defect (or its consequences).  He also alleges that Glock made statements (such as its guns being the result of a "profound series of engineering feats") that would lead reasonable consumers to believe the guns were not unreasonably safe. *See id.* ¶¶ 17–20.

Johnson brought suit in state court and Glock removed the case to this court in December 2020.  Dkt. No. 1.  In February 2021, I granted Glock's motion to dismiss the First Amended Complaint with leave to amend. *See* Dkt. No. 38 ("First MTD Order").  Among other problems, Johnson "never plead[ed] basic facts, like who he bought his Glock from, when, or how he was injured by the alleged defect." *Id.* 1.  For that reason and others, the original complaint was deficient.  In May 2021, I granted Glock's motion to dismiss the Second Amended Complaint ("FAC"). *See* Dkt. No. 58 ("Second MTD Order").  I found that three of the claims were time-barred on the face of the complaint and that Johnson had not adequately alleged that Glock had pre-sale knowledge of the defect, requiring dismissal of the fourth claim.

On June 7, 2021, Johnson filed the TAC.  The complaint is brought on behalf of Johnson and a putative class of "[a]ll current and former owners of a Class Gun that was purchased in the State of California."  TAC ¶ 69.  He brings four claims: violation of the Consumers Legal

United States District Court
Northern District of California

1   Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750 *et seq.*; the Unfair Competition Law ("UCL"),

2   CAL. BUS. & PROF. CODE § 17200 *et seq.*; the False Advertising Law ("FAL"), CAL. BUS. & PROF.

3   CODE § 17500; and for common-law fraudulent omission. *See id.* ¶¶ 85–136.

### LEGAL STANDARD

5       Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a district court must dismiss a

6   complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6)

7   motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible

8   on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially

9   plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that

10  the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678

11  (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted

12  unlawfully." *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff

13  must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*,

14  550 U.S. at 555, 570.

15      In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

16  Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

17  plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court

18  is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

19  fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

20  2008).

21      FRCP 9(b) imposes a heightened pleading standard where a complaint alleges fraud or

22  mistake.  Under FRCP 9(b), to state a claim for fraud, a party must plead with "particularity the

23  circumstances constituting the fraud," and the allegations must "be specific enough to give

24  defendants notice of the particular misconduct . . . so that they can defend against the charge and

25  not just deny that they have done anything wrong." *See Kearns v. Ford Motor Co.*, 567 F.3d

26  1120, 1124 (9th Cir. 2009) (citation omitted).  "Averments of fraud must be accompanied by the

27  who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp.*, 317

28  F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

## I.      STATUTES OF LIMITATIONS

Glock moves to dismiss the CLRA, FAL, and fraudulent omissions claims as barred by their statutes of limitations. *See* Motion to Dismiss ("Mot.") [Dkt. No. 64] 2–9.

A motion to dismiss based on a statute of limitations can only be granted when its running "is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (internal quotation marks and citation omitted). The parties agree that the CLRA, FAL, and fraudulent omissions claims all have statutes of limitations of three years. *See* Mot. 2–3; Opposition to the Mot. ("Oppo.") [Dkt. No. 66] 6. There is no dispute that Johnson's gun was purchased more than three years before he filed suit. Johnson contends, however, that the doctrines of delayed discovery and fraudulent concealment tolling save his claims. *See* Oppo. 6–11. I agree with him that, on the pleadings, he has sufficiently alleged at least that the delayed discovery rule applies.[1]

Although the expiration of a statute of limitations is an affirmative defense, Johnson bears the burden of adequately pleading tolling. *Hinton v. Pac. Enterprises*, 5 F.3d 391, 395 (9th Cir. 1993). "To align the actual application of the limitations defense more closely with the policy goals animating it, the courts and the Legislature have over time developed a handful of equitable exceptions to and modifications of the usual rules governing limitations periods." *Aryeh v. Canon*

---

[1] The accrual standard for the fraudulent omission claim "codifies the delayed discovery rule," *Britton v. Girardi*, 235 Cal. App. 4th 721, 733 (2015), so the parties treat all three claims as rising or falling together.

*Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013).  One exception, the discovery rule, "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005).  A reason to discover exists when the plaintiff has reason "at least to suspect a factual basis for its elements."  *Id.* (internal quotation marks and citation omitted).  To rely on this rule, "a plaintiff must plead: (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence."  *Id.* at 808.  "California law makes clear that a plaintiff must allege specific facts establishing the applicability of the discovery-rule exception."  *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995).

Previously, I found that "Johnson has not adequately alleged when and under what circumstances the discovery of the violation or fraud occurred, let alone with the particularity required.  Johnson's sole allegation is that he discovered the defect 'in 2020.'"  Second MTD Order 6.  Without that information, "there [wa]s no way for Glock to fairly challenge it or for me to adjudicate whether the claim is tolled."  *Id.* 6–7.  He also failed to adequately plead reasonable diligence.  *Id.* 7.

Now, Johnson has adequately alleged that the discovery rule postpones accrual of his claim to within the statutory period and provided sufficient detail to allow analysis of his claims.  He alleges that he only discovered the alleged defect on July 21, 2020.  TAC ¶ 9.  He did so, he claims, from an online attorney advertisement about Glock hand guns.  *Id.*  He also includes allegations that plausibly show that he could not have discovered the defect sooner with reasonable diligence.  He alleges that he

> had never run into an article or disclosure of this kind despite his research into the gun.  None of the materials from Glock, including the materials that came with the gun or the statements on Glock's website, revealed or even mentioned the possibility of the Defect.  The authorized Glock dealer from which Mr. Johnson purchased his gun said nothing to hint at such a Defect.

*Id.* ¶ 10.  He claims that Glock entered into settlements with confidentiality provisions with those who sued over the defect, to prevent the public from learning about it.  *Id.* ¶ 43.  And he alleges that the defect is latent, making it easier to avoid discovery.  *Id.* ¶ 6.

United States District Court
Northern District of California

1    Glock first replies that "a cause of action does not accrue when a plaintiff learns about a

2    potential cause of action from an attorney." Mot. 3. It overstates things. As the cases it cites for

3    that view make clear, there is no special exception to the discovery rule for attorney

4    advertisements. All those cases did was apply the normal rule that discovery occurs when the

5    plaintiff learns the critical *facts* underlying the claim, not when they learned they had a legal claim

6    (including from an attorney). *See, e.g.*, *Murillo v. Homebridge Fin. Servs.*, No. CV 19-1328, 2019

7    WL 306447 *3 (C.D. Cal. May 22, 2019). Here, Johnson alleges that he did not know of the *facts*

8    giving rise to his claim until he viewed the advertisement, which happened to be from an attorney.

9    Next, Glock argues that "Plaintiff provides no facts about why he visited this website, let

10   alone why he explored suing Glock over a pistol that until that moment he allegedly thought was

11   defect free." Mot. 4. He need not do so at this stage. Discovery will reveal whether Johnson had

12   reason to suspect a problem prior to this, but he does not have to affirmatively rule out every

13   possibility at the pleadings. Relatedly, Glock contends that Johnson must have been aware of the

14   defect due to the damage to casings. Mot. 5. But Johnson now alleges that the damage would not

15   always be plain to the naked eye. TAC ¶ 24. Taking that as true, it is reasonable that Johnson

16   would never have observed the physical manifestation of the defect to put him on notice. Again,

17   discovery will reveal whether Johnson should have realized the defect was there before.

18   Relatedly, Glock argues that Johnson's allegation that he suffered "out of pocket loss" means that

19   he *must* have known. Mot. 5–6. That does not follow. He may now know that he suffered those

20   losses without knowing at the time.

21   Glock also asserts that the TAC fails to show due diligence and, in fact, affirmatively

22   undermines that argument. *See* Mot. 6–7. Its argument is that, because Johnson alleges that

23   public information would show that *Glock* had pre-sale knowledge of the defect, that same public

24   knowledge would put him on notice. *Id.* Making that finding at the pleadings would be

25   inappropriate. For the reasons explained below, it is plausible that Glock was on notice. But just

26   because a company whose business likely requires it to monitor online chatter would be on notice

27   does not mean that a reasonable consumer with no incentive to perform the same level of

28   monitoring would be on notice. Glock's pre-sale knowledge, moreover, is alleged to partially

depend in part on things like lawsuits that would not be as plausibly within the knowledge of a

reasonable consumer.[2]

Accordingly, I cannot say these three claims are time-barred "on the face of the

complaint." *Huynh*, 465 F.3d at 997. Because Johnson has adequately alleged that the discovery

rule applies, there is no need to determine whether he has also adequately pleaded fraudulent

concealment.

