Paul G. Cereghini (SBN 148016)
Carissa A. Casolari (SBN 292878)
**BOWMAN AND BROOKE LLP**
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone:     (408) 279-5393
Facsimile:     (408) 279-5845
paul.cereghini@bowmanandbrooke.com
carissa.casolari@bowmanandbrooke.com

John F. Renzulli (*Pro Hac Vice*)
Christopher Renzulli (*Pro Hac Vice*)
Howard B. Schilsky (*Pro Hac Vice*)
**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, NY 10601
Telephone: (914) 285-0700
Facsimile: (914) 285-1213
jrenzulli@renzullilaw.com
crenzulli@renzullilaw.com
hschilsky@renzullilaw.com

Attorneys for Defendants Glock, Inc. and Glock Ges.m.b.H.
(Additional attorneys listed in signature page.)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN C. JOHNSON, an individual, on behalf of himself and all others similarly situated, | CASE NO.: 3:20-cv-08807-WHO |
| Plaintiff, | **DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| GLOCK, INC., a Georgia Corporation; GLOCK Ges.m.b.H., an Austrian entity; JOHN and JANE DOES I through V; ABC CORPORATIONS I-X, XYZ PARTNERSHIPS, SOLE PROPRIETORSHIPS and/or JOINT VENTURES I-X, GUN COMPONENT MANUFACTURERS I-V | Judge:   Hon. William H. Orrick |
| | Date:    June 12, 2024 |
| | Time:    2:00 p.m. |
| | Place:   San Francisco Courthouse |
| | Courtroom 2, 17th Floor |
| Defendants. | |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

   I.   Glock makes safe, rigorously tested pistols. ....................................................................... 2

   II.   Plaintiff misrepresents the evidence. .................................................................................. 5

   III.   Plaintiff decided to sue Glock after his counsel told him his pistols were defective.......... 7

ARGUMENT .............................................................................................................................. 8

   I.   Legal Standard ................................................................................................................... 8

   II.   Plaintiff cannot establish ascertainability, commonality, adequacy, or typicality............. 9

      A.   Plaintiff has not identified an ascertainable class. .................................................... 9

      B.   Plaintiff has not established commonality. ............................................................... 11

      C.   Plaintiff's claims are not typical of the class. .......................................................... 17

      D.   Plaintiff cannot establish that he is an adequate class representative. ......................... 20

   III.   Certification is not appropriate based on Rule 23(b)(2). ................................................. 20

   IV.   Certification is not appropriate under Rule 23(b)(3) because common issues do not predominate and the class action is not a superior method of adjudication............................ 21

      A.   None of Plaintiff's claimed common questions dominate this lawsuit......................... 21

      B.   Class litigation is not a superior method to adjudicate this controversy. .................... 25

CONCLUSION.......................................................................................................................... 26

CERTIFICATE OF SERVICE ................................................................................................... 27

**TABLE OF AUTHORITIES**

**Cases**

*Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 457 (S.D. Cal. 2014) ............................................ 14

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) ........................................................ 21

*Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 399–400 (N.D. Cal. 2021)................................... 15, 23

*Beaver v. Omni Hotels Mgmt. Corp.*, No. 20-CV-00191-AJB-DEB, 2023 WL 6120685, at *6 (S.D. Cal. Sept. 18, 2023) ...................................................................................................... 18

*Bee, Denning, Inc. v. Capital Alliance Group*, 310 F.R.D. 614, 621 (2015)............................... 11

*Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ....................................................... 16, 21, 25

*Daniel F. v. Blue Shield of California*, 305 F.R.D. 115, 122 (N.D. Cal. 2014)............................. 9

*Edwards v. Ford Motor Co.*, 603 Fed.Appx. 538, 541 (9th Cir. 2015) ......................................... 14

*Ehret v. Uber Tech., Inc.*, 148 F. Supp.3d 884 (N.D. Cal. 2015) ................................................ 11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 165 (1974)........................................................... 25

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) ............................................ 9

*Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 986–87 (9th Cir. 2020) ............................... 9

*Hamilton v. TBC Corp.*, 328 F.R.D. 359, 377 (C.D. Cal. 2018)................................................... 19

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)........................................ 17, 19

*Hoexter v. Simmons*, 140 F.R.D. 416, 422 (D. Ariz. 1991) ........................................................ 20

*In re Hitachi Television Optical Block Cases*, No. 08cv1746 DMS (NLS) 2011 WL 4499036 *4– *5 (S.D. Cal. Sept. 27, 2011) ............................................................................................... 11

*In re JUUL Labs, Inc. Marketing Sales Practices & Products Liability Litig.*, 609 F.Supp.3d 942, 961 (N.D. Cal. 2022)........................................................................................................... 17

*In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2021 WL 1250378 *3 (N.D. Cal. Apr. 5, 2021) ................................................................................................................................ 9

*In re MyFord Touch Consumer Litig.*, 2016 WL 6873453 (N.D. Cal. Nov. 22, 2016)................ 15

*In re Vioxx*, 103 Cal.Rptr. at 98–99 ........................................................................................... 15

*Johnson v. Harley-Davidson Motor Co. Grp. LLC*, 285 F.R.D. 573, 578–79 (E.D. Cal. 2012) . 11, 14

*Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726 *16–*17 (N.D. Cal. June 13, 2014)...................................................................................................................... 16

*Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1174 (9th Cir. 2017)....................................... 24

*Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th Cir. 2013) ............................................... 24

*Lucas v. Breg, Inc.*, 212 F.Supp.3d 950, 970 (S.D. Cal. 2016)............................................ 16, 21

*Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) ...................................................... 9

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) .................................... 15, 23

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004)............................................ 20

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co.*, ___F.Supp.3d___ *23 (C.D. Cal. 2023) ............................................................................. 15

*Quezada v. Loan Ctr. of California, Inc.*, No. CIV. 2:0800177WBSKJM, 2009 WL 5113506, at *7 (E.D. Cal. Dec. 18, 2009)............................................................................................... 18

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 532 (N.D. Cal. 2012) ........................... 24

*Robbins v. Phillips 66 Co.*, 343 F.R.D. 16, 131 (N.D. Cal. 2022)............................................... 11

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) ............................................ 9

*Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 562 (N.D. Cal. 2016).................. 9

*Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2020 WL 1955643 *42 (N.D. Cal. Apr. 23, 2020) ........................................................................................................................... 11

*Stathakos v. Columbia Sportwear Co.*, No. 15-cv-04543-YGR, 2017 WL 1957063 * 10, (N.D. Cal. May 11, 2017) ........................................................................................... 16, 24

*Turcios v. Carma Laboratories, Inc.*, 296 F.R.D. 638, 646 (C.D. Cal. 2014) ............................ 15

*Vizcarra v. Unilever U.S., Inc.*, 339 F.R.D. 530, 547 (N.D. Cal. 2021) ........................ 15, 16, 23

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) ......................................... passim

*Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017–18 (D.C. Cir. 1986) .......................................... 11

*Webb v. Carter's Inc.*, 272 F.R.D. 489, 503 (C.D. 2011) ........................................................... 14

*Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994) ........................................................... 20

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1142-43 (9th Cir. 2012) ................................. 18

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) ............................................... 9

**Statutes**

Ca. Penal Code § 31905 ................................................................................................................. 5

Ca. Penal Code § 31910 ............................................................................................................. 4, 5

Ca. Penal Code § 32010 ................................................................................................................. 4

**Other Authorities**

Title 11, Division 5, Chapter 5, Department of Justice Regulations for Laboratory Certification and Handgun Testing ................................................................................................................ 5

W. Rubenstein, *Newberg on Class Actions* § 4.50 (5th ed. 2012) .............................................. 24

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

There is no pistol more trusted than the Glock pistol. It is the most selected pistol by United States law enforcement agencies and is carried by government agents, soldiers, national armies, elite military groups, and police officers worldwide. U.S. Marshals providing Judicial Security carry Glock pistols. Their popularity has nothing to do with marketing and everything to do with decades of performance and independent vetting. The FBI did not take Glock's word for it when it adopted the Glock pistol as its duty weapon and issued Glock pistols to over 10,000 Special Agents. Glock pistols are subject to extensive independent testing and are often the duty weapon of choice because of their outstanding testing results. After 40 years since the first Glock pistol was sold, an estimated 65% of current US law enforcement agencies have adopted the Glock pistol based on their own independent testing. And Glock pistols are equally ubiquitous internationally. Citizens trust Glock pistols because they recognize the extent to which they are vetted and carried by law enforcement with utmost confidence. Plaintiff asks the Court to ignore these facts to conclude that people naively buy Glock pistols based on Glock's advertisements, and that insufficient federal oversight has allowed Glock to sell unsafe products unchecked.

