Paul G. Cereghini (SBN 148016)
Carissa A. Casolari (SBN 292878)
**BOWMAN AND BROOKE LLP**
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone:     (408) 279-5393
Facsimile:     (408) 279-5845
paul.cereghini@bowmanandbrooke.com
carissa.casolari@bowmanandbrooke.com

John F. Renzulli (*Pro Hac Vice*)
Christopher Renzulli (*Pro Hac Vice*)
Howard B. Schilsky (*Pro Hac Vice*)
**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, NY 10601
Telephone: (914) 285-0700
Facsimile: (914) 285-1213
jrenzulli@renzullilaw.com
crenzulli@renzullilaw.com
hschilsky@renzullilaw.com

Attorneys for Defendants Glock, Inc. and Glock Ges.m.b.H.
(Additional attorneys listed in signature page.)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN C. JOHNSON, an individual, on behalf of himself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br>vs.<br><br>GLOCK, INC., a Georgia Corporation; GLOCK Ges.m.b.H., an Austrian entity; JOHN and JANE DOES I through V; ABC CORPORATIONS I-X, XYZ PARTNERSHIPS, SOLE PROPRIETORSHIPS and/or JOINT VENTURES I-X, GUN COMPONENT MANUFACTURERS I-V<br><br>　　　　　　Defendants. | CASE NO.: 3:20-cv-08807-WHO<br><br>**DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S MOTION TO STRIKE DECLARATION OF COLIN B. WEIR AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:　Hon. William H. Orrick<br>Date:　June 12, 2024<br>Time:　2:00 p.m.<br>Place:　San Francisco Courthouse<br>　　　　Courtroom 2, 17th Floor |

# TABLE OF CONTENTS

NOTICE OF MOTION, MOTION, AND REQUESTED RELIEF ............................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

INTRODUCTION ............................................................................................................ 2

ARGUMENT .................................................................................................................... 2
    I.    Standard of Law ............................................................................................ 2
    II.   Weir's opinions do not satisfy Rule 702. ..................................................... 3
        A.   Weir's opinions, like Gaskin's, misapprehends Plaintiff's allegations. ........................ 3
        B.   Weir's opinions about the economic reliability of Gaskin's model are unreliable and do not satisfy Rule 702. ............................................................................................ 4
        C.   Weir's estimation of damages opinions are unreliable. ................................. 5
        D.   Weir does not reliably address supply-side concerns. ................................... 6
        E.   Weir's opinions about the need for individualized inquiries are not based in sufficient facts or any reliable methodology. ................................................................. 8

CONCLUSION ................................................................................................................. 9

CERTIFICATE OF SERVICE ......................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Target Corp.*, No. CV135944GHKPJWX, 2014 WL 12558858 (C.D. Cal. Nov. 25, 2014) ................................................................................................................................. 3
*Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) ........................................................................... 3
*CZ Servs v. Express Scripts Holding*, Case No. 3:18-cv-04217-JD, 2020 WL 4518978 * 1 (N.D. Cal. Aug. 5, 2020) ............................................................................................................... 3
*Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 986–87 (9th Cir. 2020) ................................ 2
*In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2021 WL 1250378 *3 (N.D. Cal. Apr. 5, 2021) ................................................................................................................................... 2
*In re NJOY, Inc. Consumer Class Action Litigation*, 120 F. Supp.3d 1050, 1119 (C.D. Cal. 2015) ............................................................................................................................................... 6
*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods Liabl. Litig.*, 500 F.Supp.3d 940, 949 (N.D. Cal. 2020) ........................................................................................................... 8
*Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 264 (N.D. Cal. 2015) ......................... 2
*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) ............................................. 2
*Sonneveldt v. Mazda Motor of Am., Inc.*, Case No. 8:19-cv-01298-JLS-KES, 2023 WL 2292600 *11 (C.D. Cal., Feb. 23, 2023) ............................................................................................... 7
*Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 677 (6th Cir. 2010) ................................................... 7

**Other Authority**

Cmt. to 2023 Amendments, Fed. R. Evid. 702 ........................................................................... 2

**NOTICE OF MOTION, MOTION, AND REQUESTED RELIEF**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 12, 2024 at 2:00 p.m. or soon thereafter as the matter to be heard before Hon. William H. Orrick in Courtroom 2 of 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Glock, Inc. and Glock Ges.m.b.H. (collectively "Glock") move to strike the Declaration and Testimony of Colin B. Weir pursuant to Rule 702 of the Federal Rules of Evidence on the following grounds:

(1) Weir's opinions, like Gaskin's, misapprehend Plaintiff's allegations and therefore fail to account for the facts of this case.

