Paul R. Kiesel, State Bar No. 119854
kiesel@kiesel.law
Jeffrey A. Koncius, State Bar No. 189803
koncius@kiesel.law
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444
Fax: 310-854-0812

Jeremy Alberts, *Pro Hac Vice*
jalberts@wwhgd.com
**WEINBERG WHEELER HUDGINS GUNN & DIAL LLC**
6385 S. Rainbow Blvd. Suite 400
Las Vegas, Nevada 89118
Tel: 702-938-3838

Robert K. Lewis, *Pro Hac Vice*
rob@lewislawfirm.com
Amy M. Lewis, *Pro Hac Vice*
amy@lewislawfirm.com
**LEWIS AND LEWIS TRIAL LAWYERS, PLC**
21850 N. Alma School Road, Suite 103-637
Scottsdale, Arizona 85262
Tel: 602-889-6666

Nicholas Panayotopoulos, *Pro Hac Vice*
npanayo@wwhgd.com
Gary J. Toman, *Pro Hac Vice*
gtoman@wwhgd.com
Alexander Heydemann, *Pro Hac Vice*
aheydemann@wwhgd.com
**WEINBERG WHEELER HUDGINS GUNN & DIAL LLC**
3344 Peachtree Road, NE
Atlanta, Georgia 30326
Tel: 404-876-2700

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN C. JOHNSON, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GLOCK, INC., a Georgia Corporation; GLOCK Ges.m.b.H, an Austrian entity; JOHN and JANE DOES I through V; ABC CORPORATIONS I-X, XYZ PARTNERSHIPS, SOLE PROPRIETORSHIPS and/or JOINT VENTURES I-X, GUN COMPONENT MANUFACTURERS I-V,<br><br>Defendants. | CASE NO.: 3:20-cv-08807-WHO<br><br>**PLAINTIFF'S NOTICE PLAN AND RESPONSE TO GLOCK'S OBJECTIONS AND SEPARATE NOTICE PLAN AND REQUEST FOR ADDITIONAL TIME TO RESPOND TO GLOCK'S DECLARATION**<br><br>**Judge**:   William H. Orrick |

On September 30, 2024, this Court entered its Order granting Class Certification. DE 181. In its Order, the Court directed the parties to meet and confer on the text of a Notice and Notice Plan to be disseminated and for any objections or disputes to be submitted to the Court for resolution by November 15, 2024. The Court ultimately extended the deadline until April 30, 2025, primarily due to the time needed to obtain additional information from the California Department of Justice. DE 230.

On January 27, 2025, Plaintiff provided the Glock entities ("Glock") with its proposed plan. This included the: 1) Declaration of Cameron Azari, Esq., Senior VP of Epiq (Ex. A); 2) Long form notice (Ex. 4 to Decl.); 3) Email Notice (Ex. 2 to Decl.), and 4) Post Card Notice (Ex. 3 to Decl.). After meeting and conferring Glock submitted numerous objections to Plaintiff's proposed Notice Plan and Notice forms by email, which Plaintiff responded to. However, Glock first provided its own notice forms nine days before their objections were due to be filed. Glock refused to agree to any further extension of time to meet and confer. Worse, Glock chose to file a **113-page expert declaration** (which was not previously provided) **for the first time hours ago**, after hours, on the day their objections were due. The declaration also included exhibits that were never provided to Plaintiff as part of the meet and confer efforts.[1]

In a good faith effort to address issues discussed during the meet-and-confer, Plaintiff files its preliminary Response to Glock's Objections and Glock's alternative Notice forms along with Plaintiff's supporting Declaration of its proposed Notice Plan and Notice Forms. Plaintiff otherwise requests that the Court disregard Glock's untimely submissions that were never provided to Plaintiff within the Court's meet and confer deadline and because Glock has refused to consent to additional time to meet and confer. Alternatively, Plaintiff requests at least 10 days to review Glock's newly

---

[1] Glock first provided their Long Form Notice and Summary Notice Forms nine days ago, but otherwise no other exhibits were provided that are now attached to Hilsee's Declaration.

submitted expert declaration regarding the notice plan and offer a supplemental response that may be warranted given Plaintiff and its Notice Expert has not yet had an opportunity to review or digest the newly submitted declaration.

