Paul R. Kiesel, State Bar No. 119854
*kiesel@kiesel.law*
Jeffrey A. Koncius, State Bar No. 189803
*koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444
Fax: 310-854-0812

Jeremy Alberts, *Pro Hac Vice*
*jalberts@wwhgd.com*
**WEINBERG WHEELER HUDGINS
GUNN & DIAL LLC**
6385 S. Rainbow Blvd. Suite 400
Las Vegas, Nevada 89118
Tel: 702-938-3838

Robert K. Lewis, *Pro Hac Vice*
*rob@lewislawfirm.com*
Amy M. Lewis, *Pro Hac Vice*
*amy@lewislawfirm.com*
**LEWIS AND LEWIS
TRIAL LAWYERS, PLC**
21850 N. Alma School Road, Suite 103-637
Scottsdale, Arizona 85262
Tel: 602-889-6666

Nicholas Panayotopoulos, *Pro Hac Vice*
*npanayo@wwhgd.com*
Alexander Heydemann, *Pro Hac Vice*
*aheydemann@wwhgd.com*
**WEINBERG WHEELER HUDGINS
GUNN & DIAL LLC**
3344 Peachtree Road, NE
Atlanta, Georgia 30326
Tel: 404-876-2700

*Attorneys for Plaintiff and the Certified Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN C. JOHNSON, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GLOCK, INC., a Georgia Corporation; GLOCK Ges.m.b.H, an Austrian entity; JOHN and JANE DOES I through V; ABC CORPORATIONS I-X, XYZ PARTNERSHIPS, SOLE PROPRIETORSHIPS and/or JOINT VENTURES I-X, GUN COMPONENT MANUFACTURERS I-V,<br><br>Defendants. | CASE NO.: 3:20-cv-08807-WHO<br><br>**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, EMERGENCY MOTION FOR PRELIMINARY INJUNCTION, AND REQUEST FOR ORDER TO SHOW CAUSE**<br><br>Judge: Hon. William H. Orrick<br>Date: April 15, 2026<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 17th Floor |

## TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

I. INTRODUCTION ................................................................................................... 2

II. STATEMENT OF FACTS ..................................................................................... 3

    A. Procedural Background ..................................................................................... 3

    B. The Court's January 13, 2026 Order ............................................................... 3

    C. Respondents' Video Campaign ........................................................................ 4

    D. The Established Relationship Between Respondents and Glock's Counsel ................. 9

    E. Evidence of Coordination ................................................................................ 10

III. ARGUMENT ....................................................................................................... 10

    A.  This Court Has Broad Authority To Regulate Communications with Class Members..11

    B.   Respondents Are Interfering with the Court's Notice Plan ...................................... 11

    C. The Court Should Issue a TRO or Preliminary Injunction ......................................... 12

        1. Legal Standard .............................................................................................. 12

        2. Class Counsel Is Likely to Succeed on the Merits ........................................... 12

            i. Respondents' Statements Are Materially Misleading............................. 12

            ii. Respondents' Conduct Constitutes Improper Interference ................... 13

            iii. Irreparable Harm................................................................................ 14

            iv. The Balance of Equities and Public Interest Favor Injunctive Relief.. 14

        3. Ex Parte Relief is Appropriate ........................................................................ 15

    D. The Court Should Issue an Order to Show Cause ...................................................... 16

        1. Legal Standard .............................................................................................. 16

2. To the Extent Glock or Its Counsel Coordinated with Respondents They Have Violated this Court's Orders ................................................................... 16

3. Appropriate Sanctions ........................................................... 17

**IV. RELIEF REQUESTED** ........................................................... 18

**V. CONCLUSION** ........................................................... 19


# TABLE OF AUTHORITIES


## <u>Cases</u>

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) ........................................................... 16

*FTC v. Affordable Media,*
    179 F.3d 1228 (9th Cir. 1999) ........................................................... 16

*Georgine v. Amchem Prods., Inc.,*
    160 F.R.D. 478 (E.D. Pa. 1995) ........................................................... *passim*

*Gulf Oil Co. v. Bernard,*
    452 U.S. 89 (1981) ........................................................... 10

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.,*
    538 U.S. 600 (2003) ........................................................... 14

*In re Federal Skywalk Cases,*
    97 F.R.D. 370 (W.D. Mo. 1983) ........................................................... 17, 18

*Kleiner v. First Nat'l Bank of Atlanta,*
    751 F.2d 1193 (11th Cir. 1985) ........................................................... *passim*

*LifeScan Scot., LTD v. Shasta Techs., LLC,*
    2013 U.S. Dist. LEXIS 122858 (N.D. Cal. Aug. 28, 2013) ........................................................... 16

*McCarthy v. Medicus Healthcare Sol., LLC,*
    2023 U.S. Dist. LEXIS 249351 (D.N.H. July 11, 2023) ........................................................... 11, 12

*Perrin Bernard Supowitz, LLC v. Morales,*
    2022 U.S. Dist. LEXIS 69502 (C.D. Cal. Apr. 13, 2022) ........................................................... 12

*Peterson v. Highland Music,*

140 F.3d 1313 (9th Cir. 1998).......................................................................................... 16

*Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.,*
 2016 U.S. Dist. LEXIS 99720 (N.D. Cal. July 29, 2016).......................................*passim*

*Stark v. Patreon, Inc.*
 2025 U.S. Dist. LEXIS 107441 (N.D. Cal. June 5, 2025) ...................................... 11, 13

*Truitt v. Superior Court,*
 59 Cal. App. 4th 1183 (1997) ....................................................................................... 17

*United States v. New York Tel. Co.,*
 434 U.S. 159 (1977)...................................................................................................... 11

*Williams v. Quinn,*
 2010 U.S. Dist. LEXIS 77140 (N.D. Ill. July 27, 2010)..................................... 11, 12, 13

*Winter v. Nat. Res. Def. Council, Inc.,*
 555 U.S. 7 (2008) .......................................................................................................... 12

### Statutes and Rules

28 U.S.C. § 1651 (All Writs Act) .................................................................................. 10

California Rule of Professional Conduct 4.2 ..........................................................*passim*

Federal Rule of Civil Procedure 23......................................................................*passim*

Federal Rule of Civil Procedure 65(b)........................................................................... 15

---

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on April 15, 2026 at 2:00 p.m., or as soon as the matter may be heard before Hon. William H. Orrick in Courtroom 2 of the 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff, by and through undersigned Class Counsel, hereby moves this Court *ex parte* for a Temporary Restraining Order and Emergency Preliminary Injunction against California Pistol and Rifle Association, Incorporated, d/b/a "CRPA TV", Carl Dawson Michel, Esq. ("Michel"), and Does 1-10 (collectively, "Respondents"), and further requests that this Court issue an Order to Show Cause why Defendants Glock, Inc. and Glock Ges.m.b.H. ("Glock"), Glock's counsel of record at Renzulli Law Firm, LLP ("Renzulli" or "Glock's counsel"), and Respondents should not be held in civil contempt for violating this Court's January 13, 2026 Order (DE 258), the Court's June 13, 2025 Order (DE 239), California Rule of Professional Conduct 4.2 ("Rule 4.2"), and otherwise interfering with this Court's administration of justice.

Class Counsel respectfully requests that this Court issue an order:

1. Immediately requiring the removal of the video posted on or about February 26, 2026, on YouTube and any other platforms, and any substantially similar content;

2. Requiring Respondents to issue a Court-approved corrective statement through the same channels;

3. Requiring Respondents to bear the costs of any supplemental corrective notice;

4. Entering an Order that any opt-outs as a result of Respondents' conduct are invalid and tolling the opt-out deadline for any class member who opted out because of Respondents' conduct.;

5. Awarding Class Counsel attorneys' fees and costs incurred in bringing this motion;

6. Issuing an Order to Show Cause as to why Respondents should not be held in contempt for violating this Court's Orders and directly interfering with a Court approved Notice program;

1

7. Upon a finding of contempt, imposing appropriate sanctions; and

8. Granting such other and further relief as the Court deems just and proper.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Robert K. Lewis and exhibits thereto, the pleadings and records on file, and such other matters as may be presented to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.        INTRODUCTION

This certified consumer class action is at a critical juncture. Class notice is being disseminated to absent class members, with the opt-out deadline set for April 20, 2026. Class Counsel has discovered that Respondents, including a California firearms attorney with an established professional relationship with Glock's counsel and the gun industry, have launched a campaign to undermine the class notice process through misleading public statements designed to induce class members to opt out.

The timing is deeply troubling. On January 13, 2026, this Court denied Glock's request to contact absent class members (DE 258), making clear that Defendants were prohibited from contacting class members under California Rule of Professional Conduct 4.2 and could not solicit opt-outs. On February 2, 2026, class notice commenced as approved by the Court. (DE 239) (Order approving Plaintiff's notice plan); DE 254 (Stipulated Scheduling Order). Less than four weeks after noticed commenced, and just six weeks after this Court's Order, Respondents published a video on YouTube through CRPA TV containing false and misleading statements about this litigation; statements that closely mirror Glock's own litigation talking points. The video explicitly encourages class members to opt out, contact the Renzulli Law Firm, and "help Glock."

Michel is not a disinterested commentator. He and Glock's counsel share an established professional relationship through FFLGuard, a firearms industry legal organization. Both serve on its

Plaintiff's Ex Parte Application for TRO, Emergency Preliminary Injunction, and Order to Show
Case No. 3:20-cv-08807-WHO

Attorney Advisory Group, and they have served as counsel for co-defendants on multiple matters. The inescapable inference is that Glock and its counsel, having been denied permission to contact class members directly, may be using Michel as a proxy to accomplish indirectly what this Court expressly prohibited; moreover, that improper contact is compounded with misleading statements that besmirch this Court and its inherent authority over this case. Immediate injunctive relief and an Order to show cause are warranted.

## II. STATEMENT OF FACTS

### A.     Procedural Background

On September 30, 2024, this Court certified a class of consumers who purchased pistols manufactured and/or sold by Defendants. DE 181. The class includes all individual purchasers of Glock pistols (with the exception of one model), from the date the pistols entered the stream of commerce in California. On June 13, 2025, this Court approved the parties' proposed notice plan after over a year of discovery, briefing, and significant efforts to obtain a court-approved notice plan. DE 239. The notice provides for direct postcard mailings and an approved digital media campaign. The Notice plan was set to commence on February 2, 2026. DE 254. The opt-out deadline is April 20, 2026. DE 262.

