Paul R. Kiesel, State Bar No. 119854
*kiesel@kiesel.law*
Jeffrey A. Koncius, State Bar No. 189803
*koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444
Fax: 310-854-0812

Jeremy Alberts, *Pro Hac Vice*
*jalberts@wwhgd.com*
**WEINBERG WHEELER HUDGINS GUNN & DIAL LLC**
6385 S. Rainbow Blvd. Suite 400
Las Vegas, Nevada 89118
Tel: 702-938-3838

Robert K. Lewis, *Pro Hac Vice*
*rob@lewislawfirm.com*
Amy M. Lewis, *Pro Hac Vice*
*amy@lewislawfirm.com*
**LEWIS AND LEWIS TRIAL LAWYERS, PLC**
21850 N. Alma School Road, Suite 103-637
Scottsdale, Arizona 85262
Tel: 602-889-6666

Nicholas Panayotopoulos, *Pro Hac Vice*
*npanayo@wwhgd.com*
Alexander Heydemann, *Pro Hac Vice*
*aheydemann@wwhgd.com*
**WEINBERG WHEELER HUDGINS GUNN & DIAL LLC**
3344 Peachtree Road, NE
Atlanta, Georgia 30326
Tel: 404-876-2700

*Attorneys for Plaintiff and the Certified Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN C. JOHNSON, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GLOCK, INC., a Georgia Corporation; GLOCK Ges.m.b.H, an Austrian entity; JOHN and JANE DOES I through V; ABC CORPORATIONS I-X, XYZ PARTNERSHIPS, SOLE PROPRIETORSHIPS and/or JOINT VENTURES I-X, GUN COMPONENT MANUFACTURERS I-V,<br>Defendants. | CASE NO.: 3:20-cv-08807-WHO<br><br>**Motion for Sanctions - Spoliation of Evidence**<br><br>Judge:     Hon. William H. Orrick<br>Date:      Wednesday, June 17, 2026<br>Time:      2:00 p.m.<br>Place:     Courtroom 2, 17th Floor<br><br>**FILED UNDER SEAL** |

**TABLE OF CONTENTS**

Notice of Motion .................................................................................................................. iii

I.      Summary of Motion ..................................................................................................1

II.     Background ................................................................................................................2

   A. Elements of the Class Claims – Importance of the Warranty Pistols and Emails....................2

   B. Glock's History of Prior Litigation and Warranty Claims........................................................2

   C. The Discovery Record on These Issues: A Chronology of Concealment.............................3

   D. Glock Confirms That Physical Inspection Is Critical .............................................................7

   E. Burdett and Murphy Reveal Glock's Ongoing Destruction of Critical Evidence ..................8

III.    Legal Standard .......................................................................................................11

   A. The Court's Inherent Authority.............................................................................................11

   B. The Standard for Destruction of ESI Under Rule 37(e)........................................................12

IV.     Argument ...............................................................................................................12

   A. The Elements of Rule 37(e) are met Regarding the Emails..................................................13

   B. Independent of Rule 37(e), Glock Had a Duty to Preserve the Evidence..............................14

   C. Glock Acted in Bad Faith......................................................................................................15

   D. Glock's Pattern of Affirmative Concealment Establishes Intent to Deprive .........................15

   E. The Destroyed Evidence Was Relevant and Its Loss Is Highly Prejudicial ..........................17

   F. Glock Used Its Own Spoliation as a Sword Against Plaintiff's Experts ................................17

V.      Sanctions ................................................................................................................19

   A. Default on Liability Is the Appropriate Sanction..................................................................19

      1. Expeditious Resolution and Docket Management .......................................................20

      2. Prejudice to Johnson ..................................................................................................20

3.   Public Policy Favoring Merits Adjudication ............................................21

4.   Availability of Lesser Sanctions ...........................................................21

B.   In the Alternative: Issue Preclusion ...............................................................21

C.   In the Alternative: Adverse Inference Instruction..........................................22

D.   Attorney's fees ................................................................................................22

VI.   Conclusion ...................................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
    881 F. Supp. 2d 1132 (N.D. Cal. 2012) ......................................................................14

*Colonies Partners, L.P. v. County of San Bernardino*,
    2020 U.S. Dist. Lexis 56922 (C.D. Cal. Feb. 27, 2020) .............................................13

*Erlandson v. Ford Motor Co.*,
    2009 U.S. Dist. LEXIS 101316 (D. Or. Oct. 29, 2009) ..............................................21

*Jordan v. Ford Motor Co.*,
    No. 2:09-cv-0865-HRH, 2010 U.S. Dist. LEXIS 160835 (D. Ariz. Apr. 16, 2010) ...................16

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006)........................................................................................16

*Newberry v. County of San Bernardino*,
    750 F. App'x 534  (9th Cir. 2018) ...............................................................................12

*Origami Owl, LLC v. Palmer*,
    No. CV-12-02290-PHX-SRB, 2013 U.S. Dist. LEXIS 192162 (D. Ariz. Apr. 16, 2013) ..........12

*Pettit v. Smith*,
    45 F. Supp. 3d 1099 (D. Ariz. 2014)............................................................................12

*Pirv v. Glock, Inc.*,
    No. 3.06-cv-00145 (D. Or. 2010)....................................................................................1

*Porter v. City & County of San Francisco*,
    2018 U.S. Dist. LEXIS 151349 (N.D. Cal. Sept. 5, 2018) ..........................................12

*Silvestri v. GMC,*
     271 F.3d, 583 (4th Cir. 2001)................................................................................................21

*Slep-Tone Entm't Corp. v. Granito*,
     No. CV 12-298 TUC DCB, 2014 U.S. Dist. LEXIS 2023 (D. Ariz. Jan. 7, 2014).....................15