## II.      DUTY TO DISCLOSE

Glock argues that Johnson has not adequately alleged that it had pre-sale knowledge of the

alleged defect, so it had no duty to disclose the defect under any of the four causes of action. *See*

Mot. 11–18.

Johnson's claims are brought under the UCL, CLRA, FAL, and a common-law fraudulent

omission theory. The parties agree that, under all four causes of action, California law renders

some omissions actionable, but not all. In particular, "[o]missions may be the basis of claims

under California consumer protections laws, but to be actionable the omission must be contrary to

a representation actually made by the defendant, or an omission of a fact the defendant was

obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018); s*ee also*

*Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 834–35 (2006), *as modified* (Nov. 8,

2006).

There are two situations in which this a duty to disclose arises. The first is when the

undisclosed information "cause[s] an unreasonable safety hazard." *Hodsdon*, 891 F.3d at 861–62.

Under this theory, a plaintiff must adequately plead (1) a defect, (2) a safety hazard, (3) a causal

connection between the defect and the hazard, and (4) the defendant's knowledge of the defect at

the time of sale. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, at 1142–43 (9th Cir. 2012).

United States District Court
Northern District of California

---

[2] Glock incorrectly claims that "all presumptions" must be drawn against Johnson in seeking to establish the discovery rule at this stage. *See* Reply 2. The Ninth Circuit case that the quote originally comes from makes clear it is discussing *proof*, not *pleading*; it was making the unremarkable point that the party asserting the discovery rule bears the burden on it. *N.L.R.B. v. Don Burgess Const. Corp.*, 596 F.2d 378, 383 (9th Cir. 1979) ("The party seeking the benefit of the avoidance of the statute of limitations carries the burden of proof to establish the elements . . . . Moreover, all presumptions are against him.").

The second situation is when (1) the omission is material, (2) the defect is central to the product's function, and (3) one of the so-called *LiMandri* factors is met. *Hodsdon*, 891 F.3d at 863. The four *LiMandri* factors are:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011), *as modified* (Dec. 28, 2011) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).

Johnson advances two theories for why Glock was obligated to disclose the alleged defect: (1) a safety-hazard theory and (2) a theory that the defect was material, goes to the product's central function, and that Glock had exclusive knowledge of those facts. I conclude that Johnson has adequately alleged a safety-hazard based theory, so there is no need at present to determine whether he has plausibly pleaded his alternative *LiMandri* theory.

Glock argues only that Johnson has failed to adequately allege that it had knowledge of the defect at the time of sale. *See* Mot. 10–16.[3] I previously agreed, finding that Johnson's allegations were insufficient. *See* Second MTD Order 11–13. Now, however, Johnson has added significantly to his allegations, plausibly illustrating Glock's knowledge.

Before turning to specific incidents, I note one overarching, important allegation. In the Second MTD Order, I wrote that,

> The situation would be different if the only way that guns could reasonably blow out were this unsupported chamber defect; there is no such allegation here and, without it, "common sense," *Ashcroft*, 556 U.S. at 664, teaches that igniting gun powder can cause explosions unconnected to it. *Cf. Wallace* [*v. SharkNinja Operating*, LLC, No. 18-CV-05221-BLF, 2020 WL 1139649, at *8 (N.D. Cal. Mar. 9, 2020) (finding that reports of blenders exploding were, alone, insufficient to show that the blenders exploded *due to a particular defect*)]. At bottom, Johnson relies only on unspecified complaints or reports of blow outs with no allegation connecting them to the defect here.

*Id.* 13. Now, Johnson has included allegations that go directly to this problem. He claims that

---

[3] Glock's first motion argued that Johnson had not adequately pleaded a safety hazard, but I rejected that argument and Glock does not repeat it here. *See* First MTD Order 8–9.