Everyone (including Plaintiff and his witnesses) agrees that Glock pistols cannot "explode" on their own. According to Plaintiff, there are "certain conditions" of ammunition that must, by chance, act together with the Glock pistol to create a safety hazard. Although Plaintiff claims these "certain conditions" must manifest in a specific way to be a problem, he cannot identify what that way is. Nor can he identify the likelihood of it occurring. His witnesses claim their theory cannot be tested and that the Court should just accept it as true because they say so. Tellingly, neither Plaintiff nor his witnesses has seen a Glock pistol catastrophically fail when using factory-made ammunition at normal pressure. And they have seen tens of thousands of rounds fired through Glock pistols without a single failure.

Plaintiff has not established the Rule 23 factors. Any purported safety hazard based on unpredictable ammunition "conditions" varies amongst the nearly 30 models of Glock pistols in the proposed class, each of which has a unique design and manages different amounts of energy.

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

1  Plaintiff claims to establish commonality and predominance, but cannot meet his burden of proof

2  without ignoring the differences between models, the many modes of catastrophic firearm failure,

3  the unique nature of firearm purchases, and the fundamental physics of how semi-automatic pistols

4  work. And his proposed damages model does not withstand even cursory scrutiny as it is both

5  unreliable and overestimates damages. Likewise, Plaintiff misperceives his burden as the sole

6  named plaintiff in a class spanning more than three decades and hundreds of thousands of people.

7  He ignores unique defenses Glock has against him, including statute of limitations, reliance, and

8  misuse. And his deposition revealed his inadequacy as a representative, showing that he does not

9  understand his claims, lacks conviction, and has ceded control to counsel.

10  The Court should deny with prejudice Plaintiff's motion for class certification.

**STATEMENT OF FACTS**

12  **I.  <u>Glock makes safe, rigorously tested pistols.</u>**

13  Highly over-pressurized ammunition is dangerous in any firearm. Ex. A, Kapelsohn Dec.

14  ¶¶ 152-153; Ex. B, Watkins Dec. ¶ 91. Every firearm is made for a particular caliber of ammunition

15  and is designed to withstand the pressures generated by the combustion reaction that causes it to

16  fire. Ex. B, Watkins Dec. ¶¶ 23-25; Ex. C., Jiranek Dec. ¶¶ 22-24. If ammunition is overcharged

17  and generates too much pressure, it can lead to catastrophic failure and injury. Glock instructs

18  users on safe ammunition use and has also taken design steps to help further mitigate this risk.

19  First, Glock pistols are designed to be robust enough to withstand excessive gas pressure up to two

20  times the SAAMI standard. Ex. B, Watkins Dec. ¶¶ 33-38. Second, Glock pistols are designed

21  with the "safety valve," a passive safety feature. *Id.*; Ex. D, Kroyer Dep. (2018) at 17-18.

22  In modern semi-automatic pistols, the chamber is the part of the barrel where the cartridge

23  is inserted before the pistol is fired. Ex. B, Watkins Dec. ¶¶ 13-17. The feed ramp at the base of

24  the chamber allows cartridges to move from the magazine into the chamber. *Id.* The "safety valve"

25  is a function of the design and geometry of the feed ramp. *Id.* at ¶¶ 35-39.[1] If the pistol is highly

---

[1] As explained by Mr. Watkins, the idea of a safety valve is not unique to Glock, but is a concept applied by various firearm manufacturers to dictate where the shell will fail in the event of over-pressurization. *Id.* ¶ 36. And the Beretta 92A1, previously US Army issued, has an equivalent or longer safety valve when compared to Glock pistols. *Id.* at ¶ 40; Ex. A, Kapelsohn Dec. ¶¶ 71-74.

1    over-pressurized, the safety valve acts as a vent, channeling gas downward, away from the

2    handler's face. *Id.* at ¶¶ 35-39; Ex. C, Jiranek Dec. ¶ 45. The dimensions of the chambers, feed

3    ramps, and safety valves are different for each caliber pistol and, in some cases, are different

4    between models of the same caliber. Ex. E, Kroyer Dep. (2023) at 39:18-40:1; Ex B, Watkins Dec.

5    ¶¶ 105-108; Ex. C, Jiranek Dec. ¶¶ 22-26. This is because every pistol is its own operating system,

6    and every caliber generates different ranges of pressure under normal operating conditions. *Id.* In

7    fact, every firearm has a different operating system, which is why Glock pistols cannot be

8    compared to pistols of other manufacturers. Ex. B, Watkins Dec. ¶ 36.

21        The safety valve is not a secret and Glock has never tried to hide it. Glock sponsors Glock

22    Armorer courses and one of the topics it covers is the safety valve. Ex. J, Guevara Dep. at 227-

23    229. Neither these courses nor the materials Glock provides at them is confidential and nothing

24    stops people who take the course from sharing what they learn. Plaintiff's claim that "the only

25    discussion of the design is in Glock's internal documents" is simply untrue.  Motion for Class

26    Certification ("Motion for Cert.") at 8. Though it is not a secret, Glock does not discuss the safety

27    valve in its Instruction Manual, on its website, or in general marketing/advertising materials.

CASE NO.: 3:20-cv-08807-WHO

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION



 In addition to Glock's own testing, thousands of law enforcement agencies, private security, and military organizations have adopted Glock pistols based on their own independent testing and evaluations ("T&E"). Ex. A, Kapelsohn Dec. ¶¶ 50-53; Ex. G, Kip Miller Dec. These evaluations often involve comparative studies between Glock and other manufacturers' pistols. *Id*. Glock pistols are one of the most independently tested products in the world. *Id*. After rigorous testing, the Dept. of Justice approved Glock pistols for police officers' use pursuant to its standards. *See* Ex. H, NIJ T&E. Glock currently supplies pistols for an estimated more than 65% of law enforcement agencies nationwide, including the FBI and many agencies in California. Ex. A, Kapelsohn Dec. ¶ 48; 50; Ex. B, Watkins Dec. ¶ 27; 32. The FBI's independent testing and evaluation process for the selection of its duty weapon was rigorous. *Id*.; *see* Ex. I, FBI T&E.  It selected Glock pistols in 1997 and countless other law enforcement agencies followed suit after performing their own T&E. Ex. A, Kapelsohn Dec. ¶ 50.