(2) Weir's opinions about the economic reliability of Gaskin's model are unreliable, given that (a) his endorsement of Gaskin's work is not based on sufficient facts or data; and (b) his opinions reflect no methodology, much less a reliable one.

(3) Weir's estimation-of-damages opinions are unreliable because they rely on an unvalidated, oversimplified equation.

(4) Weir's opinions do not reliably address supply-side concerns because they rely on unvalidated assumptions.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff has retained Colin Weir to endorse the economic validity and reliability of Steven Gaskin's conjoint analysis, as well as to address expected objections relating to supply-side concerns and the need for individualized inquiries. Weir has declared Gaskin's work valid and brushes off objections to the use of conjoint analysis. But his work exhibits the same flaws as Gaskin's. Like Gaskin, he does not meaningfully explain why he thinks conjoint is appropriate here—much less rely on substantial economic authority to do so. And his opinions about supply-side issues and individualized inquiries suffer from the same lack of rigor and reliability. Therefore, the Court should strike his declaration under Rule 702.

**ARGUMENT**

**I.    Standard of Law**

When class certification depends on expert testimony, the Court applies a Rule 702 analysis that "'scrutinizes the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence.'" *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2021 WL 1250378 *3 (N.D. Cal. Apr. 5, 2021) (quoting *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 264 (N.D. Cal. 2015)). Though the evidence need not be strictly admissible, *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018), evidence to support Rule 23 cannot be "cobble[d] together" or "riddled with scientific and methodological flaws," *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 986–87 (9th Cir. 2020).

Rule 702 was recently amended to clarify its correct application. It was amended to "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set for in the rule." Cmt. to 2023 Amendments, Fed. R. Evid. 702. The Amendment also emphasizes that an expert "opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Id*. In other words, it is not

enough for an expert to identify a reliable methodology. The proponent must *show* how the opinions the expert purports to offer follows from a reliable application of that methodology.

## II.  Weir's opinions do not satisfy Rule 702.

Weir's declaration provides three primary opinions: 1) that Gaskin's proposed conjoint methodology and damages estimation model is valid; 2) Gaskin's conjoint analysis adequately addresses supply side issues; and 3) no individual inquiry will be required to assess damages. None of these opinions fit the facts of the case and all fail to meet Rule 702's reliability requirements.

### A. Weir's opinions, like Gaskin's, misapprehends Plaintiff's allegations.

As outlined in Glock's Motion to Strike Gaskin's opinions, to be admissible, an expert opinion must fit the facts of the case. *CZ Servs v. Express Scripts Holding*, Case No. 3:18-cv-04217-JD, 2020 WL 4518978 * 1 (N.D. Cal. Aug. 5, 2020). And in class actions, it is critical that the damages experts' model must fit the plaintiff's allegations. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *see also*, *Adams v. Target Corp.*, No. CV135944GHKPJWX, 2014 WL 12558858 (C.D. Cal. Nov. 25, 2014) (denying class certification, noting inconsistency between Gaskin's damages model and plaintiff's liability allegations).

Like Gaskin, Weir does not understand the alleged defect. He describes it as an "Unsupported Chamber Defect . . . [that] results in there being a chance upon pulling the trigger there may be a 'blow out' or 'kaboom,' which is when the round/casing blows up or separates and a piece of the casing dislodges, which can blow your hand off or worse." (Weir Dec. ¶ 5, attached as Exhibit II to Plaintiff's Motion.) But that is not the defect Plaintiff has alleged. Glock and Plaintiff agree that Glock pistols *do not* blow up on their own. A catastrophic failure occurs, according to Plaintiff's experts, only under "certain conditions," which have been further defined as defective or over-pressurized ammunition.

Weir's confusion of the defect theory has led him to endorse as reliable Gaskin's methodology. He has not explained how Gaskin's conjoint analysis, which addresses a different claimed defect, could be a reliable methodology to calculate damages. And he likewise does not consider the difference between the defect theory Gaskin proposes to model and the defect theory

that Plaintiff's liability experts, Bosch and Nixon, offer in addressing supply-side issues and the question of individualized inquiry.