### A. **Introduction**.

Plaintiff retained Epiq Class Action & Claims Solutions Inc. ("Epiq") to act as the notice administrator. Plaintiff's Notice and Notice Plan are supported by a Declaration of Cameron Azari, Esq., Senior Vice President of Epiq and the Managing Director of Epiq Legal Noticing (aka Hilsoft Notifications), a business unit of Epiq that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans. Epiq is an industry leader in class action administration, having implemented more than a thousand successful class action notice and settlement administration matters. Epiq Legal Noticing has handled some of the most complex and significant notice programs in recent history, examples of which are discussed below. With experience in more than 700 cases, including more than 75 multidistrict litigation settlements, Epiq Legal Noticing has prepared notices that have appeared in 53 languages and been distributed in almost every country, territory, and dependency in the world. Courts have recognized and approved numerous notice plans developed by Epiq Legal Noticing, and those decisions have invariably withstood appellate review. Mr. Azari has served as a notice expert and has been recognized and appointed by courts to design and provide notice in many significant cases. In this Northern District of California alone, Mr. Azari has served as a legal notice expert in more than 40 cases that have received final approval, specifically, the following in front of this honorable Court: *In Re Juul Labs, Inc.* (Notice and Settlement); *Maldonado et al v. Apple Inc. et al.* (Notice and Settlement); *Krommenhock v. Post Foods, LLC* (Notice); and *Rankins v. ARCA Continental* (Pending). *See* Decl. Mr. Azari.

On January 27, 2025, Plaintiff provided the Glock entities ("Glock") with its proposed plan. This included the: 1) Declaration of Cameron Azari, esq., Senior VP of Epiq (Ex. A); 2) Long form notice (Ex. 4 to Decl.); 3) Email Notice (Ex. 2 to Decl.), and 4) Post Card Notice (Ex. 3 to Decl.). As the Court directed, the parties met and conferred by video meeting, phone, and email regarding Epiq's Notice Plan and documents. After working with Glock for months on the Epiq plan and its notice documents, on Monday April 21, 2025, nine (9) days before the deadline, Glock pivoted and rejected Epiq's notice documents entirely. Glock submitted its own Summary Notice and Detailed Notice. It refused to provide redline or word copies of its new Notice Summary and Detailed Notice. More egregiously, **on the day Glock's objections were due**, and afterhours, Glock for the first time submitted a **113-page** declaration with exhibits of their own expert, Mr. Hilsee, which was never provided to Plaintiff during the months of meet and confer meetings prior to Glock filing its objections. Beyond Glock's eleventh hours switch in Notice documents and last-minute declaration, Johnson and Glock have worked to identify issues for which the parties are at an impasse and need resolution by the Court.

1) **Epiq's Notice vs. Glock's Notice**. Glock wants to supplant Epiq's Long Form Notice, Email Notice, and Post Card Notice with its own documents that were provided to Johnson in final .pdf form nine days before the deadline. Prior to April 21st, Johnson worked with Glock on the Epiq documents and even agreed to incorporate some of Glock's changes into the Epiq documents. The new documents offered by Glock were provided at a time when it is too late to start over utilizing Glock's suggested notice documents drafted by its consultant. Furthermore, the Glock documents misrepresent the nature of the case as a products liability case not a consumer protection case. The documents are full of engineering jargon. The language is not plain, simple nor understandable. Therefore, Plaintiff rejects Glock's alternative notice forms and instead requests that the Court accept Epiq's draft Notice forms,

including the Long Form Notice, Email Notice and Post Card Notice attached to the declaration of Mr. Azari.