### B.     The Court's January 13, 2026 Order Denying Glock's Request to Contact Class Members

On December 5, 2025, Glock moved for leave to contact absent class members. DE 252. On January 13, 2026, this Court denied the request (DE 258), holding that: (1) Defendants are prohibited from contacting class members under California Rule of Professional Conduct 4.2; and (2) Glock cannot solicit class members to opt out. The Court specifically noted that Glock could "not seek

3

discovery to harass class members or solicit them to opt-out." DE 258, 1:20-2:1. This Order remains in effect and put Glock and its counsel on clear notice.

### C.     Respondents' Video Campaign

On February 26, 2026, six weeks after the Court's Order and shortly after postcard notices began mailing on February 2, Respondents published a video through CRPA TV on YouTube titled "Glock Owners In California Just Got Opted Into a Lawsuit!?!"  The "CRPA TV" channel has 43,900+ subscribers. **Ex. A**, CRPA TV Website Article; **Ex. B**, YouTube Screenshot.

Michel is an attorney who serves as President of the California Rifle & Pistol Association ("CRPA") and Senior Partner at Michel & Associates, P.C. His firm represents CRPA and is identified as their registered agent. **Ex. C**, CRPA SOS Info Page. As of the date of this Motion, the video has received approximately 27,785 views. A full transcript of the video is attached as **Exhibit D**, Video Transcript.[1];Exhibit Q, Screen Recording of Full Video.  Some of the video's most misleading and disparaging comments include:

#### a.   *Disparagement of Litigation and Class Counsel*

The Video contains numerous false and misleading statements that, individually and collectively, constitute improper interference with the Court's order on class certification notice. We set forth below the most egregious examples:

- "*We saw thousands of Californians get their little post card in the mail…This goes deeper than you might think, intentions may not be where you thought they were coming from when originally reading your post card. Let's talk about it.*" (Video at 0:10-0:15).

-  "*It's widely known in the legal community that the only people who make any money or get anything real out of class actions are the class action lawyers.*" (3:50-4:10).

---

[1] The video is available at: https://www.youtube.com/watch?v=Ol6dH-_Ul4I. The quotes from the video are based on time-stamps on the YouTube video.  Johnson received the reporters transcripts moments before filing.

- *"The lawyers get millions and each class member gets a coupon for free bag of French fries."* (4:33–4:36). There were multiple references to class members receiving a "coupon" or a "bag of French fries." (17:55-19:00).

- *"This lawsuit is the same type of a racket. It is to shake Glock down for money for attorney's fees for class action lawyers."* (4:55–5:00).

- "*These lawyers specialize in trying to find some little thing that a number of different people are affected the same way by."* (10:57 – 11:10).

- Usually a class member *"gets something worth almost nothing for the class members but gets millions of dollars for the class action lawyers."* (18:27).

- *"A lot of these class action firms really look for ways to shake down businesses through a class action."* (18:35).

- *"This is . . . lawfare. . . . They just want to regulate the whole industry out of business."* (19:07–20:14).

These statements are materially false and misleading and are denigrating to this Court and its inherent authority to apply Rule 23 and the law. No settlement has been proposed, so Michel has no basis for claiming class members will receive nothing. This Court is overseeing this lawsuit and certified the class under Rule 23's demanding requirements, belying the characterization as a "racket." These statements are designed to deceive class members into believing that the litigation has no value to them and that only their attorneys will benefit; a characterization that is flatly contradicted by the Court's own approval of the class certification and control over the process.

### b. *Disparagement of the Named Plaintiff*

- Michel states that class action lawyers *"get a named plaintiff. Often, it's somebody who is in cahoots with the law firm."* (5:36-5:37).

This statement falsely implies that Johnson is colluding with Class Counsel rather than serving as a legitimate class representative approved by the Court.

### c. *Solicitation of Class Members to Assist Glock's Defense*

Throughout the Video Michel is clearly encouraging class members to opt out and contact Glock's counsel to support Glock in its defense of this case:

5

- *"[Y]ou can opt out of the class . . . I opted out. I then called the Renzulli firm that is representing Glock and said hey I love my Glock, let me know if I can help you guys . . . They were very thankful for the call . . . right now they can't contact you because until you opt-out you are represented by class action lawyers."* (7:09–8:06).

- "*What I did was I opted out. I contacted the New York law firm that's representing Glock and told them I'll help if I can be helpful."* (8:26).

- *"I know that Glock would love to hear from—they were grateful to hear from me when I called."* (19:01).

- Michel encourages viewers to opt-out and, like him, tell Glock to *"put me on the list of people that would be willing to help you if there's anything I can do to help and give you some kind of a testimonial"* and that *"they were very grateful for that."* (19:11).

- "*I opted out and contacted the New York law firm and volunteered to help.*" (19:42).

- A chapter heading titled **"Why You Have to Opt Out"** (14:28)*,* and another titled **"Deadline and Final Advice"** (20:13), include content encouraging viewers to opt out before April.