*State Farm Fire & Cas. Co. v. Broan Mfg. Co.*,
     523 F. Supp. 2d 992 (D. Ariz. 2007).......................................................................................16

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Co.*,
     982 F.2d 363 (9th Cir. 1992)...................................................................................................12

*Wm. T. Thompson Co. v. Gen. Nutrition Corp.,*
     593 F. Supp. 1443 (C.D. Cal. 1984) .......................................................................................15

**Rules**

F.R.C.P. Rule 37(e) ........................................................................................................12, 13, 14, 15

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that on Wednesday, June 17, 2026 at 2:00 p.m., before Hon. William H. Orrick in Courtroom 2 of the 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff, by and through undersigned Class Counsel, hereby moves this Court for sanctions against Defendants Glock, Inc. and Glock Ges.m.b.H. including: 1) Entry of default against Defendants for willful spoliation of evidence; 2) Alternatively, issue preclusion on elements of Plaintiff's claims and Glock's defenses; 3) Alternatively, an adverse inference instruction; 4) An award of attorney's fees and costs; and 5) Such other relief this Court deems just and proper. This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Robert K. Lewis and exhibits thereto, the pleadings and records on file, and such other matters as may be presented to the Court.

## I.        Summary of Motion

Since October 2020, when this lawsuit was filed, Glock has received at least 693 warranty claims involving catastrophic pistol failures. Glock's own warranty process requires customers to return failed pistols so that Glock's armorers can inspect the components and determine the cause of failure. Glock's employees and experts concede the physical evidence of the pistol parts is often the only reliable means of establishing the cause of the failure. After inspecting the pistol components, Glock warranty employees then often summarize their finding in emails. Johnson requested access to both the pistol components and the warranty emails in September of 2021. Glock placed procedural objections to the request for production and asserted work product privilege over the materials. It turns out they were deleting the emails and crushing the pistol components all along.

In December of 2025, Johnson deposed Glock warranty employees and learned that Glock destroyed the pistols; despite Johnson's repeated requests to inspect them. In addition, for years, Johnson has sought internal communications and emails concerning pistols case failures. After a discovery dispute in July 2023, the Court ordered this production. Glock subsequently reported that Glock had produced all documents. At the recent depositions, however, Glock armorers testified that this entire time they have been deleting their emails that summarize their findings regarding the cause of warranty pistols failures and deleting customer emails and photographs describing the pistol failures. Furthermore, the armorers testified that no one told them to stop deleting these emails.

Johnson is asking for default as there is evidence of bad faith. This is not the first time that Glock, Inc. and its lawyers have been sanctioned for this very same conduct. *Pirv v. Glock, Inc.*, No. 3.06-cv-00145 (D. Or. 2010); [Lewis Decl., Exh. AA, pp. 22-23].[1] The Court held:

> Glock, Inc. either lost or destroyed documents after it had notice that they were potentially relevant…. More importantly, the evidence shows that Glock, Inc. failed to either retain or produce several

---

[1] Christopher Renzulli and John Renzulli were lead counsel in *Pirv v. Glock, Inc.*

documents dating from 2007 and 2008 and has not produced a single email, despite evidence that it sometimes sent emails in relation to **warranty** claims.

*Pirv v. Glock, Inc.*, No. 3.06-cv-00145 at \*\*22-23 [Lewis Decl. ¶ 29, Exh. AA, pp. \*22-23] (emphasis added). The Court found that Glock's conduct prejudiced the Plaintiff, but the Court did not default Glock because it had not previously warned it against destruction of evidence. *Id.* at 23. The Court awarded an adverse inference as a sanction for Glock's conduct. Here, the end result is Glock destroyed the pistol components (the best evidence of defect) and destroyed the findings of the only persons to have inspected the failed pistols. This was no accident. Accordingly, default is the appropriate sanction.

## II.    Background

### A. Elements of the Class Claims – Importance of the Warranty Pistols and Emails

This is a consumer protection class action brought under California's Unfair Competition Law (UCL), Consumers Legal Remedies Act (CLRA), False Advertising Law (FAL), and common-law fraudulent omission theory. Johnson alleges that Glock knowingly failed to disclose that its pistols incorporate an unsupported chamber design that renders the pistols unreasonably dangerous. Glock's defense (on the merits) rests almost entirely on the premise that its design does not create an unreasonable safety hazard and that its failure to disclose is therefore not material. Employing circular reasoning, Glock contends that whenever one of its pistols has exploded, the cause was defective ammunition. It knows the ammunition was defective because the pistol exploded. The destroyed warranty evidence is the most direct rebuttal to that circular defense.

### B. Glock's History of Prior Litigation and Warranty Claims

Glock pistols entered the stream of commerce in 1986. [DE 184-8, Nixon Report, Exh. F, Exh. 5]. Personal injury lawsuits stemming from case ruptures followed. Since that time, Glock has been sued several times in design defect claims arising from case ruptures. [Lewis Decl. ¶ 2, Exh. A,

Litigation Chart]. At any given time over the past decade, Glock has had two and sometimes three personal injury cases pending against it stemming from case ruptures. [*Id*.]

More frequent than the personal injury lawsuits are the warranty claims where the pistol explodes but no personal injury lawsuit results. Since 2020 alone, Glock has disclosed 793 warranty claims involving catastrophic pistol failures. [*Id.* at ¶ 3, Exh. B, Warranty List]. ███████████

███████████████ [*Id*. ¶ 5, Exh. D, Depo Burdett, pp. 83:19-23]. ██████████████████████

███ [*Id.*] ███████████████████████

████████████████████████████████

███████████████████ Case ruptures often leave behind witness marks and other metallurgical evidence on the pistol components and the ammunition brass. In some cases (but not all), the only reliable way to determine whether a failure was caused by the unsupported chamber design or by defective ammunition is to inspect the remaining pieces of the pistols. [*Id*., Exh. Z, Bosch Decl. ¶¶ 3,5,7].