United States District Court
Northern District of California

"neither brass damage (including smiles or bulges), nor kabooms, are the normal result of firing a handgun, or of the forces of gun powder exploding." TAC ¶ 29. Indeed, "when using typical factory ammunition, the brass damage described in this complaint, and especially a kaboom, will *only* happen when firing a Class Gun because of the Unsupported Chamber Defect." *Id.* (emphasis added).[4] Taking that allegation into account, I now turn to his specific allegations illustrating Glock's purported knowledge.

Johnson alleges that, in 2004, "the Portland Police Department made a claim against Glock after two .45-caliber Glock Model 21 pistols (Class Guns) exploded in the hands of two of Portland PD's officers." TAC ¶ 32. He alleges that "[t]hese exploded guns were Class Guns that had the Unsupported Chamber Defect *and it was the Unsupported Chamber Defect that caused the kabooms*." *Id.* (emphasis added). But, he alleges, Glock entered into a confidential settlement with the department. *Id.* (Johnson's SAC referenced the incident but failed to tie it to the defect. *See* SAC ¶ 25; Second MTD Order 12.) Glock counters that the plaintiff in that lawsuit "did not claim that the Glock pistol had an unsupported chamber, but rather sued both Glock and the ammunition manufacturer, contending that the ammunition was defective, and that the metallurgic strength of the pistol's barrel was deficient." Mot. 13–14. But that factual assertion is just argument in the brief, unsupported by a request for judicial notice. That failure is especially conspicuous because Glock *does* request judicial notice about other lawsuits. *See* Request for Judicial Notice ("RJN") [Dkt. No. 65]. At this stage, I must take Johnson's pleaded allegation over Glock's unsupported argument. A lawsuit based on the very defect at issue would help plausibly put Glock on notice.

Next, Johnson alleges that two Glock Guns used by the Winter Haven, Florida, police department "kaboomed" in 2007. TAC ¶ 33. He pleads that "[u]pon information and belief, these exploded guns were Class Guns that had the Unsupported Chamber Defect and it was the Unsupported Chamber Defect that caused the kabooms." *Id.* The incident allegedly caused the

---

[4] Johnson contrasts "typical factory ammunition" to "reloaded" ammunition, which might result in the harms discussed. TAC ¶ 29. But, at this stage, the allegation is sufficient to draw a tight enough nexus between blow outs and the defect.

department to stop using Glock guns.  *Id.*  Glock responds that the allegation is conclusory, Mot. 14, but it is sufficiently detailed for present purposes.  Glock also contends that a news story from 2018 states that the ammunition maker of the bullets took responsibility for the incidents.  *See* Dkt. No. 65-1 at 5–7.  Even if I were to grant Glock's request for judicial notice of the existence of the article (Dkt. No. 65), I would not and could not take notice of the truth of what it contains. Glock's argument may ultimately carry the day as an *evidentiary* matter, but I cannot accept as true an un-cross-examined hearsay statement from an interested party in the face of pleaded allegations.  *See* Fed. R. Evid. 201(b) (restricting judicial notice to facts "not subject to reasonable dispute"); *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1022 (C.D. Cal. 2015).  A municipal police department—a major customer—allegedly discontinuing using guns due to the defect helps make it plausible that Glock was aware of it.

Johnson also relies on a 2009 officer training for the Miami Police Department in which a Glock exploded and the officer sued Glock.  TAC ¶ 34.  Johnson again alleges that "on information and belief, this exploded gun was a Class Gun that had the Unsupported Chamber Defect and it was the Unsupported Chamber Defect that caused the kaboom.  Upon information and belief, Glock entered a confidential settlement with the officer, but never fixed or warned of the Defect."  *Id.*  Glock's only response to this allegation is that Johnson "does not say that the plaintiffs in those cases alleged an 'unsupported chamber' caused their injuries.  Instead, Plaintiff says that he thinks that is what happened."  Mot. 14.  But Glock again does not seek judicial notice of the lawsuit to demonstrate that Johnson is incorrect, so his allegations must be taken as true. And again, because the lawsuit was against Glock, it plausibly would help put it on notice.