 The State of California also requires firearms to be tested and reviewed by an independent laboratory that designates them "not unsafe" before authorizing their sale. *See* Ca. Penal Code § 32010; 31910. The California Department of Justice ("CDOJ") testing includes discharging three pistols of each submitted model 600 times with no more than 6 "malfunctions." Ex. B, Watkins

---

[2] A proof round of ammunition contains 1.3 times SAAMI pressure and is customarily used by firearm manufacturers to test a firearm's functionality and durability. Ex. B, Watkins Dec.¶ 26

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

Dec.¶ 31; Ca. Penal Code § 31905; 31910.[3] ██████████████████████████

████████████████████████████████████████████████████████████████

*Id*. In fact, the CDOJ even selected Glock pistols as its duty weapon. So did the Los Angeles Police Department and the Oakland Police Department, Plaintiff's former employer. *Id*.; Ex. A, Kapelsohn Dec. ¶ 50; Ex. K, National Agency List; Ex. L, Cali. LE Agency List.

## II.    Plaintiff misrepresents the evidence.

Plaintiff claims Glock pistols are defective because they will catastrophically fail "under certain conditions." Motion for Cert. at 2. But any firearm could fail under "certain conditions." Ex. A, Kapelsohn Dec. ¶¶ 152-153; 162; 179; 186; Ex. B, Watkins Dec. ¶ 91. Over-pressurized or defective ammunition, barrel obstruction, out-of-battery discharge, and poor maintenance or misuse will compromise a firearm's safety and reliability. *Id*. But these "conditions" are beyond a manufacturer's control. Their possibility does not make Glock pistols defective.

Plaintiff relies on an incomplete and misleading recitation of "facts" to imply Glock conceded a product defect ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████ The actual cause of failure cannot be determined without independent analysis and investigation. Ex. B, Watkins Dep. ¶ 91 Ex. J, Guevara Dep. at 76:22-77:9; 92:20-93:3; Ex. O, Nixon Dep. at 58:15-63:2; Ex. M, Bosch Dep. (2024) at 213:8-11.

████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

---

[3] California's testing requirements indicate that "standard ammunition" must be used for the independent testing. California regulations define "standard ammunition" as "commercially produced factory loaded ammunition which is available for purchase at consumer-level retail outlets." *See* Title 11, Division 5, Chapter 5, Department of Justice Regulations for Laboratory Certification and Handgun Testing. Glock similarly recommends that its customers only use "high quality commercially manufactured ammunition." Plaintiff is critical of this language, but it is a standard and well-understood recommendation in the firearm industry.

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10



11    Unable to link any event to the supposed defect, Plaintiff argues that there are "so many

12 claims" of catastrophic failure that Glock pistols must be defective. But he presents no evidence

13 that they have a higher rate of failure than others, much less that his claimed defect causes the

14 failures. Trying to close the gap, Plaintiff offers a misleading chart titled "First Hand Kaboom

15 Accounts." But each incident on the chart is an excessive pressure event. And even so, they reflect

16 a small number relative to the countless millions of rounds fired through Glock pistols daily. Ex.

17 B, Watkins Dec. ¶ 30.

18    Plaintiff also assumes that every customer service order concerns a failure caused by the

19 alleged defect. But there are many potential causes for catastrophic firearm failures, and every

20 incident requires independent evaluation. Ex. A, Kapelsohn Dec. ¶ 162.

21
22
23

24    Even the specific incident Plaintiff relies on undermines his claim and emphasizes that

25 independent evaluation is essential. Plaintiff states that Black Hills Ammunition concluded that

26 Gary Brown's pistol failure "had nothing to do with over-pressured ammunition." Motion for Cert.

27 _____

28

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

at 5. But documents show Black Hills Ammunition's real position: that it denied manufacturing the ammunition and, after investigation, concluded the failure was caused by over-pressurized, reloaded ammunition bought at a gun show. Ex. B, Watkins Dec. ¶ 85; Ex. C, Jiranek Dec. ¶ 54.[5]

Setting aside Plaintiff's factual misrepresentations, he is left with only the unproven hypothesis of his proposed experts. But the opinions they offer fail to meet the requirements of FRE 702 and should be struck. *See* Motions to Strike Declarations and Testimony David Bosch and John Nixon, filed concurrently with this Motion.

### III.    Plaintiff decided to sue Glock after his counsel told him his pistols were defective.

Plaintiff Steven Johnson is a former Oakland Police officer who owns two Glock pistols: a Model G36 and a Model G30SF. He bought his Model G36 used (previously owned by law enforcement) from an online gun seller after searching online for "Glock subcompact" and shooting a friend's Glock pistol one time. Ex. Q, Plaintiff's Dep. at 142:17-18; 148:22-151:1; 155:18-20. According to Plaintiff, he "did not spend a lot of time investigating," and may have seen an advertisement for Glock in a magazine, though he does not remember anything about it. *Id.* 147-149. He fired more than 100 rounds through his Model G36, used it to qualify for his pistol permit, went shooting with it at the shooting range, relied on it for self-protection, and trusted it to protect his family. *Id.* at 153-154. Plaintiff never experienced any problems with the pistol and enjoyed using it. *Id.* at 153-154; 158:6-13.

Pleased with his purchase, Plaintiff decided to buy another Glock pistol a year later, but this time wanted one that held more ammunition. Ex. Q, Plaintiff's Dep. at 157:2-158:5. He asked a friend for a recommendation and, based on that recommendation, bought his Model G30SF. *Id.* at 159:2-160:10. He modified this pistol using aftermarket parts. *Id.* at 204-205; Ex. A, Kapelsohn Dec. ¶¶ 89-93; Ex. B, Watkins Dec. ¶¶ 92. He used it extensively, discharging more rounds than he could count without any problems. Ex. Q, Plaintiff's Dep. at 162:6-12. Testing in this case revealed that Plaintiff failed to properly maintain his Model G30SF, allowing it to accumulate

---

[5] *See also* Ex. P for documents omitted by Plaintiff related to the Gary Brown claim that were produced by Black Hills Ammunition, as referenced by Mr. Watkins and Mr. Jiranek.

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

excessive amounts of lead build-up in the barrel. Ex. A, Kapelsohn Dec. ¶¶ 94-114; Ex. B, Watkins Dec. ¶¶ 93-100.

One day, Plaintiff was on a website devoted to recruiting plaintiffs to class actions[6] when he saw his attorneys' advertisement inviting people to sue Glock. Ex. Q, Plaintiff's Dep. at 293-294. Despite being happy with his Glock pistols, Plaintiff submitted an online form and became the sole named plaintiff in this case. *Id.* at 303. According to Plaintiff, though he knows not to believe everything he sees on the Internet, his only effort to verify his counsel's advertisement was a single Internet search where he claims to have seen an exploded Glock pistol. *Id.* at 46:25-47:9; 186:17-187:19.

Since filing this lawsuit, Plaintiff continued to have limited involvement in it. Though he changed counsel before and after his deposition, he does not know how many attorneys he has and says he did not choose any of them. *Id.* at 34:9-14. He did not help respond to discovery other than reading responses drafted by counsel and signing them without making changes. *Id.* at 39:8-12. And, at the time of his deposition, Plaintiff believed he did not have any experts and was unaware that his retained experts had fired his pistols hundreds of times (without issue). *Id.* at 73:15-24.

Though he intends to represent an extensive class, Plaintiff does not know which Glock model pistols he is alleging are defective other than his own. Ex. Q, Plaintiff's Dep. at 135:20-136:9. He has never owned any of the other Glock pistol models or calibers he calls defective and has never even heard of the .45 GAP. *Id.* at 312:5-13; 88:17-20. In fact, unable to describe the alleged defect, he confused it with the .45 GAP models. *Id.* at 87:16-24. When asked if it was possible that his defect claim was wrong, he agreed that he had "no idea." *Id.* at 323:5-7.