### B. Weir's opinions about the economic reliability of Gaskin's model are unreliable and do not satisfy Rule 702.

In Weir's declaration, he provides a generalized summary of what conjoint analysis is and the reasons he believes Gaskin's application of it is valid. (Weir Declaration at ¶¶14–32.) Weir offers broad endorsement of Gaskin's work without any meaningful discussion of it. Though Weir describes conjoint analysis, he does not explain why it would produce an accurate damages calculation here. And without substantial discussion, he declares that Gaskin's "proposed conjoint survey is properly designed to measure any reduction in market value of the Class Pistols at the time and point of sale as a result of the defect." (*Id*. at 32.) This is not enough to satisfy Rule 702.

#### 1. Weir's endorsement of Gaskin's work is not based on sufficient facts or data.

Weir cites a single academic text to support his endorsement of Gaskin's work: an introductory text called "*Getting Started with Conjoint Analysis: Strategies for Product Design and Pricing Research*." He cites it twice, to support his statements that conjoint "has a long history of use in the consumer goods industries" and to provide a general background of how conjoint works. (*Id*. at ¶¶ 16, 18.) The nine paragraphs addressing Gaskin's use of conjoint analysis cite only Gaskin's declaration. (*Id*. at ¶¶ 23–32.)

In his endorsement of Gaskin's conjoint survey, Weir outlines what Gaskin proposes to do, not why it is an economically valid model. Weir states that Gaskin has described how he plans to use conjoint and that he "worked with Mr. Gaskin" to develop the survey. (*Id*. at ¶¶24–26.) And he refers generally to "market-based price points," and assures that Gaskin has "considered" or "taken into account" information about Glock pistols and their sale history. (*Id*. at ¶¶ 27–29.)

Other than these generalities, Weir does not discuss any facts or data that leads him to endorse Gaskin's work from an economic standpoint. Weir cites no authorities, facts, or data to show how conjoint analysis can be used in a case like this (it cannot). He does not address the specific factors Gaskin proposes to use in his conjoint analysis nor does he explain why they are valid or supportable. Weir does not even address that selection and defining attributes are essential

tasks or explain how he managed to determine that Gaskin's selected attributes are economically important to include in his analysis. He does not address choice levels, class segmentation, or external validity. The sole factual basis for Weir's endorsement of Gaskin seems to be Weir's own belief that what he has done is good.

**2. Weir's opinions reflect no methodology at all, much less a reliable one.**

Just as Weir does not rely on any meaningful facts or data to support his endorsement of Gaskin's conjoint survey and proposed analysis, he does not identify any particular methodology that he used to review it. Weir is supposed to provide an economist's validation to Gaskin's conjoint analysis. But he does not identify any proper method to review and analyze conjoint analysis to determine whether it is valid. He lists generalized things that he thinks are good about Gaskin's work and then declares that it is his "opinion that Gaskin's proposed conjoint survey is properly designed." (*Id*. at ¶ 32.)

The inadequacy of Weir's opinions are apparent when viewed in contrast to Dr. Andrew Petersen's declaration. Dr. Petersen is a professor of marketing who teaches conjoint analysis and has published several authoritative academic texts addressing the use of conjoint analysis. As outlined in his declaration, there are significant problems with Gaskin's proposed analysis that Weir neither considers nor addresses. Weir does not acknowledge conjoint's proper use and limitations, nor does he consider how to select attributes or levels. (Exhibit II to Plaintiff's Motion for Class Certification).

Because Weir identifies no baseline (or even a source from which a baseline could be found) to evaluate a conjoint analysis, his methodology amounts to his own ipse dixit opinion that what Gaskin has done is valid. This does not comply with Rule 702. Conjoint analysis is an econometric tool with principles for its proper application. A purported expert who neither acknowledges these principles nor substantively addresses them cannot offer a reliable opinion that it has been performed validly.

**C. Weir's estimation of damages opinions are unreliable.**

Weir devotes just two paragraphs of his declaration to his opinions about the proper calculation of damages. He proposes an equation: to multiply the average price per class pistol by

the number of class pistols and the percentage of "conjoint overpayment." Despite claiming that it is "straightforward and based on common methodology," Weir cites no authority to suggest that this equation is valid. And he also does not explain his work.