2) **Glock objects to any media notice.** Glock objects to the use of any Media notice whatsoever. It offers no explanation other that it does not want media notice. It is Johnson's position that media is needed to augment direct postal mail and email. Rule 23 allows, "[t]he notice may be one or more of the following: United States postal mail, electronic means, or other appropriate means." Reliance <u>solely</u> upon 40-year-old sales records without a media component is foolhardy. It is Johnson's position that multiple impressions by email, mail, and media makes constitutional notice more likely not less likely. Glock offers no explanation as to why this method of notice cannot be utilized alongside of direct email and some postcard notice to increase impressions. It is the new standard. *See, e.g.*, Declaration of Mr. Azari.

3) **Glock objects to a post card being part of the Notice**. Glock advocates for a plan that requires only sealed envelopes. Post cards are the standard and have been widely utilized for years. *See, e.g,*. Decl. Mr. Azari. Sealed envelopes add an extra step reducing the likelihood of actual notice. Glock's plan of sealed plain envelopes does nothing but increase the cost of litigation and reduce the likelihood of actual notice to the class members.

4) **Glock advocates for listing technical arguments on the notice forms and website**. Johnson objects to Glock's proposed revisions because only makes it more likely people will not read it, which runs contrary to the whole point of notice. Epiq's proposed notice will adequately inform class members that Glock denies Plaintiff's allegations and refer them to Glock's Answer. The text should be neutral and used to share the class member's legal right and how to effectuate it as opposed to including technical arguments over the merits of the claims.

**B. Objection One - Glock's Eleventh-hour Rejections of Epiq's Work**.

Glock received Johnson's Plan and documents on January 27, 2025. On April 21, 2025, months later, and nine days before the deadline, Glock unexpectedly rejected Epiq's work entirely and provided its own notice documents in a finalized PDF format. These documents came with no explanation for the change, no tracking, no redlines, nor reconciliation on any of the parties' prior points of agreement on the Epiq documents. In response to Johnson's request for redlines and word documents of the new notice documents, Glock refused and said, "the necessary changes are too extensive to redline." After working on Epiq's documents for months, Glock does a "180" and reports, "that a class member, who reads plaintiffs proposed notices, will have no idea what this case is actually about." Days before the deadline, Glock takes the position that its documents are superior, and they are going to ask the Court to reject Epiq's work entirely and adopt Glock's documents in their entirety. Glock's basis for this move is that it recently hired Todd Hilsee, as a class action expert. Johnson has not yet seen his opinions or any declaration from him, seen the basis for his opinions, or an explanation how the new documents will be utilized within Epiq's plan. By waiting to the eleventh hour to shift to the Hilsee documents, Glock waived any objection to Epiq's work. Johnson asks the Court to disregard the Glock's forms and adopt Epiq's.

Further, Glock's documents are confusing. Their notices describe the nature of the lawsuit as a products liability case not a consumer protection case. It then goes into a partisan explanation of Glocks defenses. In fairness, some of Glock's notice documents have language that overlaps with Epiq's documents and is perfectly fine. This is the bait. However, Glock infects the documents with confusing, inaccurate and misleading language. For example, "What is the lawsuit about. Whether a feed ramp feature in the chamber of most Glock pistol sold in California is an unreasonably dangerous defect that should have been disclosed, or whether it is a safe design that exceed industry standards."

5

This is the hook. The truth is that this is a false advertising case, fraudulent omission case, and CLRA case – not a products liability case. Glock fails to mention in its documents that it did not disclose a design to the public and its customers that it knew was going to result in explosions.

Rule 23 requires, that "the notice must contain clear, concise, plain, easily understood language. This is a case concerned with deception not safety. Glock's documents are full of confusing jargon. They describe the dispute as a products liability case then take readers on an engineering odyssey of pressure, weak cartridges, and metallurgical evaluation that is calculated to confuse.