Michel's explicit direction to follow his lead and to opt out and "help Glock" reveals the video's purpose: advancing Defendants' litigation interests, not informing class members.

### d. Misrepresentation that the Lawsuit is "Lawfare" to Destroy the Firearms Industry.

Michel outwardly misstates that the lawsuit is brought for an improper purpose.

- He characterizes this lawsuit as "*lawfare.*" And states, "*this isn't just about Glock. This is about doing everything they can to make it difficult to sell firearms, manufacture and sell.*" (19:51).
- He states that behind this lawsuit, "*they're attacking people at the retail level, too . . . they just want to regulate the whole industry out of business.*" (20:05).

These statements grossly misrepresent the nature of this case, which is a consumer *protection* class action alleging omissions of safety defects in the pistols. By framing the lawsuit as an attack on the firearms industry, Michel is manipulating class members' political sympathies to influence their litigation decisions, rather than allowing them to make informed choices based on the merits of their claims as set forth in the Court-approved class notice.

6

### e. Statement that Michel is a "Class Member" Who "Opted-Out."

Michel states he received a class notice postcard, that he is a class member and opted-out. (7:24-7:31). He then leverages his status as CRPA President and a California licensed attorney to urge tens of thousands of views to follow his example. His role as an attorney and president of CRPA (one of the most influential gun owners' organizations in California) vastly amplifies the prejudice of his statements to the class. Notably, Class Counsel has been unable to verify with the Notice Plan administrator, EPIQ, that Michel is actually a class member who received a postcard or has opted out. Decl. R. Lewis, ¶ 17. This raises additional concerns about Michel's representations as a "fellow class member."

### f. Instruction on How to Opt Out and Invitation to Contact Glock

- Michel repeatedly instructs viewers that the prudent action is to follow his example and opt out: *"if you opt out of the class, you send the postcard back saying, "I'm opting out."* (6:48).
- He explains an issue just recently briefed by the parties in response to Glock's request to contact class members directly as mere "technical" representations, *"the interesting thing is when you're a member, as long as you're a member of the class, if you don't opt out, then you are technically represented by these class action lawyers. So Glock can't contact you or Glock's lawyers cannot contact you because you're represented technically represented by the class actin lawyers."* (7:06).
- Michel frames opting out as a means by which class members can "*help Glock*" and be placed on a list for testimonials (19:11).

The clear message to viewers is opt out so that Glock's lawyers can contact the opt-outs, and then volunteer to assist in Glock's defense.

### g. The Video's Impact and Respondents' Increased Efforts

Further, it is clear that this video is impacting class members. Indeed, class counsel was only first apprised of the existence of this video because they were contacted by one of the class members by text message who apparently thought they were contacting Glock's counsel and offered to "help" based on the information he heard on a "radio program" which would clearly suggest he heard the news from this broadcast on CRPA TV. **Ex. E**, Text Message.

7

The Video now has at least 27,785 views, 334 comments, and over 1,100 "likes" on YouTube. Moreover, the Video has been reposted and clips have been excerpted on numerous social media platforms using methods to increase its visibility, including on YouTube, YouTube Shorts, Instagram, Facebook, and X. These were reposted on each of these platforms multiple times. This demonstrates a clear and deliberate effort to "ratchet up" the solicitation and encouragement of opt-outs as the deadlines are approaching. *See* **Ex. F,** "Glock Owners Are Automatically Opted In?" (Posted March 23, 2026); **Ex. G**, "Why You Got That Glock Lawsuit Postcard." (Posted March 22, 2026); **Ex. H**, "That Lawsuit Notice in Your Mail Needs Your Decision?!" (Posted March 21, 2026); **Ex. I**, Instagram Post, "Glock Lawsuit? Expect a Coupon, Not a Payday."

These titles and captions are now even more misleading such as: "**Glock Lawsuit? Expect a Coupon, Not a Payday**." (Posted March 21, 2026), **Ex. J**.




Plaintiff's Ex Parte Application for TRO, Emergency Preliminary Injunction, and Order to Show
Case No. 3:20-cv-08807-WHO

**D.      The Established Relationship Between Respondents and Glock's Counsel**

Michel and Glock's counsel have an established, ongoing professional relationship through FFLGuard, a legal services organization for Federal Firearms Licensees. Both serve on FFLGuard's Attorney Advisory Group. **Ex. K**, FFL Guard Attorney Advisory Group; **Ex. L**, FFL Who We Are. They have appeared together at the FFLGuard Symposium, including on a 2021 panel titled "State of the Firearms Industry from the Legal Experts." **Ex. M**, Go GearFire FFL Guard Symposium. They have also served as counsel for co-defendants on the same matters. **Ex. N**, Co-Defendant Case. This relationship provides direct channels for coordination regarding California litigation such as this case.

### Attorney Members



**C.D. "Chuck" Michel**, *FFLGuard*'s Preferred Counsel for California Legislation and Litigation, provides all *FFLGuard* clients with guidance on selling into and out of California, a highly-specific and complex legal arena, and also participates in individual client matters as requested by the NCC. Chuck also oversees a specific add-on segment of the Program dedicated to California FFLs: *FFLGuard*'s California Yearly Service Plan.