Despite the importance of this evidence, Glock has systematically destroyed every returned warranty pistol unless it was returned to the customer. [Exh. D, Depo Burdett, pp. 61:19-62:25; 59:2-11: 83:19-23]. Glock crushed all warranty pistols not returned to the customers; including some that belonged to class members who suffered case ruptures from the unsupported chamber design. [Lewis Decl. ¶ 30, Exh. BB, Class Member Warranty Claims.]

████████████████████████████████

[Exh. D, Burdett Dep*., *pp 70:20-71:10; 99:21-23]. These have been deleted as well. Even though the Court ordered production of internal documents concerning the Special Safety Valve, Glock never issued a litigation hold. Glock never instructed their employees to stop destroying pistols or emails even though Johnson has been requesting this evidence for years and the Court ordered them to

produce these documents. [*Id*. ¶ 5, Exh. D, Burdett Dep*.,* at pp. 170:12-171:8; Exh. C, Murphy Dep., pp. 99:22-100:5; DE 110, 113, 119].

### C. The Discovery Record on These Issues: A Chronology of Concealment

Glock's destruction of evidence was intentional.

**October 1, 2020:** Johnson filed the original complaint in this action. [DE 1-2].

**September 23, 2021:** Johnson served Glock with discovery requests seeking all service orders related to any ammunition-related failure for any class pistol, expressly including emails, gun components, photos, videos, and warranty information. [Lewis Decl. ¶ 6, Exh. E].

**January 5, 2022:** Glock interposed procedural objections but did not disclose that it had been destroying warranty pistol components, emails, and photographs throughout the entire preceding period or that it intended to continue doing so. [*Id*. ¶ 7, Exh. F].

**January 5, 2022 – February 28, 2023:** Johnson repeatedly demanded internal warranty communications by letter and in meet-and-confers. Glock denied possessing responsive emails and never disclosed that warranty department emails were being deleted in the ordinary course. [*Id*. ¶¶ 8, 9, Exh. G, H].

**March 17, 2023:** Glock denied in writing ever possessing internal warranty emails or other internal communications concerning case ruptures. [*Id.* ¶ 10, Exh. I].

**May 26, 2023:** Johnson demanded in writing that Glock produce an affidavit confirming that there were no internal warranty emails or alternatively supplement its production. [*Id*. ¶ 11, Exh. J].

**July 19-28, 2023:** Johnson sought relief from the Court:

> Defendants deny any internal documents on the subject but at the same time refuses to avow that there are none. They will not produce an affidavit from a Glock representative stating there are none. It is hard to believe there is not one internal document, email, memorandum, letter or report concerning this design and the issues it has caused over the decades. [DE 110].

The Court granted Johnson's request for discovery and ordered another meet and confer.  [DE 113]. Glock then agreed it was going to produce all internal documents including emails. [DE 119].

**August 31, 2023:** Johnson requested that all gun components and cartridge cases from the warranty department be produced at the Rule 30(b)(6) deposition of Glock, Inc. [Lewis Decl. ¶ 12, Exh. K].

**September 8, 2023:** Johnson emailed Glock requesting inspection of the pistol components. [*Id*. ¶ 14, Exh. M, Lewis Email].  Glock immediately objected saying that Johnson would have to provide an inspection protocol and Glock's experts would have to attend the inspection of Glock warranty pistols.  Glock did not disclose that they had already destroyed the pistol components and intended on continuing to do so.  [*Id*. ¶ 15, Exh. N, Schilsky Email]. Glock formally objected to producing the gun components and cartridge cases on procedural grounds only. It asserted the request was not in proper format, that no inspection protocol had been provided to them for the inspection of the pistol components, and that Johnson had not allowed sufficient time under the rules to gather the components. In its formal objection, Glock did not disclose that it had already destroyed the evidence being requested. To the contrary, Glock reserved the right to have their experts attend "any and all inspections" of the pistol components and refused to produce the pistol components themselves because they were "protected by the consulting expert privilege."  [*Id*. ¶ 13, Exh. L].

**October 12, 2023:** Johnson filed his Motion for Class Certification on the Court deadline. [DE 148].

**January 30, 2024:** Glock deposed Johnson's expert David Bosch, Ph.D. and impeached Dr. Bosch for not inspecting the warranty pistol components.



[*Id.* at Exh. O, Dep. David Bosch, Ph.D., pp. 212:2–213:11 (Objections Removed)].

[*Id.* at Exh. O, Dep. Bosch, Ph.D., pp. 138:5–139:24 (Objections Removed)].

**January 31, 2024:** Glock deposed Johnson's expert John Nixon and impeached him for not inspecting the warranty pistol components. [Lewis Decl. ¶ 17, Exh. P].

[*Id.* at Exh. P, Nixon Dep., pp. 231:14 – 232:2, 228:18-229:8].

**February 23, 2024:** Glock moved to exclude Dr. Bosch and Mr. Nixon, arguing they had not inspected enough failed pistols. In Glock's motions to strike Johnson's experts it did not disclose to the Court that Johnson had requested the pistols, Glock had refused the inspection, and that Glock had actually (secretly) destroyed them. [DE 160 at 5:20-21; DE 161 at 1:23–2:2, 8:22–9:7]. Glock argued:

> Nixon wants to rely on a patchwork of misrepresented service orders and claims to say that Glock pistols erratically explode. And although he acknowledges the importance of independently investigating each firearm failure to determine its cause, he dispenses with this sound practice to reach his conclusion in the case.