Aside from these specific incidents, Johnson relies on complaints to Glock.  He attempted to do so in the SAC as well, but the pleading was too vague to create a reasonable inference of knowledge.  Second MTD Order 11–12.  As I explained, "[c]ourts have routinely found that nebulous allegations that consumers made undated complaints are insufficient to show that a company had pre-sale knowledge of the defect."  *Id.* 11 (citations omitted).  Now, Johnson pleads that before (and after) he purchased his Glock, "Glock received an unusually high number of complaints regarding the Unsupported Chamber Defect and Glock received, saw, and examined

1 | numerous returned Class Guns and bullet casings, thereby reminding Glock repeatedly, and with

2 | physical evidence, of the Defect."  TAC ¶ 44.  And he is specific that "[m]any of these consumer

3 | claims and product send-backs were done pursuant to Glock's internal warranty program."  *Id.*  An

4 | "unusually high number of complaints" about an issue is often an adequate allegation to plead pre-

5 | sale knowledge.  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026 (9th Cir. 2017).  And,

6 | because the precise details and numbers of these complaints are "matters peculiarly within the

7 | [Glock's] knowledge, allegations based on information and belief" are sufficient here, especially

8 | in light of Johnson pleading the specific channel—warranty claims—through which complaints

9 | were submitted.  *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 789 (N.D. Cal. 2011).

10 |      Glock counters that Johnson should have attached these complaints to his complaint, Mot.

11 | 11, but the law imposes no such requirement at the pleadings and Glock, not Johnson, is likely to

12 | have them anyway.  Glock also cites cases holding that information-and-belief pleading usually

13 | needs an explanation of the facts supporting the belief to "satisfy Rule 9(b)."  Mot. 12; *see, e.g.*,

14 | *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493–94 (9th Cir. 2019).  But Rule 9(b)'s

15 | particularity requirement does not apply to "[m]alice, intent, knowledge, and other conditions of a

16 | person's mind[, which] may be alleged generally."  Fed. R. Civ. P. 9(b).

17 |      Finally, Johnson relies on videos online "from at least as far back as 2008" that "depict[]

18 | Glock kabooms, caused at least in part by the Unsupported Chamber Defect."  TAC ¶ 50.  He

19 | pleads specific examples.  One published in 2012 had nearly 100,000 views.  *Id.*  Another in 2015

20 | had nearly 50,000.  *Id.* ¶ 51.  A third from 2012 has more than 200,000.  *Id.* ¶ 52.  He includes a

21 | number of others.  *Id.* ¶ 53.  The videos often warn consumers about the kabooms and Glock guns.

22 | *Id.* ¶¶ 50–53.  I agree with Johnson that, at the pleadings stage, it is reasonable to infer that it is

23 | plausible that Glock would have seen at least some of these videos.  And, due to Johnson's

24 | allegation that (so long as factory ammunition is used), the kaboom *must* result from the alleged

25 | defect, *id.* ¶ 29, it is also reasonable to infer that Glock plausibly had knowledge of that defect.

26 |      Glock counters that "YouTube is a third-party website, and Glock does not control its

27 | content."  Mot. 16.  That misses the point.  Its knowledge can be inferred because the videos had

28 | relatively wide circulation, not because Glock owned the website.  Glock also argues that these

videos are only a few of the "over 800 million YouTube videos published on the site." *Id.* But these videos specifically had to do with Glock's business and were from displeased customers complaining about a potential safety hazard. It is reasonable to draw the inference—as I must at this stage—that a business like Glock monitors for or would have been made aware of such things.

All of these taken together—the specific incidents and lawsuits, the many complaints, and the widely-seen online videos—plausibly show that Glock had knowledge of the alleged defect.[5] As explained above, I reject many of Glock's particular arguments. But even if Glock were right on some of them—for instance, even if the complaints standing alone were insufficient—in determining whether a plaintiff has alleged pre-sale knowledge, the inquiry necessarily focuses on all possible sources of that knowledge put together. Discovery will reveal what Glock truly knew, and when.