**ARGUMENT**

## I.    Legal Standard

Plaintiff has the burden to prove by a preponderance of evidence the elements of Rule 23 and the Court must conduct a "rigorous analysis" of the evidence before certifying a class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). It cannot "accept at face value a

---

[6] He had been a class member in approximately 4-5 other unrelated class action lawsuits. *Id.*. at 318:2-319:10

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

plaintiff's theory of the case," and its analysis will often "entail some overlap with the merits of the plaintiff's underlying claim." *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 562 (N.D. Cal. 2016). This often means "judg[ing] the persuasiveness of the evidence presented." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). Though the evidence need not be strictly admissible, *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018), evidence cannot be "cobble[d] together" or "riddled with scientific and methodological flaws." *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 986–87 (9th Cir. 2020).  When class certification depends on expert testimony, the Court "'scrutinizes the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence.'" *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2021 WL 1250378 *3 (N.D. Cal. Apr. 5, 2021).

## II.    Plaintiff cannot establish ascertainability, commonality, adequacy, or typicality.

Rule 23(a) requires proof that a proposed class is sufficiently numerous and presents common questions of law or fact, that the class representative's claims are typical, and that he will fairly and adequately protect the class's interests. The class representative must also demonstrate that the proposed class is definite enough for the court to determine whether a person is a class member without assessing the merits of each member's claims. *See Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011); *Daniel F. v. Blue Shield of California*, 305 F.R.D. 115, 122 (N.D. Cal. 2014). Plaintiff has not met the Rule 23(a) criteria.

### A.  Plaintiff has not identified an ascertainable class.

Overbroad classes are not ascertainable and should not be certified. *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). Plaintiff asks to certify a class of anyone "who purchased" any of the nearly 30 models of Glock pistols "in the State of California." Motion for Cert. at 1. This class of hundreds of thousands is impossible to determine and is divorced from the crux of the TAC: ***economic loss***.[7] It cannot be narrowed without inquiry into individual merits. *Daniel F.*, 305 F.R.D. at 122.

---

[7] Plaintiff has apparently abandoned his damages claim for purported brass casings that can no longer be reused or reloaded, (TAC ¶¶24-25), recognizing that this is not a viable claim for damages under any theory and certainly not a viable claim for class action adjudication.

Defining the class as "purchasers," Plaintiff includes people who have not experienced any economic loss. It includes those who bought, but later sold their pistols for full value, as well as those whose pistols were lost, stolen, or destroyed for reasons unrelated to the alleged defect. Even limiting the class to current owners who bought their pistols, the class is still not ascertainable. Presumably, Plaintiff intends to rely on records of handgun transfers from the CDOJ, but these records do not provide enough information because every transfer must be reported with a dealer's record of sale, regardless of price paid. Documented ownership of a pistol is not a fair proxy for the market price purchase of one. Because a firearm can easily last beyond the expected lifespan of its owner, many registered firearms are not sold for full value between family and friends, but are distributed as gifts and inheritances. Additionally, there are more than 500 law enforcement agencies in California and countless other private security firms issuing Glock pistols, many of which pay for or reimburse their employees' purchase of Glock pistols. Ex. A, Kapelsohn Dec. ¶¶ 50-53; Ex. G, Miller Dec. These law enforcement and private security officers cannot have economic loss.

The class is further overbroad because owning a Glock pistol is different from having a claim against Glock. This case is about alleged misrepresentations or omissions, yet this is not part of the class definition. The class includes people who never saw, sought, or relied on information from Glock. Many buyers rely on licensed sellers, the CDOJ's handgun roster, and endorsements or requirements of law enforcement agencies to make their choices. Ex. A, Kapelsohn Dec. ¶¶ 50-69; 180; Ex. G, Miller Dec.. The proposed class also includes those who knew that any pistol could fail due to defective or overloaded ammunition and bought a Glock pistol anyway. And it includes people who learned of specific allegations against Glock and didn't care—choosing to buy and keep Glock pistols, and not sue Glock within the statute of limitations. Ex. A, Kapelsohn Dec. at ¶¶ 79-88. Plaintiff's own proposed expert, John Nixon, falls into this category as he admitted knowing about the claimed defect for decades but continued to purchase, use, and trust Glock pistols. Ex. O, Nixon Dep. at 103-105; 212; 297.

Additionally, Plaintiff's Motion proposes a class broader than the one set forth in the TAC. ECF 60. After years of litigation, Plaintiff included in his Motion three additional calibers of Glock

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   pistols—including the most popular 9mm—without requesting to amend the TAC. A proposed

2   class broader than the one identified in the complaint cannot be certified. *Bee, Denning, Inc. v.*

3   *Capital Alliance Group*, 310 F.R.D. 614, 621 (2015) ("The Court is bound to class definitions

4   provided in the complaint and, absent an amended complaint, will not consider certification

5   beyond it").

6          **B.  Plaintiff has not established commonality.**

7          Commonality exists when all class members' claims "depend upon at least one common

8   contention, the truth or falsity of which 'will resolve an issue that is central to the validity' of each

9   one of the class members' claims in one stroke." *Ehret v. Uber Tech., Inc.*, 148 F. Supp.3d 884

10  (N.D. Cal. 2015) (quoting *Dukes*, 546 U.S. at 349). When common questions will not yield

11  "common answers," because the answers "might depend on facts unique to each claimant,

12  necessitating mini-trials, beyond mere damages calculation," there is no commonality. *Robbins v.*

13  *Phillips 66 Co.*, 343 F.R.D. 16, 131 (N.D. Cal. 2022). In a single paragraph, Plaintiff identifies

14  what he calls six common questions and declares that he has established commonality. He has not.

15                **1.  There is no common "defect."**

16         When a class involves an allegation of a product defect, but the proposed class includes

17  models with different designs and different design characteristics, the existence of a defect is not

18  a question capable of common answer. *See Johnson v. Harley-Davidson Motor Co. Grp. LLC*, 285

19  F.R.D. 573, 578–79 (E.D. Cal. 2012) (concluding that when class included 130 distinct

20  configurations, there was "no common method of proof to show whether there is a design defect");

21  *In re Hitachi Television Optical Block Cases*, No. 08cv1746 DMS (NLS) 2011 WL 4499036 *4–

22  *5 (S.D. Cal. Sept. 27, 2011) ("If there are differences in the product design, or differences in the

23  product parts that make up the design . . . the standard is not met"); *see also Walsh v. Ford Motor*

24  *Co.*, 807 F.2d 1000, 1017–18 (D.C. Cir. 1986) (denying certification when class included 20

25  different transmissions). *Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2020 WL 1955643

26  *42 (N.D. Cal. Apr. 23, 2020) (finding no commonality when relevant components differed).

27         Although Plaintiff declares that approximately 30 models of Glock pistols have a common

28  defect, the proposed class pistols cannot be addressed in one sweep. The design of each pistol is

different, and their feed ramps and chambers have different geometries and tolerances. Ex. B, Watkins Dec. ¶¶ 23-26; 105-108; Ex. C, Jiranek Dec. ¶¶ 22-26. Plaintiff has not met his burden of showing that each model is equally or even similarly prone to failure or that each pistol within each model line presents the same risk. His retained witnesses have done no testing, calculations, or work to account for the differences. *See* Motions to Strike Bosch and Nixon.