As Dr. Petersen has explained, Weir's equation poses significant problems that all stem from aggregation bias. As outlined in the Motion to Strike Gaskin, one of the first problems is that Gaskin's model will not estimate part-worths correctly. (Ex. S, Petersen Declaration ¶ 79.)[1] But Weir and Gaskin also ignore that there are several Glock model pistols that have various configurations and wide price ranges. This prevents finding an average price across the proposed class. (*Id*. at ¶ 80.) Weir and Gaskin also ignore the problems created by needing to compare survey results across models caused by their failure to distinguish between the users and attributes of nearly 30 products. (*Id*. at ¶ 81.) And finally, neither Weir nor Gaskin have justified their oversimplified equation, which assumes no prediction error, does not account for statistical error, and "unreasonabl[y] assumes that survey respondents value chamber support equally regardless of other attributes in their selection profile." (*Id*. at ¶ 84.)

In short, Weir and Gaskin propose a simplified equation and declare that it is reliable. But they do not identify any source that would support using this equation and ignore serious methodological flaws and complexities.

**D. Weir does not reliably address supply-side concerns.**

Conjoint analysis is generally a demand-side analysis, which tries to measure consumer preferences. Generally speaking, changing demand for products will also have supply-side consequences, changing what the manufacturer will supply and at what price. Courts have rejected conjoint analysis in class actions for precisely this reason. *See, e.g., In re NJOY, Inc. Consumer Class Action Litigation*, 120 F. Supp.3d 1050, 1119 (C.D. Cal. 2015). When retained witnesses try to apply conjoint analysis to evaluate a hypothetical "but-for" world, they struggle to account for how changes in customer demand will affect supply-side decisions including pricing and competition within the marketplace.

---

[1] Dr. Peterson's Declaration is attached as Exhibit "S" to the Declaration of Christopher Renzulli filed in support of Glock's Opposition to Class Certification.

1     Anticipating objections to conjoint analysis based on supply-side concerns, Weir includes
2 in his declaration a section devoted to addressing them. Weir explains that Gaskin supposedly
3 accounted for supply-side concerns by referring to past sales and prices, asserting that "it would
4 be antithetical to the reality of the actual Class purchases to suggest that the quantity supplied be
5 anything other than the actual number of units sold." (Weir Declaration at ¶ 34.) Mr. Weir insists
6 that he and Mr. Gaskin have "worked closely" together to ensure that Gaskin's survey was
7 "designed to measure the true reduction in market value . . . solely attributable" to the alleged
8 defect. (*Id.* at ¶ 36.) He explains that he and Gaskin had "discussions" about issues such as
9 historical sales, that the quantity of sales that have occurred "is fixed as a matter of history," and
10 that the pistol market is "ordinary" and competitive. (*Id.* ¶¶36–40.)

     Despite referring to discussions, Weir does not explain what he and Gaskin actually **did** to
validate their supply-side assumptions. As Dr. Petersen explains, they have done nothing
methodologically appropriate or sufficient to do so. (Ex. S, Petersen Declaration ¶ 66–67.)

     As Dr. Petersen points out, the focal attribute that Gaskin and Weir address in their conjoint
analysis is one of product design. It is something that could be altered only through reconfiguring
Glock's design and manufacturing processes. (*Id.* at ¶¶ 67–68.) Changing these fundamental
aspects of production would change the marketplace price independently of consumer preferences
or willingness to pay. (*Id.*) Relatedly, changing the price will affect both supply and demand, as
well as competitive marketplace reactions. (*Id.* ¶ 68.) To suggest that historical prices and sales
would be constant in a hypothetical alternative reality where Glock produced a different product
requires evidence and support. (*Id.* ¶ 69.) Weir has none.

     This is a serious methodological problem that renders the conjoint analysis unreliable and
insufficient. "Hypotheses that are plausible but 'not necessarily true' are 'ripe for testing'—that is,
they must be 'verified by testing, not by submitting them to lay juries for a vote.'" *Sonneveldt v. Mazda Motor of Am., Inc.*, Case No. 8:19-cv-01298-JLS-KES, 2023 WL 2292600 *11 (C.D. Cal., Feb. 23, 2023); *see also Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 677 (6th Cir. 2010) ("[W]hat science treats as a useful but untested hypothesis the law should generally treat as inadmissible speculation."). At best, Weir has speculated that changing Glock's design and manufacturing

processes would not affect Glock's sales, supply, price, or resulting demand. But he has no facts or data to back up this conclusion. He offers no real-world examples to suggest that manufacturing or design changes in any market do not affect supply. Nor does he have any support in literature or research. Weir does not even propose a way to test his hypothesis. Weir's subjective belief that he and Gaskin have appropriately accounted for supply-side issues by speculating that sales would remain constant despite a change in design and manufacturing process is not enough to render his opinion reliable and admissible. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods Liabl. Litig.*, 500 F.Supp.3d 940, 949 (N.D. Cal. 2020) (excluding Gaskin, explaining that"[P]resuming that Defendants would have sold the same number of cars, at the exact price that consumers would have been willing to pay, is not a way to reliably incorporate supply-side considerations").