Glock also wants the notice document to limit the definition of "consumer" under the statutory definition under the CLRA, i.e., a person who purchased a class pistol for "personal or household use" only. This is an unnecessary and overly restrictive definition. The class claims clearly are broader than the CLRA because they include UCL and FAL claims that were also certified and are not limited to CLRA's definition of a "consumer." *See* Order at 4:17-25. Glock relies on the use of the word "consumer" in the Court's Order, but this was simply referring to the common objective standard that applies throughout all the causes of action, i.e., the "reasonable consumer" standard. *See* Order at 4:22-25 ("Under those statutes [referring to UCL/FAL/CLRA at issue], the question is whether a reasonable consumer would have found that the undisclosed safety risk caused by the interaction of the unsupported chamber and over pressurized or weak casing factory ammunition was material when purchasing a pistol."); *see also Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008). Indeed, as the Court recognized the reasons for one's purchase of the firearm is not relevant to the materiality inquiry at issue under these consumer protection statutes. *See* Order at 10:19-24. Further, all individual purchasers are part of the class because they may have claims under the UCL/FAL even if they may not have claims under the CLRA and can still seek equitable restitution under the UCL/FAL for overpayment. *Colgan v. Leatherman Tool Grp., Inc.,* 135 Cal.

App. 4th 663, 694 (2006) (UCL, FAL, and CLRA all "authorize a trial court to grant restitution to private litigants asserting claims under those statutes."). The Court has not made any determination on the merits of the claims, and therefore, Glock's notice would misrepresent the claims and scope of the class that was certified. Therefore, Plaintiff requests that the Court reject Glock's insertion of this limited definition of "consumer" in the notice forms and instead accept Epiq's notice language included as part of Mr. Azari's declaration.

### C. Objection Two - Epiq's Media Plan is Appropriate.

Internet advertising has become a standard component in legal notice programs. The internet has proven to be an efficient and cost-effective method to target class members as part of providing notice of class certification and/or a settlement for a class action case. According to MRI-Simmons data, 97% of all adults are online and 84% of all adults use social media. While direct email to the identified class is planned for, here, there are going to be many Class members for whom we do not have a valid email address or physical mailing address, since the data from the California Department of Justice is not all encompassing and is dated. This will result in undeliverable notices even after address updating is conducted. Therefore, to provide the best notice practicable there must be some form of media notice as well. Epiq's Notice Plan utilizes a multi-faceted approach that utilizes both media and direct notice through electronic and written means to provide actual notice to the class. Glock's only objection to the use of media is that it does not want media notice. Instead, it wants the Court to limit Johnson to only direct postal notice in sealed envelopes a plan that reduces actual notice not increases it.

Glock objects to Epiq's whole media plan, as well as use of any email notice besides the email addresses Glock provided in a spreadsheet of 19,161 customers who registered for their warranty on

7

Glock's website. Glock wants to limit notice to the DOJ data, coupled with these emails which Glock estimates the email list "is only a small fraction of the class (perhaps less than 1%)."

Glock has further asserted in meet and confer correspondence that, "based on the available data, it is reasonable to identify every class member's current address for direct mailings only." Without foundation, Glock and its experts claim that the DOJ records are 95 percent or can be made accurate with the national change of address database. Johnson and Epiq disputes this factual assertion, and it is belied by Glock's own warranty sales records, which contain customer names and serial numbers not included in DOJ records. The media plan must be used to capture these class members in California as well as nationally to reach class members who moved out of state since purchase.

Even if it is true that the DOJ records are perfect, however, it does not provide good cause to rewrite Rule 23 to remove electronic notice as an acceptable means of constitutional notice. Without foundation, Glock claims that no safety net is needed to ensure actual notice to class member through media. At best Glock argues that a media campaign is overkill because the DOJ data that is decades old is near perfect. Yet requiring Johnson to utilize only one method of notice is not a requirement imposed by Rule 23 and Glock advances no good reason for this Court to prohibit Epiq's use of electronic media notice as a tool to supplement direct electronic and physical notice.

### D. **Objection Three - Post Cards are commonly accepted means of Notice.**

In Epiq's experience, postcards get read at a higher rate than something in an envelope which requires an extra step. The notice content will be read by more class members using postcards. Postcard increase impressions because it does not require a second step.