**Christopher Renzulli** is a partner with the Renzulli Law Firm, and is its Preferred Counsel for Civil Litigation Matters.  Mr. Renzulli's specialized practice focuses on the firearms industry in many capacities, including the defense of product defect claims, preparation of product literature, conducting recalls and retrofits, and ATF compliance.



**John Renzulli** is the founding attorney of Renzulli Law Firm, where he focuses on providing practical, results-driven legal counsel to businesses and individuals navigating complex legal and regulatory challenges. With a reputation for clear guidance and strategic advocacy, John combines deep legal knowledge with a client-first approach tailored to real-world needs. He is

9

### E.     Evidence of Coordination

The circumstances strongly support an inference of coordination: (1) **Timing**: the video posted just six weeks after the Court denied Glock's motion; (2) **Content**: Michel's statements parrot Glock's litigation positions, including specific references to the "Armorer course," a primary defense talking point, as well as a discussion that was raised in response to Glock's Motion to contact class members, i.e., that class members are represented by class counsel so Glock's counsel cannot contact them, even though Glock's counsel would "very much appreciate" if class members did; (3) **Explicit advocacy**: Michel told viewers to opt out and "help Glock"; (4) **Undisclosed interests**: Michel failed to disclose his professional relationship with Glock's counsel through FFLGuard or litigation; (5) **Sophistication**: the video was professionally produced through an established platform with significant reach in the firearms community; and (6) **Glock's interests**: Glock has been repeatedly insisting that it obtain a complete list of all "opt-outs" and clearly has a targeted interest in contacting "opt-out" class members in an effort to support its defenses in this case, as demonstrated both by its Motion (DE 252), and its repeated follow-ups to obtain information for opt-outs, particularly after the Video was posted.

## III. ARGUMENT

### A.  This Court Has Broad Authority To Regulate Communications with Class Members.

Federal courts possess broad authority to regulate communications with class members. "Because of the potential for abuse, a district court has both the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). This authority derives from Rule 23(d) and the All Writs Act, 28 U.S.C. § 1651, and extends to non-parties who seek to undermine the class process. *See Id.; Williams v. Quinn*, 2010 U.S. Dist. LEXIS 77140, at *11 (N.D. Ill. July 27, 2010)

(court's power to ensure proper and adequate notice is provided to the class extends to non-parties that interfere with this duty to the court); *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (authority under All Writs Act extends to non-parties who interfere with the judicial process); *Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*, 2016 U.S. Dist. LEXIS 99720, at *19–20, *33–34 (N.D. Cal. July 29, 2016) (granting preliminary injunction and invalidating opt-outs obtained through misleading non-party communications and ordering corrective notice).

The issuance of a remedial order under Rule 23(d) does not require a finding of actual harm. *Georgine v. Amchem Prods.,* 160 F.R.D. 478, 498 (E.D. Pa. 1995). A remedy is appropriate if the communications at issue create a "likelihood" of abuse, confusion, or an adverse effect on the administration of justice. *Id.* In fact, courts have recognized that the extent of harm resulting from a campaign to solicit opt-outs "cannot be quantified with any precision," and hence "the Court must make its best estimate, taking into account the likely effect of the solicitation program based on its nature." *Id.* (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985)).

**B. Respondents Are Interfering with the Court's Approved Notice Plan.**

The Video directly interferes with and undermines the Court's approved Notice Plan. *Stark v. Patreon,* 2025 U.S. Dist. LEXIS 107441, *45 (N.D. Cal. June 5, 2025) ("improper communications from non-parties that attempt to do an end run around the court-approved notice of settlement are particularly concerning."). "Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts. . . . The damage from misstatements could well be irreparable." *Kleiner*, 751 F.2d at 1203; *McCarthy v. Medicus Healthcare Sol., LLC,* 2023 U.S. Dist. LEXIS 249351, *5 (D.N.H. July 11, 2023) ("Biased, unbalanced, or incomplete communications with current [class members] about the suit raise the potential for abuse and can "sabotage the goal of informed consent by urging exclusions on the basis of a one-sided presentation of the facts without opportunity for rebuttal.") (citing *Kleiner*).

11

Respondents' deliberate interference with the Notice Plan warrants sanctions and other immediate relief. *Williams,* 2010 U.S. Dist. LEXIS 77140 (imposing corrective sanctions directed to a non-party who interfered with a court-approved class notice plan); *Georgine,* 160 F.R.D. 478 (invalidating over 236,000 opt-outs and ordering curative relief against non-party attorneys who interfered with notice plan).

Here, Respondents' campaign resulted in multiple opt-outs and animus towards class counsel and the litigation. Many social media posts, across various platforms and websites, evidence Michel's influence. **Ex. P**, Collection of Opt-Out Comments.

### C.    The Court Should Issue a TRO or Preliminary Injunction

#### 1.    Legal Standard

A temporary restraining order is warranted where the movant demonstrates: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Perrin Bernard Supowtiz, LLC v. Morales,* 2022 U.S. Dist. LEXIS 69502, *3 (C.D. Cal. April 13, 2022).