[DE 161 at 1:23–2:2, 8:22–9:7].

**December 7, 2024:** Johnson again requested that Glock provide the rest of the warranty records and schedule a date for deposition and an opportunity to inspect pistol components. [*Id*. ¶ 18, Exh. Q, Alberts Letter].

**October 13, 2025:** Glock served responses to outstanding discovery showing that Glock, Inc. was destroying post litigation warranty pistols. [*Id*. ¶ 20].

**November 6, 2025:** Johnson sent Glock a discovery deficiency letter reiterating his request for all internal communications regarding the "safety valve" design and seeking the ESI search terms and custodians used. [*Id*. ¶ 21, Exh. S].

**November 19, 2025:** Johnson noticed the depositions of Glock warranty employees Russell Murphy and Anthony Burdett, requested that the depositions proceed in person in Atlanta, and specifically requested production of warranty gun components. Because of the October 13th, 2025, disclosure of the destruction of warranty pistols Johnson requested written protocol for destruction of warranty pistols. [*Id*. at ¶¶ 22, 23, Exh. T, U].

**November 26, 2025:** Glock responded to the November 6, 2025 discovery deficiency letter that it had "conducted a comprehensive search for all correspondence or communications related to the safety valve and did not locate any," and that "there are no internal emails or written communications discussing the safety valve or any decision to market this passive safety feature to consumers." Glock refused to identify the custodians or ESI search terms it used. [*Id*. at ¶ 24, Exh. V]. Glock did not disclose that warranty department emails were being deleted throughout the litigation.

**December 1, 2025:** Glock objected to the notice of depositions of warranty department employees and disclosed that it had been destroying all warranty pistol components throughout the litigation. [Lewis Decl. ¶¶ 25, 26, Exh. W, X].

**December 10-11, 2025:** Johnson deposed Anthony Burdett, Glock's Lead Technical Service Representative overseeing the 22-person warranty department and Russell Murphy, a second warranty employee and Glock armorer. Burdett and Murphy confirmed that Glock has been destroying warranty pistol components throughout their tenure, that no one had ever instructed them to stop, and that no one had asked them to preserve or produce armorer emails. They further confirmed that Glock requires customers experiencing catastrophic failures to return their pistols and that inspection is often necessary to determine the cause. [Lewis Decl. ¶¶ 4, 5, Exh. C, Murphy Dep., pp. 37:15-38:9; 40:10-18; Exh. D, Burdett Dep*.,* pp. 71:17-73:10; 85:10-86:17; 86:22-87:1; 87:3-89:5; 92:25-93:11].[2]

**D.      Glock Confirms That Physical Inspection Is Critical**

[black redaction]

[*Id.* ¶ 27, Exh. Y, Guevara Dep. pp. 76:19 - 77:24]. Glock's mechanical engineering expert Derek Watkins agrees claiming "without root cause analysis, a determination of the mechanisms for failure cannot be determined."[3] [DE 157-3, Watkins Decl. at ¶ 91]. Glock's firearms training and safety expert Emanuel Kapelsohn agrees.[4] [DE 157-2, Kapelsohn Decl. at ¶165]. Indeed, Glock

---

[2] On December 10, 2025, at the deposition of Anthony Burdett, Glock claims that it disclosed to Johnson on "telephone calls" years earlier (one allegedly being on August 31, 2023), that Glock, Inc. had been destroying the warranty pistols all along.  This is belied by the extensive written record where Johnson continually requested access to the pistol components and Glock only placed procedural objection or claimed that its own experts would have a right to attend the inspection. [Lewis Decl., Exh. D, Burdett Dep. 171:18-172:7].[2]

[3] ¶ 91.  "To determine the root cause of a shell rupture event, sometimes called catastrophic firearm failure, each event must be evaluated independently. There are many factors that can induce a shell rupture. Without root cause analysis, a determination of the mechanism for failure cannot be determined." [DE 157-3, Watkins Decl. at ¶ 91].

[4] DE 157-2, Kapelsohn Decl. at ¶ 165] "Without inspecting the evidence and technically evaluating each instance of a "kaboom," which plaintiff's consultants have not done, they are simply not in a position to draw the conclusion, as they have, that every Glock "ka-boom" – or in fact <u>any</u> Glock "ka-boom" – is the result of the Glock's chamber throat design, rather than the result of another of the above factors, or some other factor I have not listed."

challenged Johnson's experts on this basis as well. [DE 160, p. 5:20 (Motion to Exclude Bosch); DE 161, p. 1:7-9 (Glock's Motion to Strike Nixon)]. When Glock filed these declarations with the Court they had objected to Johnson's inspection of the parts on procedural grounds (and asserted work product privilege) and had not disclosed that Glock was crushing the pistols or that Glock intended to continue crushing the pistols. Glock knew the importance of this evidence and kept crushing the pistols.  According to Glock's experts, the pistols were the most valuable evidence in the case.

**E.    Burdett and Murphy Reveal Glock's Ongoing Destruction of Critical Evidence**



## III.    Legal Standard

### A.    The Court's Inherent Authority

"[A] federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence, including the power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). Spoliation is "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Origami Owl, LLC v. Palmer*, No. CV-12-02290-PHX-SRB, 2013 U.S. Dist. LEXIS 192162 at *4 (D. Ariz. Apr. 16, 2013).