## III.   FAL FALSITY

Particular to the FAL claim, Glock argues that "[t]he TAC does not allege a single actionable statement made by Glock, warranting dismissal of Plaintiff's FAL claim as a matter of law." Mot. 19. Unlike under the CLRA or a fraudulent omission claim, Glock argues that the FAL requires an advertisement—that is, an affirmative statement. And the actual statements that Johnson alleges, according to Glock, are not misleading as a matter of law. *Id.*

To start, I agree that the FAL requires a plaintiff to point to a misleading statement. The statute provides in pertinent part,

> [i]t is unlawful for any . . . corporation . . . with intent directly or indirectly to perform services, professional or otherwise, . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning . . . those services . . . or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading

---

[5] Johnson alleges other consumer complaints that are either undated or happened after his purchase. *See* TAC ¶¶ 40–42. And he relies on comments posted to third-party websites. *Id.* ¶¶ 45–49. Because his other allegations suffice, there is no need to rely on these in this Order.

Cal. Bus. & Prof. Code § 17500.  As a result, courts have explained that "[t]here can be no FAL claim where there is no 'statement' at all."  *Norcia v. Samsung Telecommunications Am., LLC*, No. 14-CV-00582-JD, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015); *accord, e.g.*, *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018). But that is not to say that the FAL does not impose liability for omissions, it is only to say that the plaintiff's claim needs to be based on the defendant's omission *of information from the challenged advertisement*.  *See Norcia*, 2015 WL 4967247, at *8.  Said another way, the FAL does not impose liability for a pure omission unconnected from a specific advertisement.

Johnson points to several such alleged misrepresentative statements.  Glock's website allegedly stated that:

- The guns represented a "profound series of engineering feats"

- The guns had a "revolutionary design"

- Glock had a "culture of continuous improvement"

-  "The continuous pursuit of perfection in every facet of design, engineering, and manufacturing, has firmly established GLOCK pistols as the standard by which all others are compared"

- The amalgamation that "[i]t is our way of thinking, a culture of continuous improvement. The 4th generation of the GLOCK 'Safe Action'® pistol brings revolutionary design changes to the world's most popular pistol."

- It lived up to "Glock Perfection"

- Its "commitment to 'Perfection' remains steadfast: we will never compromise quality. We will continue to invest tremendous resources in the technology and talent necessary to improve our products wherever possible; and we will always strive to deliver maximum customer satisfaction!"

- Its motto was ""Safe. Simple. Fast. = Confidence."

- "GLOCK [pistol] delivers on our promise of safety, reliability, and simplicity at an affordable price."

TAC ¶¶ 17–19.

"Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and thus are not actionable under the UCL, FAL, or CLRA." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1081 (N.D. Cal. 2017) (citing *Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir.), *opinion amended on denial of reh'g*, 352 F.3d 367 (9th Cir. 2003)). "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008). I agree with Glock that much of this constitutes non-actionable puffery that cannot be misleading as a matter of law, but the statements about safety are actionable.

The first group of statements are about the guns themselves: a "profound series of engineering feats," "revolutionary," "perfection in every facet of design, engineering, and manufacturing," "the standard by which all others are compared," "revolutionary design," and "Glock Perfection." All of these, as courts have often found when it comes to materially similar terms, are vague and general claims. They are standardless and provide no yardstick to create any objective expectation in the mind of the reasonable consumer. *Cf. In re Iphone 4S Consumer Litig.*, No. C 12-1127 CW, 2014 WL 589388, at *6 (N.D. Cal. Feb. 14, 2014), *aff'd sub nom. In re iPhone 4s Consumer Litig.*, 637 F. App'x 414 (9th Cir. 2016) (finding that describing a product as "breakthrough" is mere puffery and collecting cases finding the same about similar descriptors).

The second group of statements are about Glock's culture: "culture of continuous improvement," "continuous pursuit of perfection," and "[w]e will continue to invest tremendous resources in the technology and talent necessary to improve our products wherever possible; and we will always strive to deliver maximum customer satisfaction." Those statements too are vague statements that are nothing more than amorphous, rosy assessments of the company's culture that, again, would not lead reasonable consumers to believe anything specific about any product. *Cf. Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1207 (9th Cir. 2016) (finding that describing a company as having a "strong credit culture" to be mere puffery).

Last are the statements about safety: describing the guns as "Safe Action®," "Safe. Simple.