This omission is telling. Whether, when, or how pistol failures happen depends on factors that cannot be generalized. Every caliber pistol has different performance criteria with respect to pressures generated by the discharge of ammunition. Ex. B, Watkins Dec. ¶¶ 23-26; 105-108; Ex. C, Jiranek Dec. ¶¶ 22-26. SAAMI sets forth the Maximum Average Pressures ("MAP") for each caliber. *Id*. Larger calibers have higher pressure tolerances. The proposed class includes pistols designed to shoot .380 and .45 cartridges (among the lowest MAP) as well as 10mm cartridges (among the highest), along with those in between. *Id*. Plaintiff ignores that the proposed class pistols have different designs to manage varying pressure ranges, and he incorrectly assumes that proof of a supposed propensity toward failure would be the same across all calibers. Plaintiff will argue the safety valve "idea" is the same, and so there is no difference. He is wrong. The concept may be identical, but its application necessarily varies for each design.

Indeed, Plaintiff's retained witness, Bosch, acknowledges that the length and degree of the safety valve varies amongst the different calibers and models of Glock pistols. Ex. M, Bosch Dep. at 225:15-20. Thus, the proposed class pistols must have different potentials for failure because, according to Bosch, "the more area that you fail to support, the higher probability that you'll have case failures." *Id*. at 110:25-111:1. In fact, Bosch previously concluded in a prior case that Glock 9mm pistols have a "Very Small Unsupported Case Wall Area" compared to the Glock .45 models, and that the plaintiff in the other case would not have been injured if the pistol he was using had a feed ramp design like Glock 9mm pistols. Ex. B, Watkins Dec. ¶ 78; Ex. R, Report Comparison. But now Bosch concludes Glock 9mm pistols are defective. He cannot avoid the contradiction.

Plaintiff's defect claim also depends on failures of overloaded ammunition—mainly reloaded and hand-loaded ammunition that Glock expressly warns against using. Ex. A, Kapelsohn ¶¶ 135-152. But again, Plaintiff has no basis to suggest the same risk is present across the class.

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

1   Plaintiff offers no evidence that overloading occurs in any predictable or uniform way that would

2   allow jurors to generalize across calibers or even within a caliber class. Plaintiff also neglects to

3   consider other factors that contribute to pistol failures. Ex. A, Kapelsohn Dec. ¶¶ 162-163; Ex. B,

4   Watkins Dec. ¶ 91. He does not address how maintenance affects performance. For example, a

5   Glock pistol may be able to safely manage the energy from modestly overloaded ammunition, but

6   the residue inside an uncleaned pistol—like Plaintiff's Model G30SF—may increase the pressure

7   and severity of a failure. Ex. A, Kapelsohn Dec. ¶¶ 94-96; Ex. B, Watkins Dec. ¶¶ 93-100. He also

8   does not address individual use patterns; users who are lax about maintenance and use reloaded

9   ammunition will be at a much greater risk of failure than those who maintain their firearms

10  appropriately and shoot only new, high-quality ammunition.

### 2. Glock's knowledge is not a common question.

12      Plaintiff alleges that Glock's "knowledge about" the alleged defect is a common question.

13  But he does not explain what he means. Glock has always known that improper ammunition or

14  improper maintenance can cause over pressurization leading to a catastrophic failure.

15  ████████████████████████████████████████████████████████████████████

16  ██████████████████████████ This is not a question: Glock designed it and has always known it is

17  there. To the extent Plaintiff specifically claims Glock had knowledge that its pistols are defective

18  and create a safety hazard, Glock cannot know what is objectively false.

### 3. Alleged concealment is not a common question.

20      Plaintiff contends that "Glock's concealment of the defect" forms a third common question.

21  Again, he does not explain how. ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████. But

24  it does tell armorers about the design and its purpose, and they are free to disclose it to anyone.

25  There is no common "question" to resolve here. The only question remaining is not a common

26  one: which consumers knew about the unsupported chamber claim before making their purchase?

27  Ex. A, Kapelsohn Dec. ¶¶ 79-88 (explaining this allegation was made public 25 years ago but has

28  been generally rejected by law enforcement agencies and the firearm community); *See also* Ex. O,

1  Nixon Dep. at 103-105; 212; 297 (showing Nixon knew about decades old allegations but
2  continued to purchase, use, and rely on Glock pistols for over 20 years).

3              **4.   Reliance is not a common question.**

4         Next, Plaintiff alleges that whether "reasonable consumers" would have been deceived or
5  found that omitted information was material is a common question. He offers no evidence of who
6  a "reasonable consumer" of a Glock pistol is, nor any suggesting that this question could be
7  adjudicated on a class-wide basis. If a manufacturer "has failed to disclose information that would
8  have been material to a reasonable person who purchased the defendant's product, [it] gives rise
9  to a rebuttable inference of reliance as to the class." *Edwards v. Ford Motor Co.*, 603 Fed.Appx.
10  538, 541 (9th Cir. 2015). But when "[e]xpert evidence shows that materiality and reliance varies
11  from consumer to consumer," reliance is "not an issue subject to common proof." *Algarin v.*
12  *Maybelline, LLC*, 300 F.R.D. 444, 457 (S.D. Cal. 2014); *Johnson*, 285 F.R.D. at 581 (concluding
13  materiality and reliance not subject to common proof when defendant presented evidence that this
14  would be individualized question); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 503 (C.D. 2011) (same).

15         As outlined in the declarations of Mr. Kapelsohn and Dr. Peterson (and confirmed by
16  Plaintiff and his retained witnesses), pistol buyers are not uniform and rely on different sources of
17  information when choosing a pistol. But none will rely exclusively on information from Glock.
18  Ex. A, Kapelsohn Dec. ¶¶ 50-69. All handgun sales in California must be transferred by licensed
19  firearm sellers. Therefore, even the most uninformed purchaser can buy a Glock pistol only with
20  help from an educated seller, who can only sell pistols approved as "not unsafe" by the CDOJ.
21  Pen. Cod. §§ 32000–32015. Further, much of the firearm-buying population does more than visit
22  a firearm shop; they attend gun shows; join gun clubs; participate in online fora; read magazines
23  and websites written by and for firearm users; and socialize with other firearm enthusiasts. Ex. A,
24  Kapelsohn Dec. ¶¶ 50-69. And first-time pistol purchasers are primarily influenced by what
25  salespeople tell them. *Id*. Still many Glock pistol buyers choose them because they are what most
26  law enforcement agencies independently test and select. *Id*. And law enforcement agencies do not
27  rely on Glock at all because they conduct their own testing and evaluation. *Id*.; Ex. G, Miller Dec.
28

CASE NO.: 3:20-cv-08807-WHO

**DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S**
**MOTION FOR CLASS CERTIFICATION**

1   Additionally, Glock armorers and dealers, who are knowledgeable about Glock pistols and learned
2   about the safety valve, buy Glock pistols too. *Id.*

3          Moreover, most firearm users are specifically aware that any firearm can catastrophically
4   fail for any number of reasons. Ex. A, Kapelsohn Dec.¶¶ 162-163; Ex. B, Watkins Dec. ¶ 91. And
5   many Glock pistol buyers are ***specifically*** aware of allegations about the alleged "unsupported
6   chamber" for decades, yet choose to buy them anyway. Ex. A, Kapelsohn Dec. ¶¶ 79-88.; Ex. O,
7   Nixon Dep. at 103-105; 297. The TAC, for example, cites several online sources that Plaintiff
8   claims refer to the alleged "unsupported chamber." ECF 15, TAC ¶¶ 30-53. Any number of
9   consumers could have seen this content before purchasing their Glock pistols. *See In re MyFord*
10  *Touch Consumer Litig.*, 2016 WL 6873453 (N.D. Cal. Nov. 22, 2016) (declining to reconsider
11  denial of class certification when there was widespread information about alleged defect, showing
12  that some customers would be aware of it); *Turcios v. Carma Laboratories, Inc.*, 296 F.R.D. 638,
13  646 (C.D. Cal. 2014); *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 98-99 (2009) (finding
14  individual issues predominated when manufacturer presented evidence that some physicians
15  would prescribe and patients would have taken drug despite alleged increased risk of death);
16  *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co.,*
17  ___F.Supp.3d___ *23 (C.D. Cal. 2023) (concluding that whether class members would take
18  medication despite risk of cancer was not common question).