The proposed conjoint analysis cannot reliably predict market behavior because it does not account for the supply-side of the economy. Plaintiff has not met his burden of proof to show that Gaskin's survey or Weir's blessing of it flows from reliable methodology.

### E. Weir's opinions about the need for individualized inquiries are not based in sufficient facts or any reliable methodology.

Plaintiff also relies on Weir to conclude that through conjoint analysis, he and Gaskin can calculate class damages without any individual inquiry. (Weir Declaration ¶¶ 55–60.) Weir's belief that no individual inquiry is necessary hinges on his assertion that "[i]f the market price for the Class Pistols was higher without disclosure . . . then ALL consumers will have paid a higher price" and it does not matter how the buyer used it. (*Id.* ¶ 58) He asserts that because individual reasons for purchase cannot change the price, all purported class members will have experienced the same degree of damages. (*Id.* ¶¶ 58–60.)

This section of Weir's declaration lacks citations to the record or any authority. But Dr. Petersen addresses the flaws in it. First, as Dr. Petersen explains, Weir's opinion that variations in purchase price does not change the total damages calculation is affected by aggregation bias. Because Gaskin's survey lumps together disparate purchasers with different priorities it misstates the supposed value of the alleged defect. (Ex. S, Petersen Declaration ¶¶ 77–84, 86.) Likewise,

1  Weir's insistence that individual behaviors and reasons for purchase are irrelevant ignores the
2  existence of customer segments and actual use. Weir's dismissal of the concept of value is contrary
3  to the facts here too. (*Id.* ¶¶ 89–91.) Plaintiff derived value from his pistol during his ownership,
4  using it for pleasure and self-protection. (*Id.* ¶¶ 90- 92). Weir fails to explain why he believes that
5  in a class that spans decades and more than two dozen products, made for different users, the actual
6  value individual purchasers received is irrelevant. As Dr. Petersen points out, Weir's unsupported
7  insistence that individual inquiries are irrelevant "goes against the proposed conjoint analysis with
8  hierarchical Bayes estimation and the inclusion of so many models." (*Id.*). In other words, the
9  entire reason a conjoint analysis is a valuable tool in marketing is ***because*** individual purchasers
10 place different values on different attributes. (*Id.*)

Weir has no facts or data to support his conclusions that individual inquiries are irrelevant. He cites no authorities to validate these conclusions. And, as Dr. Petersen explains, his assumptions contradict the premise of conjoint analysis. Therefore, the Court should strike this opinion as well.

## CONCLUSION

The Court should strike Weir's declaration and opinions. Despite being charged with lending economic credibility to Gaskin's conjoint analysis, he provides none. Like Gaskin, Weir's opinions stem from his misunderstanding of the defect theory. Then, he identifies no facts, data, or methodology from which he concludes that Gaskin has prepared a survey that will yield an economically reliable outcome. And his efforts to preemptively address anticipated criticisms about Gaskin's proposed model and use of conjoint turn on nothing more than Weir's unsupported ipse dixit, which is contrary to sound economic principles.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

DATED: February 23, 2024.

**RENZULLI LAW FIRM, LLP**

By: _____
John Renzulli (*Pro Hac Vice*)
Christopher Renzulli (P*ro Hac Vice*)
Howard Schilsky (*Pro Hac Vice*)
One North Broadway, Suite 1005
White Plains, New York 10601
jrenzulli@renzullilaw.com
crenzulli@renzullilaw.com
hschilsky@renzullilaw.com

-and-

**BOWMAN AND BROOKE LLP**

By: _____
Paul G. Cereghini (SBN 148016)
Casolari (SBN 292878)
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: (408) 279-5393
Facsimile: (408) 279-5845
paul.cereghini@bowmanandbrooke.com
carissa.casolari@bowmanandbrooke.com

*Attorneys for Defendant Glock, Inc. and Glock Ges.m.b.H*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2024, I filed the foregoing document entitled **DEFENDANTS GLOCK, INC. AND GLOCK Ges.m.b.H.'S MOTION TO STRIKE DECLARATION OF COLIN B. WEIR** with the clerk of court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

                                            /s/ Carissa Casolari
                                            Carissa Casolari