### E. **Objection Four - Website Form and List of Glock's Defenses.**

Epiq has put together content for a website Epiq plans to use, mirroring the language in Plaintiff's notice documents, and the URL www.GlockClassAction.com has been purchased and reserved for

Epiq's use in the notice plan. Glock has been provided with the content of the website which it has rejected in its entirety in lieu of its own eleventh hour notices as discussed above.

Further, Epiq's proposed long form notice will adequately refer to Glock's defenses by referring to their Answer to the Complaint. The text should be neutral and used to share the class member's legal right and how to effectuate it rather than engaging in technical arguments over the merits of the claims, as proposed by Glock's form notices, which would not be appropriate.

For all these reasons, Plaintiff respectfully requests that the Court approve Epiq's proposed Notice Plan and Notice Forms as submitted in the supporting Declaration of Mr. Azari. Further, because Glock failed to provide Plaintiff with last-minute Hilsee's declaration and other forms with sufficient time to review and respond to them within the Court's deadline to meet and confer, and refused to allow Plaintiff any additional time to meet and confer of these issues, the Court should disregard those lately filed submissions. Alternatively, Plaintiff requests at least 10 days to further review and respond to Glock's newly submitted expert declaration.

Dated: April 30, 2025.

By: */s/ Amy Lewis*
*Attorneys for Plaintiff and*
*the Proposed Class*
**LEWIS & LEWIS TRIAL LAWYERS, PLC**

*/s/ Alexander Heydemann*
*Co-counsel for Plaintiff and Proposed Class*
**WEINBERG WHEELER HUDGINS GUNN & DIAL, LLC**

Paul R. Kiesel
kiesel@kiesel.law
Jeffrey A. Koncius
koncius@kiesel.law
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444

Jeremy Alberts
jalberts@wwhgd.com
**WEINBERG WHEELER HUDGINS GUNN & DIAL LLC**
6385 S. Rainbow Blvd. Suite 400
Las Vegas, Nevada 89118
Tel: 702-938-3838

Fax: 310-854-0812

| | |
|---|---|
| Nicholas Panayotopoulos<br>*npanayo@wwhgd.com*<br>Alexander Heydemann<br>*aheydemann@wwhgd.com*<br>**WEINBERG WHEELER HUDGINS GUNN & DIAL LLC**<br>3344 Peachtree Road, NE<br>Atlanta, Georgia 30326<br>Tel: 404-876-2700 | Robert K. Lewis<br>*rob@lewislawfirm.com*<br>Amy M. Lewis<br>*amy@lewislawfirm.com*<br>**LEWIS & LEWIS TRIAL LAWYERS, PLC**<br>21850 N. Alma School Road, Suite 103-637 Scottsdale, Arizona 85262<br>Tel: 602-889-6666 |

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record identified on the Service List below this 30th day of April, 2025, through the Court's electronic filing portal via CM/ECF.

*/s/Alexander Heydemann*

10

Alexander Heydemann

John F. Renzulli
*jrenzulli@renzullilaw.com*
Christopher Renzulli
*crenzulli@renzullilaw.com*
Howard B. Schilsky
*hschilsky@renzullilaw.com*
**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, NY 10601
Telephone: (914) 285-0700
Facsimile: (914) 285-1213

Carissa Casolari
*Carissa.casolari@bowmanandbrooke.com*
**BOWMAN AND BROOKE LLP**
970 West 190th Street, Suite 700
Torrance, CA 90502
Telephone: (310) 768-3068
Facsimile: (310) 719-1019

Paul G. Cereghini
*paul.cereghini@bowmanandbrooke.com*
**BOWMAN AND BROOKE LLP**
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: (408) 279-5393
Facsimile: (408) 279-5845

Donald Falk
*dfalk@schaerr-jaffe.com*
**Schaerr | Jaffe LLP**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 562-4942