#### 2.    Class Counsel Is Likely to Succeed on the Merits of the Injunction

##### i.    Respondents' Statements Are Materially Misleading.

As shown, damage from material misstatements to class members during a Court-approved notice plan warrants immediate relief. *Kleiner*, 751 F.2d at 1203; *McCarthy,* 2023 U.S. Dist. LEXIS 249351, at *5; *Stark,* 2025 U.S. Dist. LEXIS 107441 at *45.

Michel's characterization of this case as a "racket" is demonstrably false. This Court has already certified the class under Rule 23's demanding standards. His claim that class members will receive "nothing," a "coupon," or a "bag of French fries" is speculative and misleading. No settlement

12

has been proposed and no relief has been granted by the Court. Courts have found substantially similar mischaracterizations to be materially misleading warranting relief against non-parties to preclude interference with a court-approved notice program. *See Georgine*, 160 F.R.D. at 491 (finding communications misleading where they contained one-sided attacks without discussing benefits and failed to disclose drafter's financial motives); *Stark,* 2025 U.S. Dist. LEXIS 107441, at *45. As the Court in *Stark* explained, "the class notice is 'crucial' to the entire scheme of Rule 23 in that it provides a neutral description that enables class members to conduct an 'independent analysis of their own self-interest' in determining whether to object to or opt out of a settlement." *Id.*

Respondents' Video is the antithesis of neutral, objective information that Rule 23 contemplates. It is a one-sided, misleading presentation deliberately designed to steer class members toward opting out and volunteering to assist Defendants; precisely the type of improper interference courts have condemned. *Accord Retiree Support Group,* 2016 U.S. Dist. LEXIS 99720, at *20-23 (finding communications contained "significant misstatements and omissions" and were "misleading" constituting grounds to invalidate opt-outs and issue a curative notice). Indeed, class members have a "due process right not to be misled while they are deciding whether to participate in a class settlement affecting their rights," and the harm from misleading communications is "irreparable." *Id.* at *24-25. Michel's failure to disclose his professional relationship with Glock's counsel further compounds the deception. *Georgine,* 16o F.R.D. at 495–96.

### ii.    Respondents' Conduct Constitutes Improper Interference.

Courts have consistently restricted communications designed to induce opt-outs through misleading tactics. *See Kleiner*, 751 F.2d at 1197–1203 (defendant's telephone campaign soliciting opt-outs invalidated); *Williams*, 2010 U.S. Dist. LEXIS 77140, at *11–13 (communications from non-parties with financial interest found misleading by implication); *Retiree Support Grp. of Contra Costa Cnty.*, 2016 U.S. Dist. LEXIS 99720, at *19–20, *33–34 (invalidating opt-outs obtained through

13

misleading non-party communications and ordering corrective notice); *Stark,* 2025 U.S. Dist. LEXIS 107441 at \*45 (invalidating 927 opt-outs obtained through third-party's misleading and incomplete communications and ordering curative notice); *Georgine,* 160 F.R.D. at 478 (invalidating over 236,000 opt-outs and ordering curative relief against non-party attorneys who interfered with notice plan).

### iii.    Irreparable Harm

Absent immediate relief, Respondents' misleading video will continue to reach class members during the critical notice period, inducing opt-outs based on false information. This harm is irreparable for three reasons.

First, class members who opt out based on misleading statements cannot reverse their decisions after the April 20 deadline without Court intervention. In *Retiree Support Group*, this Court found that class members "have a due process right to not be misled while they are deciding whether to participate in a class settlement affecting their rights." 2016 U.S. Dist. LEXIS 99720, at \*25.

Second, the integrity of the entire class mechanism is compromised. "In view of the tension between the preference for class adjudication and the individual autonomy afforded by exclusion, it is critical that the class receive accurate and impartial information." *Kleiner*, 751 F.2d at 1202.

Third, the video remains online and accumulates views daily. The longer it circulates, the more difficult and costly corrective measures become. *See Georgine*, 160 F.R.D. at 498.

### iv.    The Balance of Equities and Public Interest Favor Injunctive Relief

The balance of equities tips decisively in Plaintiff's favor. On one side are the fundamental rights of absent class members to receive accurate information. On the other is Respondents' interest in disseminating statements that are demonstrably misleading, and that this Court has effectively prohibited Glock from making directly. Respondents have no legitimate interest in spreading

14

misinformation. "Untruthful or misleading speech has no claim on first amendment immunity." *See Kleiner,* 751 F.2d at 1204 ("No constitutional objection thus inheres in banning forms of commercial communications more likely to deceive the public than to inform it . . .") *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003); *Georgine,* 160 F.R.D. at 515-516 (the court's compelling interest in ensuring accurate notice and protecting the integrity of the judicial process outweighed any speech concerns). The narrowly tailored relief requested, removal of the video and a corrective statement, imposes minimal burden. *See Retiree Support Grp.*, 2016 U.S. Dist. LEXIS 99720, at *27–30 (granting corrective measures and finding they imposed minimal hardship). The public has a strong interest in the fair administration of class actions and the enforcement of court orders.

### 3.    Ex Parte Relief is Appropriate

Rule 65(b)(1) permits a TRO without notice if: (A) specific facts clearly show immediate and irreparable injury before the adverse party can be heard; and (B) the movant's attorney certifies efforts made to give notice and reasons why it should not be required.