A party seeking sanctions for spoliation must establish: (1) the party controlling the evidence had an obligation to preserve it when it was destroyed; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the destroyed evidence was relevant to the claims or defenses of the party seeking discovery. *Pettit v. Smith*, 45 F. Supp. 3d 1099, 1104-1105 (D. Ariz. 2014). Sanctions may be imposed "not only for bad faith, but also for willfulness or fault by the offending party." *Id.* at 1111–12 (citing *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Co.*, 982 F.2d 363, 368 n.2 (9th Cir. 1992)). All three elements are satisfied here.

### B.    The Standard for Destruction of ESI Under Rule 37(e)

In addition to the common law spoliation doctrine, the deletion of warranty department emails is governed by Fed. R. Civ. P. 37(e), which provides a self-contained framework for sanctioning failure to preserve ESI. *Newberry v. County of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018); *Porter v. City & County of San Francisco*, 2018 U.S. Dist. LEXIS 151349, at *7 (N.D. Cal. Sept. 5, 2018). Rule 37(e) applies where: (1) ESI should have been preserved in anticipation of litigation; (2) the ESI was lost; (3) the loss resulted from failure to take reasonable steps; and (4) the lost ESI cannot be restored through additional discovery. *Colonies Partners, L.P. v. County of San Bernardino*, 2020 U.S. Dist. Lexis 56922 at *5-6 (C.D. Cal. Feb. 27, 2020). All four conditions are

satisfied here. Terminating sanctions (default) are appropriate where the Court finds willfulness, fault, or bad faith. *Id*.

**IV.    Argument**

The record compels the relief Johnson seeks. Glock has been on notice of the problems caused by the unsupported chamber design defect claim since at least 2013 when the lawsuits started with abundance. It has known of this specific litigation since October 2020. Despite express discovery requests seeking warranty pistol components and armorer communications served in September 2021, Glock continued crushing warranty return pistols and deleting armorer emails. Glock destroyed nearly 700 pistols after the Complaint was filed. Glock armorers continued deleting emails notwithstanding the fact that Johnson sought production of them and this Court ordered they be produced.

Meanwhile Glock exploited the resulting evidentiary void to attack Johnson's experts at deposition and in *Daubert* briefing hoping that the Court would deny class certification and its destruction of evidence would remain undiscovered. Glock knew the evidence was critical, destroyed it anyway, then made dispositive arguments based on its absence. These facts establish each element of spoliation under both the Court's inherent authority and Rule 37(e) and justify the most severe sanctions available.

**A.  The Elements of Rule 37(e) are met Regarding the Emails**

Applying Rule 37(e), Glock had a duty to preserve the warranty department emails no later than 2013, when it was first sued in connection with the same unsupported chamber design. At the latest, the duty arose in October 2020 when this action was filed. *See Pettit*, 45 F. Supp. 3d at 1105. The emails are irretrievably lost. ███████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████ [Exh. D, Burdett Dep. at pp. 70:20-71:10; 99:21-23; Exh. C, Murphy Dep., at pp. 97:2-21]. Glock's November 26, 2025 letter confirms no responsive emails remain. [Exh.

V]. The loss resulted from Glock's failure to take reasonable steps to preserve the evidence. Even though Johnson requested these emails and the Court ordered production of them, ████████ ███████████████████████████████████████████████████████████ [Exh. D, Burdett Dep. at 170:12-20]. ███████████████████████████████████ [Exh. C, Murphy Dep. at 99:14-20]. Failure to issue any preservation notice for more than five years after litigation commenced is the paradigmatic example of unreasonable conduct under Rule 37(e). *See Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012). The lost ESI cannot be restored through additional discovery. Glock has confirmed in writing that no responsive emails exist, and there is no backup, archive, or third-party custodian from which the deleted communications could be recovered.

Where, as here, the four threshold conditions of Rule 37(e) are met, and the moving party demonstrates that the spoliating party "acted with the intent to deprive," the court may impose the most severe sanctions, including adverse inference, dismissal, or default. Fed. R. Civ. P. 37(e)(2). Intent to deprive may be inferred from circumstantial evidence; the timing of destruction, the nature of the information destroyed, and the party's litigation conduct. *See Colonies Partners*, 2020 U.S. Dist. Lexis 56922, at *24-26. Glock has been sanctioned for deleting warranty emails previously.

The *Pirv* Court specifically found:

> Glock, Inc. either lost or destroyed documents after it had notice that they were potentially relevant.
>
> …
> More importantly, the evidence shows that Glock, Inc. failed to either retain or produce several documents dating from 2007 and 2008 and has not produced a single email, despite evidence that it sometimes sent emails in relation to **warranty** claims.

*Pirv v. Glock, Inc.*, 3.06-cv-00145 [Exh. AA, Priv Sanctions Order **19-23] (emphasis added). The Court found that Glock's conduct prejudiced the Plaintiff, but the Court did not default Glock because it had not previously warned it for destruction of evidence. *Id.* at 23.  Rather, it awarded and adverse inference as a sanction for Glock's conduct.  Here, in this case, the end result is Glock destroyed the pistol components (the best evidence of a defect) and destroyed the findings of the only persons to have inspected them. It did this after Johnson asked for the evidence.  Glock, Inc. has been previously warned. This shows an intent to deprive.

**B.  Independent of Rule 37(e), Glock Had a Duty to Preserve the Evidence**

"A duty to preserve arises when a party knows or should know that the information is relevant to pending or future litigation." *Pettit*, 45 F. Supp. 3d at 1105. That duty is triggered when litigation is "probable" ("more than a possibility") not only when litigation has actually commenced. *Slep-Tone Entm't Corp. v. Granito*, No. CV 12-298 TUC DCB, 2014 U.S. Dist. LEXIS 2023, at *13–14 (D. Ariz. Jan. 7, 2014). "Sanctions may be imposed on a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence and destroys such documents and information." *Wm. T. Thompson Co. v. Gen. Nutrition Corp.,* 593 F. Supp. 1443, 1455 (C.D. Cal. 1984) (default was appropriate sanction for defendant's failure to preserve critical documents after commencement of the action and failure to implement procedures to monitor or control destruction after commencement of the actions).