14

Fast. = Confidence," and that it "delivers on our promise of safety, reliability, and simplicity." I cannot find that this group of representations is mere puffery; a factfinder will have to make that assessment. It is true, as Glock points out, that several courts have held that specific uses of a product being "safe" or operating "safely" were puffery. But none of those cases (discussed below) examined a product like a gun. In that particular context, a representation that a gun is "safe" may well have a specific and measurable meaning to a reasonable consumer. No one disputes that, when made incorrectly, guns can be dangerous—indeed, it is a staple of Glock's briefing that igniting gun powder is dangerous. When a seller represents that a gun is "safe," a reasonable consumer may understand that to be a concrete representation that, at the very least, the gun will not erratically explode when used correctly.

Cases finding the representation to be puffery, in contrast, do not concern a product like a gun or a hazard like a blowout. In Glock's leading case, the court found that a door-closing feature in a car described as operating "safely" would not be measurable. *See Azoulai v. BMW of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017). In one case cited by that court, the Ninth Circuit held that the claim that a cruise line was "a reputable cruise line and that passengers in their care would be safely and adequately served," was not actionable. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1066 (9th Cir. 2001). In another, one court found, without further explanation, that "promoting a car as generally safe and reliable is too general a representation to be proven true or false." *Zaccagnino v. Nissan N. Am., Inc.*, No. 14 CIV. 3690 LLS, 2015 WL 3929620, at *4 (S.D.N.Y. June 17, 2015). And in a last, the court found that the motto "Be Safe. Be Smart. Be Certain" on antimicrobial fabric to be puffery. *Strategic Partners Inc. v. Vestagen Protective Techs. Inc.*, No. 216CV05900, 2016 WL 10611186, at *4 (C.D. Cal. Nov. 23, 2016). Unlike those cases, a representation that a gun is "safe" may be found to have the hallmarks of non-puffery: it creates a concrete, specific expectation and it can be proven false.

Accordingly, most of the statements that Johnson puts forward cannot result in FAL liability. The safety-based statements can.

15

United States District Court
Northern District of California

## IV.    ECONOMIC LOSS RULE

Glock argues that the economic loss rule bars the fraudulent omission claim.  Mot. 19–22. As a general matter, that doctrine dictates that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).  In other words, when loss is purely economic—not personal injury or damage to property—the rule sometimes bars tortious liability.  *Jimenez v. Superior Ct.*, 29 Cal. 4th 473, 482 (2002).  The doctrine exists to separate out tort and contract liability.  *See id.*

In *Robinson*, the California Supreme Court carved out an exception to the economic loss rule for certain fraudulent misrepresentation claims.  *Robinson*, 34 Cal. 4th at 991–92.  But it left open the question whether fraudulent *omission* claims would also be exempted.  *See id.*  In *Anderson v. Apple*, I concluded that the most faithful reading of California law, especially *Robinson* itself, led to the conclusion that the rule would not necessarily bar fraudulent omission claims.  500 F. Supp. 3d 993, 1019–20 (N.D. Cal. 2020).  That explanation was at some length, but the core point was that "*Robinson*'s rationale applies equally well to omissions as to affirmative representations and there is no principled reason, in this context, for distinguishing between the two types of intentional misrepresentations."  *Id.* at 1020.  As I explained, fraudulent omissions are materially the same as fraudulent misrepresentations in the ways that mattered to *Robinson*: they were "above and beyond" a mere breach of contract; they were akin to the common law tort of fraud; they were "intentional"; and they were similar to fraudulent inducement by omission, which was already recognized to not be barred under the rule.  *See id.* at 1020–21.

Glock criticizes *Anderson* and asks that I overturn it.  I will not.  Glock's primary argument is largely that I should not have gone where the California Supreme Court did not.  At times, it wraps that argument in the garb of the *Erie* doctrine.  *See* Mot. 20–21.  But federal courts' duty in a situation like this is clear (including under *Erie*): "When interpreting state law, we are bound by the decisions of a state's highest court.  In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."

*N.L.R.B. v. Calkins*, 187 F.3d 1080, 1089 (9th Cir. 1999). My decision in *Anderson* was based on what I believed (and believe) to be the most faithful reading of *Robinson* for the reasons explained there.