19         To the extent Plaintiff's claim relies on supposedly false or misleading express statements,
20  he has presented no evidence that this is a common question either. The Court outlined a narrow
21  path for Plaintiff to bring a false advertising claim: by showing that consumers were misled by
22  specifically identified "safety-based statements." ECF 73, Order on MTD. "Even though a claim
23  under the UCL and FAL turns on whether a 'reasonable consumer' is likely to be deceived, the
24  question of likely deception does not automatically translate into a class-wide question." *Bailey v.*
25  *Rite Aid Corp.*, 338 F.R.D. 390, 399–400 (N.D. Cal. 2021). A plaintiff must define the class to
26  include only those who experienced misleading statements. *Mazza v. Am. Honda Motor Co.*, 666
27  F.3d 581, 595 (9th Cir. 2012). And he must present evidence that the class is likely to be deceived.
28  *Vizcarra v. Unilever U.S., Inc.*, 339 F.R.D. 530, 547 (N.D. Cal. 2021) ("the reasonable consumer

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

standard does not necessarily mean that evidence is not required to establish likelihood of deception"). When a class is based on the supposedly misleading inclusion of words that lack a fixed meaning, plaintiff must present evidence that would show that "consumers understood the [challenged language] in the manner alleged in the complaint." *Id*. at 547 (N.D. Cal. 2021); *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726 *16–*17 (N.D. Cal. June 13, 2014). Plaintiff has not presented evidence that the class was subject to the same communications or that any supposedly misleading statements were understood in the manner alleged. Thus, he has not met his burden of showing a common question either as to an omission or an allegedly misleading statement.

### 5. Plaintiff's recitation of consumer protection laws does not create a common question.

Plaintiff's fifth supposed "common question" is duplicative of his first four. He states that "whether Glock's acts and omissions violated the UCL, FAL, and CLRA" are common questions. (Pl. Mot. at 13.) But the elements he claims are subject to common proof are: the existence of an alleged defect, Glock's knowledge of it, alleged concealment, and reliance. Motion for Cert. at 17–21. In other words, the fifth "common question" is just the first four called by another name.

### 6. Alleged damages are not a common question.

Finally, Plaintiff contends that the amount of restitution available is a common question, claiming without significant case-specific analysis that complete restitution is available. Motion for Cert. at 13, 22. He bases this on his self-serving claim that he would not have bought his pistol if he had known of the alleged defect. But Plaintiff is required to show that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). And his damages model must be consistent with his theory of liability. *Id*. at 35. "Under California law, a full refund may be available as a means for restitution only when plaintiffs prove the product had *no* value to them." *Stathakos v. Columbia Sportwear Co.*, No. 15-cv-04543-YGR, 2017 WL 1957063 * 10, (N.D. Cal. May 11, 2017). Restitution cannot be determined through common proof when not all class members paid out of pocket for a product. *Lucas v. Breg, Inc.*, 212 F.Supp.3d 950, 970 (S.D. Cal. 2016).

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

Plaintiff's restitution claim is doomed by his overbroad class definition. The class of "purchasers" includes law enforcement officers, government agents, and private security workers whose purchases were reimbursed by employers. It also includes those who have already received full monetary compensation for pistols they sold. The breadth and vagueness of the proposed class also prohibits common resolution among those who bought pistols with their own funds and still have them. It includes enthusiasts who have fired hundreds of thousands of rounds over decades; people who have successfully used their pistols in self-defense; who—like Plaintiff—relied on their pistols to maintain firearms certifications and protect their family; and who keep a pistol for deterrence but hope they never need to fire it. There is no evidence that the identified Glock pistols have had *no* value either to Plaintiff or any other member of the purported class. Given the unbounded time span and variety of use patterns, no evidence generalizes across a class to show the value of Glock pistols to their owners. Ex. A, Kapelsohn Dec. ¶¶ 54-69; 181-183.

### C. Plaintiff's claims are not typical of the class.

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *In re JUUL Labs, Inc. Marketing Sales Practices & Products Liability Litig.*, 609 F.Supp.3d 942, 961 (N.D. Cal. 2022) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "A plaintiff may not be typical if she is subject to unique defenses which threaten to become the focus of the litigation." *Id.* Typicality findings often turn on "whether a proposed named plaintiff has some unique injury or is subject to a unique defense that the other class members do not have or are not subject to that would make a particular proposed plaintiff atypical and an inappropriate class representative." *Id.* "[C]ertification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon*, 976 F.2d at 508.

### 1. Plaintiff's misuse of his Glock pistol subjects him to unique defenses.

Plaintiff's claims require him to establish that Glock had a duty to disclose the alleged defect. For a duty to disclose to arise, Plaintiff must prove there is a causal connection between the claimed defect and a safety hazard. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1142-

43 (9th Cir. 2012). Yet, the hazard Plaintiff alleges has many potential causes. Ex. A, Kapelsohn Dec. ¶ 162; Ex. B, Watkins Dec. ¶ 91; Ex. O, Nixon Dep. at 58:15-61:10. One is allowing excessive amounts of lead to build-up in a pistol's barrel, elevating pressures when ammunition is discharged. Ex. A, Kapelsohn Dec. ¶¶ 94-96; Ex. B, Watkins Dec. ¶¶ 93-100. The barrel of Plaintiff's G30SF pistol contained lead build-up far beyond what would be expected from ordinary use, making it uniquely susceptible to a catastrophic failure. *Id*.

Plaintiff can never establish causation with respect to his G30SF pistol because the potential for it to experience a catastrophic failure was increased by the excessive lead in the barrel. Few, if any, other members of the proposed class will have too much lead build-up in the barrel of their pistol, and Plaintiff has not met his burden to establish this is typical conduct of Glock pistol owners. This is a unique defense applicable only to Plaintiff and it will be a major focus at trial.

### 2. Statute of limitations issues defeat typicality.

Though Plaintiff's CLRA, FAL, and fraudulent omission claims are facially barred by the statute of limitations, he argues that his reliance on tolling doctrines does not destroy typicality because there was alleged class wide concealment. But he disregards the putative plaintiffs who are not subject to a statute of limitations defense at all.

"A statute of limitations defense may defeat typicality where a considerable portion of class members do not face the defense." *Beaver v. Omni Hotels Mgmt. Corp.*, No. 20-CV-00191-AJB-DEB, 2023 WL 6120685, at *6 (S.D. Cal. Sept. 18, 2023). In *Quezada v. Loan Ctr. of California, Inc.*, No. CIV. 2:0800177WBSKJM, 2009 WL 5113506, at *7 (E.D. Cal. Dec. 18, 2009), the court held that a named plaintiff's claims were not typical because "there may be a broad swath of the class that has no statute of limitations issues, but would be bound by an order of this court if the court finds plaintiff's UCL claim time-barred. . ." Here, documents received from the CDOJ show that nearly 200,000 potential plaintiffs would not be subject to statute of limitations defense. *See* Plaintiff's Ex. MM. This "broad swath" of the class would be prejudiced by Plaintiff's burden to establish tolling because they would be bound by an order against him.