Both requirements are satisfied. The video has been online since February 26, 2026, has now been reposted several times over many platforms over the last week (with increasingly misleading headlines), and the opt-out deadline is April 20, 2026, less than four weeks away. Each day compounds the harm. The time required for noticed briefing and a hearing would likely consume the remaining notice period. *See Kleiner*, 751 F.2d at 1203 ("The damage from misstatements could well be irreparable."). Additionally, advance notice could prompt Respondents to accelerate their campaign before relief issues.

15

Class Counsel certifies that it has identified and obtained contact information for Respondents and will serve them contemporaneously with or immediately following filing.[2]

In the alternative, if the Court declines *ex parte* relief, Class Counsel requests an expedited briefing schedule with a hearing no later than 14 days from filing, shortened response time of 3–5 days, and entry of the requested preliminary injunction following the hearing.

**D.      The Court Should Issue an Order to Show Cause**

**1.      Legal Standard.**

Civil contempt requires clear and convincing evidence that "the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999). Non-parties who act in concert with a party to violate a court order may also be held in contempt. *LifeScan Scot., LTD v. Shasta Techs., LLC,* 2013 U.S. Dist. LEXIS 122858, *15 (N.D. Cal. Aug. 28, 2013); *Peterson v. Highland Music,* 140 F.3d 1313, 1324 (9th Cir. 1998) (non-party may be held in contempt if they abet the defendant's violation of the court order). Courts also possess inherent authority to sanction conduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991).

**2.      To the Extent Glock or its Counsel Coordinated with Respondents, They Have Violated this Court's Orders and Should Be Sanctioned.**

The Court's January 13 Order (DE 258) is clear and unambiguous: Glock and its counsel cannot contact class members or solicit opt-outs. Glock moved this Court for leave to contact absent class members, representing that it did not intend to solicit opt-outs. The Court denied the motion and underscored the impropriety of such contacts. DE 258.

While the Court implied that Glock would be able to contact members who opted-out, that consideration assumed there would be an untampered process for the Court-approved Notice Plan.

---

[2] Counsel has also issued a cease-and-desist letter to Respondents. *See* **Ex. O**, Cease and Desist Letter.

Yet Respondents' video accomplishes precisely what Glock represented it would not do, and what the Court prohibited. It is a direct campaign by an attorney, with direct relationship to Glock's counsel, to "pump up" the opt-outs to support Glock's defense. The evidence set forth above strongly suggests that Glock has violated this Order by using Respondents as a proxy to get their intended message out to class members. The timing, content, established FFLGuard and litigation relationship, and explicit direction to "help Glock" support a strong inference of coordination.

The Court's Order specifically cited Rule 4.2 as a basis for prohibiting contact with class members. Rule 4.2's prohibition would be meaningless if attorneys could circumvent it by using proxies. Rule 8.4(a), Cal R. Pro. Conduct. provides that a lawyer cannot do through acts of another what they are prohibited from doing themselves.  If Glock's counsel coordinated with, directed, or encouraged Michel's contact with class members, they have violated Rule 4.2 and this Court's Order as surely as if they had made the contact themselves. Even apart from the Court's Order, Glock and its counsel had an independent obligation under Rule 4.2 not to contact class members. No separate court order was needed to enforce that prohibition. *See In re Federal Skywalk Cases,* 97 F.R.D. 370 (W.D. Mo. 1983). Indeed, any attempt to "evade the Court's supervisory authority" may constitute contempt of this Court. *Id.*  Glock's and its counsel cannot circumvent Rule 4.2 through a proxy or intermediary. *Truitt v. Superior Court* 59 Cal. App. 4th 1183, 1188 (1997) (rule applies to communication with an investigator (indirect communication) hired by a party with another party's employee).

### 3.  Appropriate Sanctions.

Upon a finding of contempt, violation of the Court's Orders, or interference with the Court's approved Notice plan under Rule 23, appropriate sanctions should: (a) compensate the class for harm caused, including corrective notice costs and attorneys' fees; (b) coerce compliance; and (c) deter future misconduct. *See In re Federal Skywalk Cases*, 97 F.R.D. at 378; *Kleiner*, 751 F.2d at 1209-

1210. To the extent the interference has irreparably tainted the notice process entirely, and Glock or its counsel were complicit, stronger sanctions including entry of default or striking of defenses should be considered.

Therefore, the Court should issue an Order to Show Cause and hold a hearing to consider whether Glock, its counsel, and Respondents have violated the Court's Orders, interfered with the Court-approved Notice Plan, and issue the appropriate sanctions.

### IV. RELIEF REQUESTED

For the foregoing reasons, Class Counsel respectfully requests that this Court:

1. **Remove Misleading Content:** Direct Respondents to immediately remove the February 26, 2026 video, and any excerpts of the video, from YouTube and all other platforms and to refrain from posting substantially similar content;

2. **Corrective Statement:** Direct Respondents to issue a Court-approved corrective statement through the same channels;

3. **Corrective Notice Costs:** Direct Respondents to bear all costs of any supplemental corrective class notice;

4. **Invalidate or Permit Rescission of Opt-Outs:** Declare void any opt-outs resulting from Respondents' conduct, and provide those class members an opportunity to make an informed decision after corrective notice. *See Georgine*, 160 F.R.D. at 502–03; *Kleiner*, 751 F.2d at 1199; *Retiree Support Grp.*, 2016 U.S. Dist. LEXIS 99720, at *29;

5. **Attorneys' Fees and Costs:** Award Class Counsel all reasonable fees and costs incurred in securing the relief sought in this Motion. *See In re Federal Skywalk Cases*, 97 F.R.D. at 378;

6. **Order to Show Cause:** Issue an Order to Show Cause requiring Glock, Glock's Counsel, and Respondents to show cause why they should not be held in civil contempt or sanctioned for violating

or directly interfering with the Court's Discovery Order (DE 258) and Order Approving Class Notice (DE 239), or by otherwise interfering with the Court's approved Notice Plan, and authorizing limited expedited discovery into the nature and extent of coordination, including all communications between Michel, CRPA, and Glock/Glock's counsel regarding this litigation, the Video, FFLGuard channels, the Court's Orders, any compensation provided, and any drafts or talking points, among other relevant evidence;

7. **Sanctions:** Upon a finding of contempt or violation of the Court's Orders, or interference with the Court's Notice Plan, impose compensatory sanctions, coercive sanctions, and such other sanctions as necessary, including entry of default, preclusion of evidence obtained through the opt-out campaign, attorney's fees, costs, costs of corrective notice (if possible), and other appropriate sanctions; and

8. **Further Relief:** Grant such other and further relief as the Court deems just and proper.

### V. CONCLUSION

Respondents' misleading communications threaten irreparable harm to absent class members and undermine this Court's authority. The evidence demonstrates that Glock and Glock's counsel, having been denied permission to contact class members, may be using Respondents as a proxy to accomplish what this Court prohibited. Immediate relief is warranted.

Dated: March 26, 2026

By: /s/ *Robert K. Lewis*

Paul R. Kiesel, State Bar No. 119854
kiesel@kiesel.law
Jeffrey A. Koncius, State Bar No. 189803
koncius@kiesel.law
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444
Fax: 310-854-0812

Robert K. Lewis, *Pro Hac Vice*
rob@lewislawfirm.com
Amy M. Lewis, *Pro Hac Vice*
amy@lewislawfirm.com
**LEWIS AND LEWIS
TRIAL LAWYERS, PLC**
21850 N. Alma School Road, Suite 103-637
Scottsdale, Arizona 85262
Tel: 602-889-6666

19

Jeremy Alberts, *Pro Hac Vice*
 jalberts@wwhgd.com
**WEINBERG WHEELER HUDGINS
GUNN & DIAL LLC**
6385 S. Rainbow Blvd. Suite 400
Las Vegas, Nevada 89118
Tel: 702-938-3838

*/s/ Alexander Heydemann*
Nicholas Panayotopoulos, *Pro Hac Vice*
 npanayo@wwhgd.com
Alexander Heydemann, *Pro Hac Vice*
 aheydemann@wwhgd.com
**WEINBERG WHEELER HUDGINS
GUNN & DIAL LLC**
3344 Peachtree Road, NE
Atlanta, Georgia 30326
Tel: 404-876-2700

*Attorneys for Plaintiff
and the Certified Class*

**CERTIFICATE OF SERVICE**

The foregoing document was filed with the clerk of the court using CM/ECF system and

automatically served upon registered recipients appearing in this case.

John F. Renzulli (Pro Hac Vice)
Christopher Renzulli (Pro Hac Vice)
Howard B. Schilsky (Pro Hac Vice)
**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, NY 10601
Telephone: (914) 285-0700
Facsimile: (914) 285-1213
jrenzulli@renzullilaw.com
crenzulli@renzullilaw.com
hschilsky@renzullilaw.com

Paul G. Cereghini (SBN 148016)
**BOWMAN AND BROOKE LLP**
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: (408) 279-5393
Facsimile: (408) 279-5845
paul.cereghini@bowmanandbrooke.com

Carissa Casolari (SBN 292878)
**BOWMAN AND BROOKE LLP**
970 West 190th Street, Suite 700
Torrance, CA 90502
Telephone: (310) 768-3068
Facsimile: (310) 719-1019
Carissa.casolari @bowmanandbrooke.com

Donald Falk
**SCHAER JAFFE LLE**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 562-4942

Sean Eskovitz
**ESKOVITZ LAW LLP**
1217 Wilshire Blvd, #3683
Telephone: (323) 821-5836
seane@eskovitz.com
*Attorneys for Defendants Glock, Inc*
*and Glock Ges.m.b.H.*

The foregoing document was mailed to the following non-parties at their registered agent address or principal place of business as set forth below:

California Rifle & Pistol Association, Incorporated
c/o Tiffany Cheuvront (Registered Agent)
Michel & Associates
180 E Ocean Blvd, Suite 200
Long Beach, CA 92802.

Carl Dawson Michel
Michel & Associates
180 E Ocean Blvd, Suite 200
Long Beach, CA 92802

Dated: March 26, 2026                    By: /s/ *Robert K. Lewis*

21