**C.  Glock Acted in Bad Faith**

It is not "possible that a party could know that evidence was relevant, fail to preserve it, or actively destroy it, but not have acted in bad faith." *Origami Owl*, 2013 U.S. Dist. LEXIS 192162, at *6 n.1; *see also State Farm Fire & Cas. Co. v. Broan Mfg. Co.*, 523 F. Supp. 2d 992, 996 (D. Ariz. 2007). Glock has been sued over the unsupported chamber design for decades [Lewis Decl., Exh. A]. Glock was served with this Complaint in October 2020. Johnson served discovery expressly

requesting these items on September 23, 2021. Glock responded with procedural objections but continued destroying the armorer findings regarding failures and the pistol components themselves. Destruction qualifies as willful spoliation if the responsible party "has 'some notice' that the [evidence was] potentially relevant to the litigation before [it was] destroyed." *Jordan v. Ford Motor Co.*, No. 2:09-cv-0865-HRH, 2010 U.S. Dist. LEXIS 160835, at *8 (D. Ariz. Apr. 16, 2010) (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)). Glock failed to preserve 693 pistols (15 were returned 678 were destroyed). [Lewis Decl. ¶ 3, Exh. B]. The emails and components were not peripherally relevant; they were central to the single most contested factual dispute in this litigation.

**D. Glock's Pattern of Affirmative Concealment Establishes Intent to Deprive**

The following sequence establishes Glock's intent to deprive Johnson of the destroyed evidence:

- The March 17, 2023 Letter. In response to Johnson's repeated demands for internal communications and the Court's order that Glock produce them, Glock's counsel wrote:

> Glock maintains and confirms that all responsive documents to Plaintiff's RFP Nos. 3-5 have been produced. Furthermore, as you are well aware, Glock denies (and testing and use supports this denial) the existence of the claimed defect. **It strains credulity that it would discuss something internally that does not exist.** Despite Plaintiff's misconceived belief, the purported defect alleged in this case is not a topic of internal discussion for Glock.

[Lewis Decl. ¶ 10, Exh. I]. At the moment Glock's counsel wrote those words, Glock's warranty employees were crushing warranty pistols on site, deleting communications among armorers about case ruptures, photographs of failed pistols, and customer reports of injuries. [Exh. D, Burdett Dep. at pp. 70:20-71:10; 99:2-23; Exh. C, Murphy Dep., 97:15-21]. At best, counsel's statements were made in reckless disregard of its truth. At worst, it was knowingly false.

- November 26, 2025 "Comprehensive Search." Two and a half years later, Glock represented in writing that it had "conducted a comprehensive search for all correspondence or communications related to the safety valve and did not locate any" and that "there are no internal emails or written

communications discussing the safety valve.  [Lewis Decl. ¶24, Exh. V.]. Glock refused to identify the custodians who searched, or the search terms used, and did not disclose that the warranty department had been continuously deleting precisely the emails throughout the litigation. [*Id*.].

- The September 8, 2023 Procedural Objection. When Johnson noticed the production of warranty pistol components be produced at the Glock 30(b)(6) deposition, Glock objected on procedural grounds. Glock asserted improper format, no inspection protocol, and asserted a "consulting expert privilege." Glock reserved the right to have its experts attend "any and all inspections." [Lewis Decl. ¶ 13 Exh. L, Glock Objections to 30(b)(6) Deposition Notices]. None of this was reconcilable with the truth: Glock had already destroyed the components and was continuing to destroy them as the objection was served. A litigant who reserves the right to participate in inspection of evidence it has already destroyed has affirmatively misrepresented the state of the record.

-

Glock refused access to the evidence based on procedural objections, destroyed the pistols and any emails summarizing the cause of failure, then moved to exclude Johnson's experts' opinions in part because they had not examined the pistols. This goes beyond bad faith, it is an abuse of process.

Worse, Glock, Inc. has already been sanctioned for this very same conduct. *Pirv v. Glock, Inc.*, No. 3.06-cv-00145 [Exh. AA, DE 332, at 19-22].

### E. The Destroyed Evidence Was Relevant and Its Loss Is Highly Prejudicial

Glock denies that its unsupported chamber design is a defect or that it is unreasonably dangerous and contends that the failure rate is too low to be material to a consumer's purchasing decision. There are 793 warranty claims involving explosions since 2020. By extrapolation there are several thousand over Glock's four-decade history.  All the experts (Johnson's and Glock's) agree; the failed pistols are the best way to determine cause of failure. Yet not one of the warranty pistols have been preserved.

The armorer emails are independently significant. These communications captured contemporaneous assessments by Glock's own technicians of the cause of each failure. They were likely the most candid documentation of Glock's own internal understanding of the failure mechanism. Although neither Johnson nor the Court may ever know the precise content of the deleted emails, the Court should presume that their destruction prejudiced Johnson. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012).

### F. Glock Used Its Own Spoliation as a Sword Against Plaintiff's Experts

As prejudicial as the loss of the evidence itself, is the way Glock weaponized the evidentiary void it created. While destroying hundreds of warranty pistols and deleting years of armorer and customer warranty emails, Glock simultaneously objected to discovery requests. In its objection to the request for production it claimed a right to inspect the evidence; implying there were still pistols to inspect.  Apparently, when it made this objection, it knew the evidence had already been destroyed. When deposing Johnson's experts, Glock impeached them precisely for not having inspected the evidence Glock refused to produce and, in fact, had been destroying all along. [Exh. O, Bosch, Dep. pp. 138:5-139:24].