Glock also argues that *Anderson* was solely motivated by public policy considerations. Mot. 21. A fair reading shows otherwise; as described above, it was based on a close analysis of *Robinson*. "Public policy" only entered the last part of the analysis because the California Supreme Court included it in *its* analysis. *Robinson*, 34 Cal. 4th at 991. Next, Glock contends that it was important to the California Supreme Court that the floodgates of litigation be kept closed by the requirement that fraud pleading be done with specificity. Mot. 22. Fraudulent *omissions* cannot, Glock argues, be pleaded with that same specificity. *See Anderson*, 500 F. Supp. 3d at 1018 ("[O]ther courts have explained, and I agree, that while, [t]ypically, averments of fraud must be accompanied by 'the who what when where, and how' of the misconduct charged, pure omissions claims can succeed without the same level of specificity required by a normal fraud claim." (some internal quotation marks and citations omitted)). But fraudulent omissions claims also have guardrails to prevent unjustified litigation. Even if, by the nature of the claim, the plaintiff will not be able to point to a specific past statement, they will still need to otherwise plead the elements of the claim. And omission claims have limitations that affirmative misrepresentations do not: Among other things, the universe of actionable omissions is constrained under California law as it is not for affirmative misrepresentations, as explained above. *See Hodsdon*, 891 F.3d at 862.

Last, Glock maintains that, even if *Anderson* governs, the *Robinson* exception applies only when the misrepresentation will expose the plaintiff to liability to a third party. Mot. 21–22. It is true that *Robinson* stated that its holding was limited to that circumstance. *Robinson*, 34 Cal. 4th at 993. I note that this is somewhat puzzling because none of its reasoning depended on that feature, it only appeared it one summative sentence, and fraudulent inducement by omission claims are not so constrained. But there is no need today to determine whether the economic loss rule is indeed so limited because it is plausible that Glock's alleged misrepresentations *did* expose Johnson to liability to others—for instance, if the gun blew out when he was near someone, if

someone else used it, or if he sold it to them.  Accordingly, even if Glock's reading is correct, it would not require dismissal now.

## V.      DAMAGE TO CASINGS

Glock contends that Johnson has not pleaded "any facts to permit the Court to determine that alleged harm to brass casings amount to more than de minimis damages."  Mot. 22.  He has: He alleges that they are normally usable but became unusable once damaged.  TAC ¶¶ 24–25. And he alleges that this causes monetary losses.  *Id.*  Glock also briefly argues that the warranty on its website disclaims "liability for incidental or consequential damage or for incidental expenses."  Mot. 22.  But Johnson alleges misrepresentation-based claims, not products liability or breach of contract claims.  Glock's argument is largely undeveloped, and it appears that the strong (though not quite unanimous) weight of authority indicates that the mere existence of a warranty is not sufficient to disclaim consumer misrepresentation-based liability, at least at the pleadings stage.  *See Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 891 (N.D. Cal. 2016) (collecting authorities).

## VI.      CLASS ALLEGATIONS

Glock moves to strike the class allegations because the proposed definition is overbroad and certification will not be possible.  Mot. 22–24.  However, "I have repeatedly rejected motions to strike class allegations as 'premature' at the dismissal stage, expressing preference to address class certification issues after the pleadings are settled and discovery finished."  *Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-CV-03613-WHO, 2020 WL 1245130, at *15 (N.D. Cal. Mar. 16, 2020) (collecting citations).  Other courts in this District have split on whether it is permissible at all.  *Id.*, at *3 (collecting citations).  Consequently, "[s]triking class allegations at the pleading stage is only appropriate where the defendant presents an argument that completely precludes certification of any class, not just the class currently defined in the complaint."  *Id.*, at *15.

Moreover, Glock argues that (1) the class is overbroad in that it may include people who never saw the alleged misrepresentations and those who sold them for full value, and (2) Johnson includes "similar" models of guns to those listed.  Mot. 22–24.  Even if it were wholly correct (which I do not decide), it would simply narrow the class and narrow the class guns; it would not

18

be appropriate to strike the allegations altogether. *Rice-Sherman*, 2020 WL 1245130, at *15.

## CONCLUSION

The motion to dismiss is DENIED except to the limited extent described above.

**IT IS SO ORDERED.**

Dated: September 22, 2021



William H. Orrick
United States District Judge