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

### 3. Plaintiff's claims are not typical of those putative class members who own other caliber pistols.

Further, people do not buy Glock pistols for uniform reasons. Ex. A, Kapelsohn Dec. ¶¶ 50-69. Ex. S, Peterson Dec. ¶¶ 54-59; Ex. O, Nixon Dep. at 36-37. Glock designs pistols for different purposes and users. The Glock Buyer's Guide, for example, has a chart showing how different Glock pistols suit a particular need. Ex. S, Peterson Dec. ¶¶ 54-59. Plaintiff testified that he sought compact, carry-size pistols with different magazine capacities. Ex. Q, Plaintiff's Dep. at 148:22-151:1. Other buyers value other characteristics, which dictates the value they assign to each attribute and the information they find relevant. Ex. S, Peterson Dec. ¶¶ 54-59. Defenses with respect to Plaintiff cannot be applied to persons who purchased other models of Glock pistols.

### 4. Plaintiff is subject to unique defenses with respect to reliance.

To prove a claim for fraudulent omission, a plaintiff must prove: (1) he "would have been aware of the omitted information had it been disclosed and (2) he would have behaved differently." *Hamilton v. TBC Corp.*, 328 F.R.D. 359, 377 (C.D. Cal. 2018). Plaintiff admits that he did not rely on or even see advertisements before buying his Model G30SF. Ex. Q, Pltf's Dep. at 157:2-160:10. He just wanted a sub-compact pistol that held more ammunition. *Id*. He has identified no Glock materials that he *ever* saw before buying a Glock. Thus, whether Plaintiff would have been "aware of the omitted material had it been disclosed is subject to serious dispute, not typical of defenses which could be raised against other members of the proposed class." *Hamilton*, 328 at 378; *see also Hanon*, 976 at 508.

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

**D.  Plaintiff cannot establish that he is an adequate class representative.**

A class representative must "fairly and adequately protect the interests of the class." *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004). Two questions generally determine adequacy of class representation: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* Although the knowledge threshold is low, a class representative who is "startlingly unfamiliar with the case" and "completely relie[s] on counsel to direct the litigation," is not adequate. *Id.*; *Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994); *Hoexter v. Simmons*, 140 F.R.D. 416, 422 (D. Ariz. 1991).

Plaintiff is "startlingly unfamiliar" with his case and has ceded litigation to counsel. This case began with attorneys who have a defect theory looking for a plaintiff. Ex. Q, Plaintiff's Dep. at 293:15-18. Plaintiff liked his Glock pistols and had no problem with them until he saw his counsel's advertisements telling him they were defective. He didn't pick his lawyers, doesn't know how many of them there are, and doesn't even know whether he has experts to assist him.

After having been convinced by his attorney's advertisement and a single Internet search that he owns a defective product, Plaintiff continues to know little about his claims or case. When asked about the .45 GAP, a model of pistol he alleges is defective, Plaintiff did not know what it was and thought that it was a description of his defect theory. *Id.* at 87:16-24. Through counsel, he espouses grave concerns about the alleged defect. But in reality, he is agnostic, conceding that it may not exist. *Id.* at 323:5-7. And despite alleging that he is entitled to money damages, he testified that he does not know if he is. *Id.* at 320:17-20. Likewise, Plaintiff has no skin in the game and is unwilling to pay any costs should a jury find for Glock. *Id.* at 53:12-15.

**III.  Certification is not appropriate based on Rule 23(b)(2).**

Plaintiff seeks certification based on Rule 23(b)(2), which applies "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. Rule 23(b)(2) does not apply for two reasons. First, it does not allow certification when the plaintiff seeks monetary relief that "is not incidental to the injunctive or declaratory relief." *Id.* Plaintiff does not address *Dukes*, but his primary claim seeks monetary remedies that

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

are not incidental to injunctive or declaratory relief. Second, even if Plaintiff could evade *Dukes*, he has not explained how a prospective injunction "barring the sale" of identified pistols would provide relief to any proposed class member. Motion for Cert. at 24.

**IV.    Certification is not appropriate under Rule 23(b)(3) because common issues do not predominate and the class action is not a superior method of adjudication.**

**A. None of Plaintiff's claimed common questions dominate this lawsuit.**

Rule 23(b)(3) demands more than commonality. *Comcast v. Behrend*, 569 U.S. 27, 34 (2013). The Court must evaluate whether alleged common questions create a cohesive class. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). It considers the importance of the questions at issue, and when critical issues require individualized analysis, common questions do not predominate. *Lucas*, 212 F.Supp.3d 950, 969 (C.D. Cal. 2016). A court cannot certify a class "on the premise that [the defendant] will not be entitled to litigate its . . . defenses to individual claims." *Dukes*, 564 U.S. at 367. It "characterizes the issues in a case as common or individual, and then carefully scrutinizes the relationship between them." *Lucas*, 212 F.Supp.3d at 968. An issue is common if "the same evidence will suffice for each member," but is individual if each member must present evidence, which will vary. *Id*. at 969 (quoting W. Rubenstein, *Newberg on Class Actions* § 4.50 (5th ed. 2012).)

Plaintiff devotes his predominance argument to trying to establish commonality—not predominance. After spending three pages reciting general principles of reliance in cases involving consumer protection statutes, Plaintiff offers two brief paragraphs purporting to address his claims. But he fails to prove that any issue is common, let alone that common issues predominate.

**1.  There are no predominant common questions about Glock's design.**

First, Plaintiff asserts "common evidence" will show "proof of Glock's design." Motion for Cert at 19. He cites nothing in the record for this claim. And, as already outlined, it is untrue.

Whether the class pistols have a defect is the single most important issue, and the one on which all other claims rely. And it cannot be resolved in the abstract through common proof because there is no way to generalize across the class products or class members. Plaintiff does not contend that the safety valve increases the risk or severity of pistol failures uniformly. He

characterizes it as "erratic[]." Motion for Cert. at 1. That is because a pistol failure results from a confluence of independently occurring variables for which Plaintiff and his witnesses have not tried to control. Ex. A, Kapelsohn Dec. ¶¶ 162-165; Ex. B, Watkins Dec. ¶ 91; *See* Motions to Strike Bosch and Nixon. Even Plaintiff's proposed expert agrees that independent investigation is necessary to determine the cause of a firearm failure. Ex. O, Nixon Dep. at 231:18-23.

It follows that the possibility of failure is a nuanced and individual inquiry. Ex. A, Kapelsohn Dec. ¶¶ 162-165; Ex. B, Watkins Dec. ¶ 91. The risk of failure and its consequences will vary across the class. Glock has a right to present individualized evidence about its products in its defense. *See Dukes*, 564 U.S. at 367. Plaintiff's bare assertion that a design feature corresponds to an unspecified and unpredictable increased risk of failure is not a predominant common question. Bosch admits (and Glock's experts establish) that the risk of failure varies amongst the proposed class of pistols. Ex. M, Bosch Dep. at 225:15-20; 110:25-111:1. And there is no way to generalize the alleged risk to all class members.

To meet their burden of proof, all individual plaintiffs would need to show that their risks increased enough to create a "hazard" that would trigger duties on Glock's part. And Glock would have a right to present nuanced and individualized evidence to rebut Plaintiff's unspecified claims.

### 2. Glock's knowledge of its own design is not a predominant common question.

Next, Plaintiff contends that common proof will show that Glock knew about its "intentional" safety valve and states that there will be common proof that "[a]t all times" Glock knew its pistols "could explode if exposed to certain rounds of ammunition routinely put in the stream of commerce by quality manufacturers." Motion for Cert. at 20. It is unclear what Plaintiff means by either allegation. Glock designs its products and knows about its safety valve. Likewise, Glock agrees that it has always been aware of principles of physics—i.e., that defective and over-pressurized ammunition exists and may contribute to a combustion reaction that could overwhelm a Glock pistol or any other firearm. This is not an issue that will dominate litigation.