Glock then moved under *Daubert* to exclude those experts, in part, for not inspecting the evidence. The prejudice from the destruction of evidence is compounded by the manner in which Glock exploited the evidentiary void it created. [DE 160, p. 5:20 (Motion to Exclude Bosch), DE 161, p. 1, 7-9 (Glock's Motion to Strike Nixon)].

The clearest illustration is Glock's January 30, 2024 deposition of Dr. David Bosch. At that deposition, Glock's counsel walked Dr. Bosch through a series of questions establishing that he could not opine on whether any of the failed warranty pistols involved overpressured rounds, bullet setback, compressed loads, or lead buildup.



Glock then carried that strategy from the deposition room to this Court. In its February 23, 2024 *Daubert* motions to exclude Dr. Bosch and Mr. Nixon, Glock argued their opinions were unreliable because they had not inspected enough failed Glock pistols. [DE 160 at 5:20-21; DE 161 at 1:23-2:2; 8:22-9:7].

Finally, and most tellingly, Glock has never made any of the 693 warranty pistols available to its own experts. This is a class action involving over 1.6 million pistol sales in which Glock's entire defense rests on the proposition that failures are caused exclusively by defective ammunition. According to Glock's own employees, expert witnesses, and General Counsel, this proposition is most reliably established by examining the physical components. If inspection of those components

---

[5]

would reliably exonerate Glock's design, one would expect Glock to have made them available to its own experts. It has not. One conclusion to draw from this is that Glock crushed the warranty pistols because inspections would not have supported Glock's defense. It then destroyed the findings contained in the warranty emails of its own armorers; the only persons to examine the pistol failures. It decided to take it's chances with this motion as opposed to produce the evidence. Glock should not be permitted to use the absence of evidence it deliberately destroyed as both a sword and a shield. *See Leon*, 464 F.3d at 959-60 (default awarded for similar conduct).

## V.   Sanctions

Available sanctions include default or dismissal, exclusion of evidence, preclusion of claims or defenses, and an adverse inference instruction to the jury. *Glover*, 6 F.3d at 1329; *Brown v. Albertsons, LLC*, 2017 U.S. Dist. LEXIS 72118; *Pettit*, 45 F. Supp. 3d at 1105. The appropriate sanction must be calibrated to the severity of the spoliation and the resulting prejudice. *Id.*

### A. Default on Liability Is the Appropriate Sanction

When considering whether to impose default or dismissal for spoliation, the Court weighs: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on the merits; and (5) the availability of less drastic sanctions. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). All five factors weigh in favor of default here.

*1. Expeditious Resolution and Docket Management*

Glock has wasted, and continues to waste, the Court's resources by maintaining its defense that its design is safe while having crushed hundreds of the very pistols that would resolve that question. Expeditious resolution and docket management favor default when spoliation "obscur[es] the factual predicate of the case and consum[es] months of sanction-related litigation." *State Farm Fire & Cas. Co. v. Broan Mfg. Co.*, 523 F. Supp. 2d 992, 997 (D. Ariz. 2007) (quoting *Leon*, 464 F.3d at 959). Glock's conduct has already generated extensive motion practice; including *Daubert*

motions targeting experts who lacked access to evidence Glock had destroyed. Years of litigation, hundreds of thousands of dollars in testing, and substantial expert fees could have been avoided had Glock preserved what it was obligated to preserve. Inspecting those pistols was the most direct way to determine whether the unsupported chamber design rather than the ammunition caused each failure. [Exh. Z., Decl. Bosch ¶¶3,7)]; *See State Farm Fire & Cas. Co. v. Broan Mfg. Co.*, 523 F. Supp. 2d 992, 997 (D. Ariz. 2007) (spoliation obscured "the very heart of the matter in dispute," warranting dismissal). *See also Silvestri*, 271 F.3d at 593; *Erlandson v. Ford Motor Co.*, 2009 U.S. Dist. LEXIS 101316, *10 (D. Or. Oct. 29, 2009)(dismissal warranted).

### 2. Prejudice to Johnson

"A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *State Farm*, 523 F. Supp. 2d at 997. In products liability actions, "destruction of the product at issue is 'highly prejudicial' because it deprives [the party] of access to the only evidence from which it could develop its position adequately." *See Silvestri v. GMC*, 271 F.3d, 583, 594 (4th Cir. 2001); *State Farm*, 523 F. Supp. 2d at 997. Complete prejudice is not required; even where some evidence is preserved, dismissal may be warranted where the destroyed evidence bears on causation. *State Farm*, 523 F. Supp. 2d at 997 (dismissal where some evidence had been preserved, where adverse party was forced to rely on "limited, incomplete and spotty evidence" and could not conduct an independent investigation); *See also*, *Jordan*, 2010 U.S. Dist. LEXIS 160835 *15 (dismissal appropriate where the ability to eliminate probable causes was "significantly impaired."). Glock's destruction of this evidence is severely prejudicial. [Exh. Z, Decl. Bosch, ¶¶ 3-7].

### 3. Public Policy Favoring Merits Adjudication

Courts give this factor little or no weight when the spoliation itself has undermined the ability to adjudicate the merits. *State Farm*, 523 F. Supp. 2d at 997-998. Glock's destruction of warranty pistols and years of armorer and warranty customer emails was done to prevent this case from being

decided on the merits. Rewarding that conduct by discounting the prejudice it caused would invert the purpose of this factor.

*4. Availability of Lesser Sanctions*

Lesser sanctions are inadequate here. An adverse inference instruction would leave Johnson without the evidence he needs to efficiently rebut Glock's causation defense and force him to rely on the same incomplete evidentiary record that Glock itself created. Here, Glock destroyed nearly 70 pistols belonging to class members. [Exh. BB]. Courts have consistently rejected lesser sanctions where the subject of the litigation itself was destroyed. *See Erlandson*, 2009 U.S. Dist. LEXIS 101316, *18 (dismissing complaint because "a sanction less than dismissal of this matter would be meaningless"); *Silvestri*, 271 F.3d at 595; *Jordan*, 2010 U.S. Dist. LEXIS 160835, *19 (dismissing complaint). The same conclusion is warranted here.

## B. In the Alternative: Issue Preclusion

Although default is warranted here, as an alternative to default on liability, Johnson seeks an order precluding Glock from contesting: (1) that the unsupported chamber design ("UCD") constitutes a design defect; (2) that the UCD presents an unreasonable safety hazard within the meaning of California's omission disclosure jurisprudence; and (3) that the defect is material and goes to the central function of the product. *See Brown, LLC*, 2017 U.S. Dist. LEXIS 72118, *21-22. Glock should not be permitted to contest these issues when it has destroyed hundreds of pistols that exploded in customers' hands and then deleted the internal communications in which its own technicians evaluated those failures.

## C. In the Alternative: Adverse Inference Instruction

As a second alternative, Johnson requests that the jury be instructed that it may take as proven that the destroyed warranty pistols and deleted armorer emails would have established that the UCD: (1) was defective and unreasonably dangerous; (2) caused a safety hazard; (3) was material to consumers' purchasing decisions; and (4) went to the central function of the product. Johnson

acknowledges that this remedy would not fully cure the prejudice, as he would still be required to present his affirmative case without access to the destroyed evidence. The Court should therefore prefer default or issue preclusion. An adverse inference is requested only if the Court determines that a more severe sanction is unwarranted.

**D. Attorneys fees**

Plaintiff should be awarded its fees and costs for being forced to bring this motion as well as any other reasonable fees and costs incurred due to Glock's willful spoliation of evidence. *See* 28 U.S.C. § 1927 (sanctions against counsel for vexatious litigation conduct include attorney's fees); Fed. R. Civ. P. 37(e)(1) (fee-shifting sanctions).

**VI.   Conclusion**

For the foregoing reasons, Johnson respectfully requests that the Court: (1) enter default on liability against Glock, Inc. and Glock Ges.m.b.H; (2) in the alternative, enter an order precluding Glock from contesting that the UCD is a defect, is unreasonably dangerous, causes a safety hazard, and is material; or (3) in the further alternative, instruct the jury that it may find those facts proved. Johnson also requests such other and further relief as the Court deems just and proper.

Dated: May 13, 2026                    By: /s/ *Robert K. Lewis*

Paul R. Kiesel, State Bar No. 119854
*kiesel@kiesel.law*
Jeffrey A. Koncius, State Bar No. 189803
*koncius@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel: 310-854-4444
Fax: 310-854-0812

Jeremy Alberts, *Pro Hac Vice*
*jalberts@wwhgd.com*
**WEINBERG WHEELER HUDGINS
GUNN & DIAL LLC**
6385 S. Rainbow Blvd. Suite 400
Las Vegas, Nevada 89118
Tel: 702-938-3838

Robert K. Lewis, *Pro Hac Vice*
*rob@lewislawfirm.com*
Amy M. Lewis, *Pro Hac Vice*
*amy@lewislawfirm.com*
**LEWIS AND LEWIS TRIAL LAWYERS PLC**
21850 N. Alma School Road, Suite 103-637
Scottsdale, Arizona 85262
Tel: 602-889-6666

*/s/ Alexander Heydemann*
Nicholas Panayotopoulos, *Pro Hac Vice*
*npanayo@wwhgd.com*
Alexander Heydemann, *Pro Hac Vice*
*aheydemann@wwhgd.com*
**WEINBERG WHEELER HUDGINS
GUNN & DIAL LLC**
3344 Peachtree Road, NE
Atlanta, Georgia 30326
Tel: 404-876-2700

*Attorneys for Plaintiff
and the Certified Class*

**CERTIFICATE OF SERVICE**

The foregoing document was filed with the clerk of the court using CM/ECF system and automatically served upon registered recipients appearing in this case.

John F. Renzulli (Pro Hac Vice)
Christopher Renzulli (Pro Hac Vice)
Howard B. Schilsky (Pro Hac Vice)
**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, NY 10601
Telephone: (914) 285-0700
Facsimile: (914) 285-1213
jrenzulli@renzullilaw.com
crenzulli@renzullilaw.com
hschilsky@renzullilaw.com

Paul G. Cereghini (SBN 148016)
**BOWMAN AND BROOKE LLP**

1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: (408) 279-5393
Facsimile: (408) 279-5845
paul.cereghini@bowmanandbrooke.com

Carissa Casolari (SBN 292878)
**BOWMAN AND BROOKE LLP**
970 West 190th Street, Suite 700
Torrance, CA 90502
Telephone: (310) 768-3068
Facsimile: (310) 719-1019
Carissa.casolari@bowmanandbrooke.com

Donald Falk
**SCHAER JAFFE LLE**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 562-4942

Sean Eskovitz
**ESKOVITZ LAW LLP**
1217 Wilshire Blvd, #3683
Telephone: (323) 821-5836
seane@eskovitz.com
*Attorneys for Defendants Glock, Inc.
and Glock Ges.m.b.H.*

Dated: May 13, 2026                    By: /s/ *Robert K. Lewis*