/ / /

/ / /

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

### 3. Individual issues dominate Plaintiff's claims about Glock's representations or omissions.

Citing scant evidence, Plaintiff broadly claims that Glock made false or misleading representations and fraudulent omissions, and that the evidence supporting these claims would be common across the class. He begins by asserting that Glock "made false and misleading representations relating to the safety of its guns in its manuals and otherwise." Motion for Cert. at 20. But he cites only the manual that came with his own pistol and does not explain what about it he believes is misleading. He neither shows that all class members would have received the same information, nor presents evidence that others could have been misled by unspecified "false and misleading representations." Similarly, with respect to his fraudulent omissions claim, Plaintiff recites the elements of fraudulent misrepresentation. He then declares that "[c]ommon questions will predominate" and insists that he can rely on a presumption of reliance. Motion for Cert. at 21.

Plaintiff has not met his burden to establish that these issues are subject to common proof, much less that common evidence would dominate the litigation. He overlooks his burden to show that the class includes only people who experienced supposedly misleading statements or to present evidence that anyone was likely deceived. *Bailey*, 338 F.R.D. at 399–400; *Mazza*, 666 F.3d at 595; *Vizcarra*, 339 F.R.D. at 547. Likewise, Plaintiff presents no evidence to support his assumption that a class spanning more than three decades and including firearm enthusiasts, licensed firearm sellers, Glock armorers, law enforcement personnel, and military veterans would be unaware that "certain conditions," like overloaded ammunition, is dangerous in a Glock pistol (or any firearm). Nor does he address the thousands of class members—as well as his own proposed expert—who bought their pistols ***after*** hearing about public claims of defect that have surfaced on the Internet and elsewhere for decades. Ex. A, Kapelsohn Dec. ¶¶ 77; 79-88. Significantly, as explained by Mr. Kapelsohn, despite years of public claims referencing the so-called "kaboom" and "unsupported chamber," law enforcement agencies, individual officers, government agents, and militaries continue carrying Glock pistols and sales to citizens have been unaffected. *Id.*

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

In fact, individual issues will overwhelm this litigation. Glock has a right to learn and present evidence of precisely what each class member knew and relied on in buying and continuing to use a Glock pistol. And it can defend itself by showing that individual class members were aware of allegations against Glock, but bought a Glock pistol anyway—much like Mr. Nixon. This will result in countless individualized mini-trials relating to each plaintiff in the class.

### 4. Individual issues dominate the damages claim.

As with his other arguments about predominance, Plaintiff does not meaningfully argue this case, relying instead on broad statements of law on damages. He has the burden of showing a class-wide method for determining damages. *Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th Cir. 2013). Plaintiff argues in favor of a full refund model because he contends his pistol was valueless. He cites cases involving consumable and single-use products to support this claim. *See Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1174 (9th Cir. 2017) (ineffective herbal supplement). But he disregards that full restitution is available *only* upon proof that a product had no value. *See Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 532 (N.D. Cal. 2012) (explaining that beverages had some value even if not all natural); *Stathakos v. Columbia Sportswear Co.*, No. 15 cv-04543-YGR, 2017 WL 1957063 *10 (N.D. Cal. May 11, 2017) (finding full refund unavailable when plaintiffs received use from purchases). Plaintiff, however, relied on his Glock pistols for years to protect himself and others, for licensure qualifications, and personal enjoyment. The same is true for every other member of the class—some of whom have been deriving beneficial use of their pistols for decades. Restitution is not a plausible class damages model merely because Plaintiff stopped using his pistol when he signed up for this lawsuit.

Plaintiff claims that class damages could also be calculated using conjoint analysis. But this case is not appropriate for conjoint analysis. Ex. S, Peterson Dec. There is no way to construct a valid conjoint analysis here given the varied factors that inform pistol purchases and the number of pistol models in the proposed class. *Id*. Further, the proposed conjoint analysis does not fairly or accurately measure damages attributable only to Plaintiff's theory that Glock pistols erratically fail under "certain conditions." Instead, the proposed model misleadingly depicts a high potential for unpredictable "explosion," contrary to the "erratic" potential for failure based on ammunition

1   "conditions" advanced by Plaintiff and his witnesses. This defies the rule of *Comcast* that "a model

2   purporting to serve as evidence of damages in this class action must measure only those damages

3   attributable to that [plaintiff's] theory." *Comcast Corp.*, 569 U.S. at 35. For these reasons and all

4   others comprehensively set forth by Dr. Peterson, Plaintiff's proposed damages model cannot be

5   properly applied in this case.

6   **B. Class litigation is not a superior method to adjudicate this controversy.**

7   Under Rule 23(b)(3), the Court must consider whether a class action is a superior method

8   for fairly and efficiently adjudicating the controversy. It considers factors such as class members'

9   interest in individually controlling separate actions; other existing litigation; the desirability of

10  concentrating the litigation in a forum; and the likely difficulty of managing a class.

11  Manageability "encompasses the whole range of practical problems that may render the

12  class action format inappropriate," including notifying members, calculation of damages, and

13  distribution. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 165 (1974). A single plaintiff wants to

14  represent a class of unbounded duration challenging the design as well as information about almost

15  30 products. Merely identifying the proposed class is administratively burdensome. Narrowing it

16  to something cognizable based on Plaintiff's claims only increases the manageability problems.

17  Even if the Court could develop a way to identify and notify class members, there is still

18  the problem of sifting through class members to litigate the merits. At a minimum, Glock has a

19  right to determine which of the hundreds of thousands of class members' claims are barred by

20  statutes of limitations and their own knowledge of the alleged defect before purchase. It must also

21  have the opportunity to assess what other alleged class members relied on in making their purchase.

22  Likewise, there are untold manageability problems associated with calculating damages, if

23  any. Pistols are unique purchases whose intended uses vary dramatically. The Court will be tasked

24  with calculating the damages of a disparate group of class members. Some will have been firing

25  their pistols regularly for decades without problem. Some will credit their pistols with saving their

26  lives or the lives of others. Others may have bought their pistols as security—never intending to

27  fire them—and derived value from that use. Still others may have used their Glock pistols

28  successfully in their line of work. Even Plaintiff used his pistol without issue for years before his

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

attorneys instructed him that it was defective. There is no way to calculate supposed damages under these circumstances.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's Motion for Class Certification in its entirety, with prejudice.

DATED: February 23, 2024.

RENZULLI LAW FIRM, LLP

By:_____
John Renzulli (*Pro Hac Vice*)
Christopher Renzulli (P*ro Hac Vice*)
Howard Schilsky (*Pro Hac Vice*)
One North Broadway, Suite 1005
White Plains, New York 10601
jrenzulli@renzullilaw.com
crenzulli@renzullilaw.com
hschilsky@renzullilaw.com

-and-

BOWMAN AND BROOKE LLP

By:_____
Paul G. Cereghini (SBN 148016)
Carissa Casolari (SBN 292878)
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: (408) 279-5393
Facsimile: (408) 279-5845
paul.cereghini@bowmanandbrooke.com
carissa.casolari@bowmanandbrooke.com

*Attorneys for Defendants Glock, Inc. and Glock Ges.m.b.H*

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1

## <u>CERTIFICATE OF SERVICE</u>

2       I hereby certify that on February 23, 2024, I filed the foregoing document entitled

3  **DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO**

4  **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** with the clerk of court using the

5  CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

6

7       *__/s/  Carissa Casolari_____*
        Carissa Casolari

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION